# EXHIBIT A

2/26/26, 10:36 AM Case 1:26-cv-01140-WMR-AWH Research GA - Carla Williams Et Al VS Athene Annuity and Life Company Et Al 26CV1492 Filed 02/27/26 Page 2 of 309

https://researchga.tylerhost.net/CourtRecordsSearch/ViewCasePrint/6309107b4b274e8f9cf1316d88539eb7

## Case Information

# Carla Williams Et Al VS Athene Annuity and Life Company Et Al

26CV1492

Location
DeKalb - Superior Court

Case Category
Civil

Case Type
Foreclosure

Case Filed Date
1/21/2026

Judge
Barrie, Tangela

Case Status
Open (Open)

## Parties 8

| Type | Name | Nickname/Alias | Attorneys |
|------|------|----------------|-----------|
| Plaintiff | Dion A Lee | | |
| Plaintiff | Carla Williams | | |
| Defendant | Athene Annuity and Life Company | | |
| Defendant | NewRez LLC dba Shellpoint Mortgage Servicing | | |
| Defendant | Mortgage Electronic Registration Systems Inc | | |
| Defendant | Tiffany & Bosco PA | | |
| Defendant | Barrett Daffin Frappier Turner & Engel LLP | | |
| Respondent | UNITED WHOLESALE MORTGAGE | | RYAN STARKS |

## Events 15

| Date | Event | Index # | Type | Comments | Documents |
|------|-------|---------|------|----------|-----------|
| 1/21/2026 | Filing | | Complaint or Petition for Foreclosure | Verified Complaint For Wrongful Foreclosure And Attempted Foreclosure; Violations of RESPA/Regulation X, TILA/Regulation Z, And The FDCPA; Breach of Contract and Breach of The Implied Covenant of Good Faith And Fair Dealing; Negligence, Negligent Misrepresentation, Conversion, And Fraud By Concealment; Violations of the Georgia Uniform, Deceptive Trade Practices Act(Injunctive Relief); Abuse of Process And Civil Conspiracy; Willful | 7dca8527-76dc-4ae5-aec9-f9568741a612.pdf |
| 1/21/2026 | Filing | | Summons | Summons (United Wholesale Mortgage, LLC) | bf1a30c7-eb8f-4581-8a95-9507a8bbc2d5.pdf |
| 1/21/2026 | Filing | | Summons | Summons (Mortgage Electronic Registration Systems, Inc) | f45ffff1-8cb8-4536-a2c2-5117b0b15dc6.pdf |
| 1/21/2026 | Filing | | Summons | Summons(NewRez) | e0a05bad-80c4-4873-b8ab-ee36b68723f0.pdf |

| Date | Event | Index # | Type | Comments | Documents |
|------|-------|---------|------|----------|-----------|
| 1/21/2026 | Filing | | Summons | Summons(Athene Annuity And Life Company) | 5f5517c5-e9d9-4dfa-802e-8277d60ab971.pdf |
| 1/21/2026 | Filing | | Summons | Summons (Barett Daffin Frappier Turner & Engel LLP) | a6066f8c-3765-4f2a-a547-faacd16e4911.pdf |
| 1/21/2026 | Filing | | Summons | Summons (Tiffany & Bosco, P.A.) | 43b95db5-d693-48b4-bb46-9c4fc5a517a4.pdf |
| 1/21/2026 | Filing | | Case Initiation Form | Case Initiation Form | c26f51f4-34f5-4c02-bbe0-f8bac2e9dd38.pdf |
| 2/2/2026 | Filing | | Affidavit of Service | Affidavit of Service (Athene Annuity And Life Company C/O Corporation Service Company) | 75cac737-b5cd-45ff-88f2-8bd41495c1e6.pdf |
| 2/2/2026 | Filing | | Affidavit of Service | Affidavit of Service (Urban Wholesale Mortgage, LLC) | 7db95beb-d8e8-4a20-a0f9-a2417ed1fe8a.pdf |
| 2/2/2026 | Filing | | Affidavit of Service | Affidavit of Service (NewRez) | 7ff66100-deaa-4e20-a790-ee8eed3b6b43.pdf |
| 2/2/2026 | Filing | | Notice of Filing | Notice of Filing(Mortgage Electronic) | 9f8e3818-40fa-4e84-9c46-a698fcb8c6d6.pdf |
| 2/2/2026 | Filing | | Affidavit of Service | Affidavit of Service (Barett, Daffin, Frappier, Turner ,Engel, LLP) | 37a84604-a2aa-41ac-b291-834810f7a418.pdf |
| 2/5/2026 | Filing | | Affidavit of Service | Affidavit of Service | 1b866e9a-0c23-4d22-b045-cced2f8368bc.pdf |
| 2/25/2026 | Filing | | Motion for Extending Time Discovery | RESPONDENT UNITED WHOLESALE MORTGAGE MOTION FOR EXTENSION OF TIME TO FILE AN ANSWER | Motion for Extending Time Discovery.pdf |

© 2026 Tyler Technologies, Inc. | All Rights Reserved
Version: 2025.9.2.1876


EMPOWERED BY
TYLER TECHNOLOGIES

Dion Andre Lee, Pro Se
Carla Carmen Williams, Pro Se
1000 Cathedral Pl.
Decatur, GA 30034
(702) 626-9454
dlee.gfa@gmail.com

## IN THE SUPERIOR COURT OF DEKALB COUNTY

## STATE OF GEORGIA

## CIVIL DIVISION

| | |
|---|---|
| **DION ANDRE LEE**, AN INDIVIDUAL HOMEOWNER AND RESIDENT OF DECATUR, GEORGIA (OWNER–OCCUPANT OF 1000 CATHEDRAL PLACE, DECATUR, GEORGIA 30034, THE SUBJECT HOMESTEAD; PRIMARY BORROWER AND SIGNATORY TO THE MARCH 18, 2024 PROMISSORY NOTE AND GEORGIA SECURITY DEED; CHAPTER 7 DEBTOR IN U.S. BANKRUPTCY COURT, DISTRICT OF NEVADA CASE NO. 25-15951-NMC); **CARLA CARMEN WILLIAMS**, AN INDIVIDUAL HOMEOWNER AND RESIDENT OF DECATUR, GEORGIA (CO-BORROWER/CO-SIGNATORY AND OWNER–OCCUPANT OF THE SUBJECT HOMESTEAD; CO-OBLIGOR ON THE SUBJECT NOTE AND SECURITY DEED; CO-DEBTOR IN THE RELATED CHAPTER | Case No.: 26CV1492<br><br>**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL** |

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 1

7 BANKRUPTCY PROCEEDING IN THE DISTRICT OF NEVADA),

Plaintiffs,

vs.

**ATHENE ANNUITY AND LIFE COMPANY**, A LIFE-INSURANCE COMPANY AND INSTITUTIONAL MORTGAGE INVESTOR CLAIMING BENEFICIAL OWNERSHIP/SECURED-CREDITOR STATUS ON THE SUBJECT LOAN (PURPORTED ASSIGNEE/BENEFICIARY OF THE GEORGIA SECURITY DEED AND THE REAL PARTY IN INTEREST FOR WHOSE BENEFIT FORECLOSURE AND COLLECTION ACTIVITY WAS INITIATED AND ADVANCED, INCLUDING BANKRUPTCY STAY-RELIEF EFFORTS);

**NEWREZ LLC, D/B/A SHELLPOINT MORTGAGE SERVICING**, A MORTGAGE SERVICER AND DEBT COLLECTOR (SERVICING AGENT ACTING FOR ATHENE; RESPONSIBLE FOR MONTHLY STATEMENTS, PAYMENT APPLICATION, ESCROW ADMINISTRATION, SUSPENSE-ACCOUNT PRACTICES, LATE-FEE/CHARGE ASSESSMENTS, LOSS-MITIGATION REVIEW AND DENIALS, FORECLOSURE ADVANCEMENT, AND COORDINATION OF STAY-RELIEF

VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(k)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD)

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 2**

LITIGATION RELATED TO THE SUBJECT LOAN);

**UNITED WHOLESALE MORTGAGE, LLC**, A MORTGAGE LENDER/ORIGINATING CREDITOR (ORIGINATOR AND NAMED LENDER ON THE MARCH 18, 2024 PROMISSORY NOTE AND ORIGINAL SECURITY DEED; RESPONSIBLE FOR LOAN ORIGINATION, INITIAL DISCLOSURES, AND UNDERWRITING REPRESENTATIONS CONCERNING THE SUBJECT RESIDENTIAL MORTGAGE TRANSACTION);

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)**, A NATIONAL ELECTRONIC REGISTRY COMPANY (GRANTEE/NOMINEE AND RECORD-TRACKING ENTITY IDENTIFIED IN THE ORIGINAL GEORGIA SECURITY DEED, WITH RECORDED INVOLVEMENT IN ASSIGNMENTS PURPORTING TO TRANSFER OR MEMORIALIZE ENFORCEMENT INTERESTS AND AUTHORITY AFFECTING THE POWER OF SALE);

**TIFFANY & BOSCO, P.A.**, A MULTI-STATE DEBT-COLLECTION AND FORECLOSURE LAW FIRM (BANKRUPTCY AND STAY-RELIEF COUNSEL FOR SHELLPOINT AND/OR ATHENE; PREPARED, FILED, AND SERVED THE MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND RELATED

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 3

FILINGS, INCLUDING PROPOSED STAY-TERMINATION RELIEF, SEEKING AUTHORIZATION TO FORECLOSE UPON AND OBTAIN POSSESSION OF THE SUBJECT HOMESTEAD);

**BARRETT DAFFIN FRAPPIER TURNER & ENGEL LLP**, A FORECLOSURE AND DEBT-COLLECTION LAW FIRM (IDENTIFIED IN THE BANKRUPTCY SCHEDULES AS A PARTY TO BE NOTIFIED REGARDING THE SECURED CLAIM AND BELIEVED TO HAVE PARTICIPATED IN FORECLOSURE-RELATED NOTICES, FILINGS, AUCTION/SALE-PROCESS COORDINATION, OR OTHER ENFORCEMENT ACTIVITY DIRECTED AT THE SUBJECT PROPERTY IN GEORGIA);

**JOHN/JANE DOES 1–20**, RESPONDENTS IN DISCOVERY (UNKNOWN INVESTORS, TRUSTEES, SUB-SERVICERS, FORECLOSURE AGENTS, SUBSTITUTE TRUSTEES, DOCUMENT PREPARERS, FIELD-SERVICE VENDORS, COLLECTION AGENCIES, AUCTIONEERS, OR OTHER PERSONS OR ENTITIES WHO PARTICIPATED IN, DIRECTED, RATIFIED, OR BENEFITED FROM THE SERVICING, ACCOUNTING, LOSS-MITIGATION DENIALS, BANKRUPTCY STAY-RELIEF EFFORTS, FORECLOSURE, OR ATTEMPTED DISPOSSESSION OF THE SUBJECT HOMESTEAD),

Defendants

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 4**

This is a **Verified civil action** arising from a coordinated pattern of **unlawful mortgage servicing, defective power-of-sale foreclosure escalation, and bad-faith enforcement** directed at Plaintiffs' owner-occupied homestead located at **1000 Cathedral Place, Decatur, Georgia 30034** (the "Property"). Plaintiffs Dion Andre Lee and Carla Carmen Williams seek to stop continued foreclosure pressure and compel correction of inaccurate servicing records, because Defendants' enforcement posture has been built on **shifting account figures, suspense-account practices, opaque escrow activity, and litigation-driven escalation** rather than transparent, accurate servicing and fair exercise of any power of sale.

Georgia law strictly construes and requires the **fair exercise** of any power of sale, and it requires strict compliance with statutory foreclosure notice requirements—especially the requirement that the pre-sale notice identify the individual/entity with **full authority to negotiate, amend, and modify** the mortgage terms. See, e.g., **O.C.G.A. § 23-2-114** and **O.C.G.A. § 44-14-162.2**; **You v. JP Morgan Chase Bank, N.A.**, 293 Ga. 67 (2013); **Calhoun First Nat'l Bank v. Dickens**, 264 Ga. 285 (1994); **DeGolyer v. Green Tree Servicing, LLC**, 662 S.E.2d 141 (Ga. Ct. App. 2008).

This action also implicates public policy protections recognized at the **county and municipal level** to prevent neighborhood blight and protect housing stability. Georgia expressly authorizes local vacant/foreclosed property registries and related enforcement mechanisms

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 5**

(including administrative fees and penalties) as part of the State's anti-blight framework. See **O.C.G.A. § 44-14-14**.

In DeKalb County, the governing authority has adopted registry ordinances designed to ensure transparency and accountability as to the party responsible for foreclosed/vacant properties—requiring registration, local agent designation, updates to contact information, and penalties for noncompliance. See, e.g., **DeKalb County Code of Ordinances, Chapter 18 (Nuisances), Article IV (Foreclosure Registry), including § 18-102 (registry requirements and fee),** and Article V (Vacant Property Registry purpose/findings).

To the extent the Property lies within the **City of Decatur** (and in any event as evidence of local anti-blight and housing-stability policy), the City's Code of Ordinances likewise reflects strong municipal interests in preventing property deterioration and neighborhood blight through sanitation/property-condition enforcement and related nuisance-abatement measures (including **Chapter 54 (Health and Sanitation)** enforcement actions and related municipal enforcement practice), as well as solid-waste controls applicable to property conditions within City limits.

Defendants in this action include:

    a. **Athene Annuity and Life Company,** the purported assignee/beneficiary and secured-creditor claimant asserting the economic interest in the loan and foreclosure posture;

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 6**

b. **NewRez LLC d/b/a Shellpoint Mortgage Servicing**, the loan servicer and debt collector responsible for monthly statements, payment application, escrow administration, suspense handling, fee assessments, loss-mitigation processing/denials, foreclosure advancement, and coordination of enforcement activity;

c. **United Wholesale Mortgage, LLC**, the originating lender/creditor identified on the March 18, 2024 promissory note and initial Georgia security deed;

d. **Mortgage Electronic Registration Systems, Inc. (MERS)**, the nominee/registry entity identified in the original Georgia security deed and involved in recorded assignment activity purporting to memorialize enforcement authority;

e. **Tiffany & Bosco, P.A.**, foreclosure/bankruptcy counsel that prepared and filed stay-relief papers seeking authorization to foreclose and obtain possession;

f. **Barrett Daffin Frappier Turner & Engel LLP**, a foreclosure/debt-collection firm identified as a notice party in the secured-claim scheduling and believed to have participated in foreclosure-related notices, filings, sale-process coordination, or other enforcement steps; and

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 7

g.  **John/Jane Does 1–20**, unknown investors, trustees, sub-servicers, foreclosure agents, substitute trustees, document preparers, field-service vendors, auctioneers, or other entities that participated in or benefited from the servicing and enforcement conduct alleged herein.

This case is not a "strategic default" dispute. Plaintiffs made a substantial down payment, occupied the home as their primary residence, and repeatedly sought lawful home-retention solutions. The servicing record nevertheless reflects a pattern in which payments were treated in a manner that **inflated delinquency and compounded default charges**, including the use of **suspense/partial-payment handling** and opaque escrow changes that materially altered the monthly amount demanded. These practices are actionable under **RESPA and Regulation X** (including escrow administration and servicing-error duties) and under federal servicing regulations governing accurate periodic statements and servicing conduct. See, e.g., **12 U.S.C. § 2605, 12 C.F.R. §§ 1024.17, 1024.35–36, 1024.38, 1024.41**, and related authority recognizing that damages and causation are central to RESPA servicing claims. See, e.g., **Renfroe v. Nationstar Mortg., LLC**, 822 F.3d 1241 (11th Cir. 2016); **Lage v. Ocwen Loan Servicing, LLC**, 839 F.3d 1003 (11th Cir. 2016); **Baez v. Specialized Loan Servicing, LLC**, 709 F. App'x 979 (11th Cir. 2017).

The enforcement posture escalated into litigation while Plaintiffs were under federal bankruptcy protection. Plaintiffs filed a **Chapter 7 bankruptcy on October 6, 2025** (U.S.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 8

Bankruptcy Court, District of Nevada), which triggered the **automatic stay** under **11 U.S.C. § 362(a)**. Following that filing, Defendants pursued stay-relief litigation and advanced a narrative of "no equity" and urgent enforcement based on **contested totals and inconsistent arrears calculations**, including the use of valuation assumptions and "cost of sale" reductions to portray the Property as underwater. Plaintiffs allege that Defendants' continuing enforcement conduct, when measured against the true account history and the Property's equity, reflects bad faith and an attempt to force displacement rather than pursue lawful, sustainable resolution

Defendants' collection and litigation communications also implicate the **FDCPA** to the extent they used false, misleading, or inconsistent representations of the amount, character, or legal status of the debt and leveraged foreclosure communications to demand payment and accelerate dispossession. See **Reese v. Ellis, Painter, Ratterree & Adams, LLP**, 678 F.3d 1211 (11th Cir. 2012) (recognizing foreclosure-related communications can constitute debt-collection activity).

**Relief sought is targeted and equitable—not delay.** Plaintiffs seek court supervision to: (i) stop foreclosure/dispossession while the servicing record is adjudicated; (ii) compel a full **equitable accounting** and correction of payment application, escrow, and fee assessments; and (iii) order a **permanent loan restructuring** that reflects fairness and feasibility—specifically, a **fixed 3% interest rate, a monthly payment Plaintiffs can afford,** and **no further review or**

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 9**

**trial-period requirement**—together with all declaratory, injunctive, restitutionary, and statutory remedies authorized by federal law, Georgia law, and applicable local ordinances.

Only this Court can prevent irreparable harm—loss of a unique home, destruction of accumulated equity, and ongoing destabilization caused by disputed servicing practices—and restore the rule of law to the servicing and enforcement of the subject residential mortgage loan.

## I.    INTRODUCTION

1. This **Verified civil action** arises from a documented pattern of **unlawful mortgage servicing, defective enforcement conduct, and improper foreclosure escalation** relating to Plaintiffs' owner-occupied single-family homestead located at **1000 Cathedral Place, Decatur, Georgia 30034** (the "Property"). Plaintiffs **Dion Andre Lee** and **Carla Carmen Williams** are the borrower-occupants on the subject residential loan and bring this action to halt foreclosure activity that has been advanced through **shifting and unreconciled arrearage figures, suspense-account handling, opaque escrow administration, and enforcement communications that misstate or distort the true status of the debt**. Plaintiffs seek immediate judicial protection to preserve the home and substantial equity while this Court adjudicates the legality of Defendants' servicing, notices, and enforcement posture under federal and Georgia law.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 10

2. Defendants are not passive market participants; each played a defined role in the servicing and enforcement chain affecting this DeKalb County homestead. **Athene Annuity and Life Company** claims beneficial ownership/secured-creditor status as the purported assignee/beneficiary of the Georgia security deed; **NewRez LLC d/b/a Shellpoint Mortgage Servicing** acted as the mortgage servicer and debt collector responsible for monthly statements, payment application, escrow administration, suspense practices, fee assessments, and foreclosure advancement; **United Wholesale Mortgage, LLC** originated the loan and is identified on the March 18, 2024 note and security deed; **MERS** is identified as nominee/grantee in the original Georgia security deed and participated in the recorded assignment chain affecting enforcement authority; **Tiffany & Bosco, P.A.** served as bankruptcy/stay-relief counsel seeking authority to foreclose and obtain possession; **Barrett Daffin Frappier Turner & Engel LLP** is identified in the bankruptcy schedules as a notice party for the secured claim and is believed to have participated in foreclosure-related notices and/or sale-process enforcement steps; and **John/Jane Does 1–20** include unknown investors, trustees, sub-servicers, foreclosure agents, document preparers, field-service vendors, and auctioneers whose identities will be confirmed in discovery.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 11**

3. Plaintiffs allege that **servicing failures—rather than simple nonpayment— manufactured and amplified default status**. The record reflects that Shellpoint's own statements warned that **partial payments may be held in suspense** rather than credited, while default-related fees and charges continue to accrue. Plaintiffs further allege that escrow handling and monthly payment demands fluctuated in ways that were not transparently reconciled, impairing Plaintiffs' ability to cure and creating an enforcement narrative built on **unstable numbers**. These practices are actionable under **RESPA, 12 U.S.C. § 2605**, including Regulation X servicing-error, information-request, and loss-mitigation duties **(12 C.F.R. §§ 1024.17, 1024.35–1024.36, 1024.38, 1024.41)**, and are also actionable under **TILA/Regulation Z**, including the periodic statement framework for residential mortgage loans **(12 C.F.R. § 1026.41)** where statements are misleading as to the character and amount of amounts due. See, e.g., **Renfroe v. Nationstar Mortg., LLC**, 822 F.3d 1241 (11th Cir. 2016) (RESPA causation/actual damages); **Lage v. Ocwen Loan Servicing, LLC**, 839 F.3d 1003 (11th Cir. 2016) (loss-mitigation provisions under Regulation X); **Baez v. Specialized Loan Servicing, LLC**, 709 F. App'x 979 (11th Cir. 2017)

4. Plaintiffs further allege Defendants escalated toward foreclosure without satisfying Georgia's strict requirements governing **power-of-sale enforcement**

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 12

and without acting in good faith. Georgia law provides that powers of sale in security instruments **"shall be strictly construed and shall be fairly exercised."** **O.C.G.A. § 23-2-114.** A foreclosure sale under power is not valid unless conducted and noticed as required by statute, including the requirement that the notice identify the individual or entity with **full authority to negotiate, amend, and modify** the mortgage terms. **O.C.G.A. §§ 44-14-162, 44-14-162.2;** see also **O.C.G.A. § 44-14-162.4** (recitals of notice compliance in deeds under power). Georgia courts consistently recognize wrongful foreclosure and attempted wrongful foreclosure claims where the foreclosing party breaches a legal duty, fails to fairly exercise the power of sale, or proceeds on a defective enforcement record. See, e.g., **You v. JP Morgan Chase Bank, N.A.,** 293 Ga. 67 (2013); **Calhoun First Nat'l Bank v. Dickens,** 264 Ga. 285 (1994); **DeGolyer v. Green Tree Servicing, LLC,** 291 Ga. App. 444 (2008); **Heritage Creek Dev. Corp. v. Colonial Bank,** 268 Ga. App. 369 (2004); **Racette v. Bank of Am., N.A.,** 318 Ga. App. 171 (2012); **TKW Partners, LLC v. Archer Capital Fund, L.P.,** 302 Ga. App. 443 (2010).

5. This action is also shaped by the **bankruptcy overlay and the automatic stay.** Plaintiffs filed a **Chapter 7 bankruptcy petition on October 6, 2025,** triggering the automatic stay under **11 U.S.C. § 362(a).** In the Eleventh Circuit, **actions**

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 13**

taken in violation of the automatic stay are "void and without effect." See **Borg-Warner Acceptance Corp. v. Hall**, 685 F.2d 1306 (11th Cir. 1982); **In re Albany Partners, Ltd.**, 749 F.2d 670 (11th Cir. 1984). Where a willful stay violation causes injury, **11 U.S.C. § 362(k)** authorizes recovery of **actual damages (including costs and attorneys' fees) and, in appropriate circumstances, punitive damages**; see also **Mantiply v. Horne (In re Horne)**, 876 F.3d 1076 (11th Cir. 2017) (attorneys' fees under § 362(k)). Plaintiffs allege Defendants leveraged bankruptcy stay-relief litigation and related enforcement communications to accelerate foreclosure posture using **contested and inconsistent debt figures**, while simultaneously denying meaningful home-retention solutions, thereby compounding the risk of displacement during a period of federally protected breathing room.

6. Plaintiffs' claims further align with the public policy interests of local government in preventing foreclosure-driven blight, vacancy, and displacement. To the extent applicable (depending on whether the Property lies within incorporated City boundaries or unincorporated DeKalb), **DeKalb County Code of Ordinances Chapter 18** includes a **Foreclosure Registry** framework requiring registration and identification of responsible parties for foreclosed properties (**e.g., Art. IV, § 18-102**) and a **Vacant Property Registry** reflecting county findings and the need

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 14

for responsible contacts to bring properties into compliance (**e.g., Art. V, § 18-116**). Similarly, the **City of Decatur Code of Ordinances, Chapter 54 (Health and Sanitation), Article III (Unsanitary or Dangerous Premises)** regulates property conditions and provides enforcement mechanisms addressing **unsecured vacant buildings** and abatement procedures, including notice/service provisions and municipal authority to secure/clean premises and impose liens for costs (**e.g., §§ 54-56, 54-58, 54-59, 54-60, 54-63**). These local regulatory frameworks underscore the public interest in preventing wrongful foreclosure, vacancy, and loss of neighborhood stability—especially where foreclosure posture is driven by disputed servicing records rather than fair, transparent accounting.

7. Plaintiffs seek **targeted equitable and statutory relief—not delay**. Plaintiffs request (i) declaratory relief under **O.C.G.A. § 9-4-2** determining the parties' rights and declaring unlawful any foreclosure posture grounded in inaccurate or unreconciled accounting; (ii) preliminary and permanent injunctive relief under **O.C.G.A. § 9-11-65** halting foreclosure, sale, or dispossession pending adjudication and compliance; (iii) a court-supervised **equitable accounting** and correction of servicing records, escrow handling, and payment application; and (iv) the central equitable remedy necessary to stabilize performance and prevent repeat violations—**a permanent loan restructuring** imposing a **fixed 3%**

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 15**

interest rate, a **monthly payment Plaintiffs can afford,** and **no further review or trial-period requirement,** together with all damages and remedies authorized by RESPA, TILA, the FDCPA, Georgia law, and (where pled and proven) bankruptcy law. Plaintiffs also seek litigation expenses and legal fees where authorized, including under **O.C.G.A. § 13-6-11** where Defendants' conduct has caused Plaintiffs unnecessary trouble and expense.

## II.   PARTIES

8. **Plaintiffs Dion Andre Lee and Carla Carmen Williams** are natural persons and residents of **DeKalb County, Georgia**, who reside at and occupy the single-family residential property located at **1000 Cathedral Place, Decatur, Georgia 30034** (the "Property"). Plaintiffs are **co-signatories and obligors** on the March 18, 2024 **Promissory Note** and **Georgia Security Deed** encumbering the Property, and they bring this action to protect their homestead from **unlawful servicing, defective power-of-sale enforcement, and foreclosure escalation** that threatens irreparable loss of housing stability and equity.

9. **Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint")** is a Delaware limited liability company authorized to conduct business in Georgia and elsewhere and, at all relevant times, acted as the **mortgage servicer and debt**

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 16

**collector** on the subject loan. Shellpoint controlled the servicing infrastructure for Plaintiffs' account, including **payment receipt and application, suspense-account handling, escrow accounting and disbursements, late fee/charge assessments, borrower statements and notices,** and **loss-mitigation intake, review, and denials.** Shellpoint's conduct is governed by, inter alia, **RESPA, 12 U.S.C. § 2605, and Regulation X, 12 C.F.R. Part 1024** (including escrow and servicing standards), **TILA and Regulation Z** (including mortgage servicing disclosure requirements), and Georgia's strict foreclosure framework governing power-of-sale enforcement, including **O.C.G.A. § 23-2-114** (fair exercise of power of sale) and **O.C.G.A. § 44-14-162.2** (pre-sale notice and "full authority" requirements). Shellpoint's foreclosure-facing communications and collection activity are further subject to federal debt-collection standards where applicable, including the FDCPA as interpreted in foreclosure-communication cases.

10. **Defendant Athene Annuity and Life Company ("Athene")** is an institutional mortgage investor and insurance company that is the **purported assignee/beneficiary and secured-creditor claimant** on the subject loan and the real party in interest for whose benefit the loan was serviced and foreclosure pressure advanced. Athene is alleged to have asserted (directly or through agents) beneficial ownership and enforcement rights arising from the Security Deed and

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 17**

related assignment activity, and it is responsible under Georgia law and general agency principles for foreclosure and servicing conduct undertaken **for its benefit** and within the scope of its servicing/enforcement relationship—particularly where the enforcement posture depends on **accurate accounting, lawful notice, and fair exercise of any power of sale** under Georgia law.

11. **Defendant Tiffany & Bosco, P.A. ("T&B")** is a multi-state foreclosure/debt-collection law firm that acted as **bankruptcy and stay-relief counsel** for Shellpoint and/or Athene in connection with the subject loan. T&B prepared, filed, served, and prosecuted pleadings seeking relief from the automatic stay and authorization to proceed with foreclosure/enforcement against the Property, and it communicated delinquency and enforcement positions derived from the servicing record. T&B's conduct is subject to the **Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.**, to the extent it regularly engages in covered debt-collection activity and communications in connection with consumer mortgage enforcement.

12. **Defendant United Wholesale Mortgage, LLC ("UWM")** is a mortgage lender and the **originating creditor** identified on the March 18, 2024 Promissory Note and the original Security Deed securing the loan against the Property. UWM is named to the extent origination-stage representations, underwriting practices, and disclosure obligations under **TILA/Regulation Z** (and related Georgia law

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 18

governing mortgage transactions and recorded instruments) contributed to, enabled, or failed to prevent the present dispute concerning enforceability, payment structure, escrow/payment volatility, and downstream servicing harms.

13. **Defendant Mortgage Electronic Registration Systems, Inc. ("MERS")** is a national electronic registry company identified as **grantee/nominee** in the original Georgia Security Deed and is alleged to have participated in the recorded chain of instruments and assignments that purport to memorialize enforcement interests affecting the power of sale. MERS is named due to its role in the chain of title and the accuracy and legality of recorded authority—issues that are material in Georgia foreclosure practice, including compliance with the statutory notice regime and the identification of the entity with "full authority" required by **O.C.G.A. § 44-14-162.2**.

14. **Defendant Barrett Daffin Frappier Turner & Engel LLP ("BDFTE")** is a foreclosure and debt-collection law firm identified in the bankruptcy schedules as a notice party associated with the secured claim and is believed to have participated in **foreclosure-related notices, filings, sale-process coordination, or other enforcement activity** directed at the Property in Georgia. To the extent BDFTE prepared, transmitted, recorded, or relied upon foreclosure notices and related enforcement communications, its conduct is governed by Georgia's strict

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 19**

foreclosure notice requirements—including the written notice mandated by **O.C.G.A. § 44-14-162.2**—and, where applicable, federal debt-collection standards governing foreclosure communications and representations of the amount or legal status of a debt.

15. **Defendants John and Jane Does 1–20** are unknown individuals or entities, including but not limited to **investors, trustees, sub-servicers, foreclosure agents, substitute trustees, document preparers, field-service vendors, collection agencies, and auctioneers**, who participated in, directed, ratified, or benefited from the servicing, accounting, loss-mitigation denials, bankruptcy stay-relief efforts, foreclosure initiation, or attempted dispossession of the Property. Plaintiffs will amend this Complaint to substitute the true names and capacities of these Defendants when ascertained through discovery.

16. **Local regulatory context (relevant to parties whose conduct drives foreclosure/vacancy consequences):** DeKalb County maintains a foreclosure registry framework requiring post-foreclosure registration information (owner/agent contact info, parcel/address, transfer date, recording info) and fees for foreclosed real property. In addition, the City of Decatur's nuisance/abatement framework (Chapter 54, Article III) authorizes municipal reporting, hearings, abatement, and lien/collection mechanisms for dangerous/unsanitary premises and

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 20

vacant unsecured buildings, including notice and service procedures as amended by ordinance.

III.    JURISDICTION AND VENUE

17. This Court has **subject-matter jurisdiction** over this action pursuant to the **Georgia Constitution**, which provides that the superior courts have jurisdiction in all cases except as otherwise provided, and **exclusive jurisdiction** in cases respecting **title to land** and in specified classes of cases. Plaintiffs seek, among other relief, **injunctive and declaratory relief, equitable accounting**, and **cancellation/quiet-title–type relief** affecting a Georgia security deed and the power of sale over real property located in DeKalb County, placing this dispute squarely within the Superior Court's constitutional authority.

18. This Court also has authority to adjudicate Plaintiffs' **federal statutory claims** because Congress expressly permits actions under **RESPA, TILA**, and the **FDCPA** to be brought either in a United States district court **or in any other court of competent jurisdiction**, and Plaintiffs' claims arise from servicing and enforcement conduct directed at a Georgia homestead. Plaintiffs' federal claims (including those arising under **12 U.S.C. § 2605, 15 U.S.C. § 1601 et seq.**, and **15 U.S.C. § 1692 et seq.**) are therefore properly heard alongside Plaintiffs' Georgia

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 21

statutory and common-law claims in a single proceeding to avoid inconsistent rulings and to provide complete relief.

19. This Court has **personal jurisdiction** over Defendants under Georgia's long-arm statute, **O.C.G.A. § 9-10-91**, because Defendants (and/or their agents) transacted business within Georgia and/or committed tortious acts and caused tortious injury in Georgia by servicing, collecting, and pursuing foreclosure-related enforcement activity directed at the Property and Plaintiffs in DeKalb County. Defendants purposefully directed mortgage-servicing, debt-collection, and foreclosure-related conduct toward a Georgia homestead and thereby subjected themselves to jurisdiction consistent with due process.

20. **Venue is proper in DeKalb County** because this is a case respecting title to land and the enforcement of a Georgia security deed against real property located in DeKalb County. The Georgia Constitution provides that **"[c]ases respecting titles to land shall be tried in the county where the land lies."** Plaintiffs' requested relief—declarations concerning enforcement authority, injunctions preventing foreclosure/sale/dispossession, and cancellation/reformation/quiet-title–type remedies—directly concerns the Property and must be adjudicated where the Property lies.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 22

21. Venue is further supported because the operative events giving rise to Plaintiffs' claims occurred in, were directed to, and caused injury in DeKalb County, including servicing communications, delinquency assertions, foreclosure-related notices, and enforcement steps tied to the Property. Defendants' foreclosure posture necessarily invokes Georgia's power-of-sale framework—under which powers of sale "shall be strictly construed and shall be fairly exercised," **O.C.G.A. § 23-2-114**—and Georgia's foreclosure-notice requirements, including **.O.C.G.A. § 44-14-162.2** (notice identifying the entity with full authority to negotiate, amend, and modify).

22. The local governmental interests implicated by foreclosure escalation in DeKalb County further underscore the appropriateness of venue and the need for equitable relief. DeKalb County has adopted a **Foreclosure Registry** ordinance requiring registration and responsible-contact information for foreclosed real property **(DeKalb County Code of Ordinances, Chapter 18, Article IV, § 18-102)** and has adopted findings supporting a **Vacant Property Registry** to prevent blight and ensure accountability for compliance with applicable law **(Chapter 18, Article V, § 18-116)**.

23. To the extent the Property is within the City of Decatur's municipal boundaries (or to the extent municipal abatement policies reflect the community interests at

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 23**

stake), the City's Code of Ordinances likewise reflects strong public interests in preventing unsafe, unsecured, and nuisance conditions that can follow wrongful foreclosure and vacancy, including abatement procedures under **Decatur Code of Ordinances, Chapter 54, Article III, § 54-63** (report, notice, hearing, and abatement authority for unsanitary/dangerous premises, including vacant unsecured buildings).

24. Courts recognize that challenges to wrongful foreclosure and improper power-of-sale enforcement are appropriately heard where the property lies and where the foreclosure-related conduct occurred, and Georgia law supplies the governing standards for fairness and statutory compliance in exercising the power of sale. See, e.g., **Calhoun First Nat'l Bank v. Dickens**, 264 Ga. 285 (1994) (wrongful foreclosure remedies where power of sale not fairly exercised under **O.C.G.A. § 23-2-114**). In addition, Plaintiffs' FDCPA claims arise from foreclosure-related collection communications, which the Eleventh Circuit has recognized can constitute covered debt-collection activity.

25. Accordingly, **jurisdiction and venue are proper in this Court** as to all Defendants, and this Court is empowered to grant declaratory relief, injunctive relief, equitable remedies (including accounting and corrective relief affecting the security deed/power of sale), and statutory damages necessary to resolve the

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS. AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 24**

claims arising from the servicing and enforcement conduct directed at Plaintiffs and the Property.

## IV. FACTUAL ALLEGATIONS

26. Plaintiffs **Dion Andre Lee** and **Carla Carmen Williams** reside at and occupy the single-family residential property located at **1000 Cathedral Place, Decatur, DeKalb County, Georgia 30034** (the "Property"). The Property is Plaintiffs' primary residence and homestead. Plaintiffs have continuously treated the Property as their home and have maintained it. The Property is not held out for rent as a business venture and is not operated as an investment property.

27. The Property is improved with a large single-family dwelling and substantial acreage. Available property profile data reflects that the home was built in or around 2006 and is a multi-bedroom, multi-bath residence with significant living area and land—facts relevant to valuation, equity, and the unique harm posed by foreclosure. Plaintiffs have substantial personal and family reliance interests in remaining in the home, including stability, continuity, and preservation of accumulated equity.

28. On or about **March 18, 2024**, Plaintiffs executed a residential **Promissory Note** in the original principal amount of approximately **$518,500.00**, payable to **United**

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 25**

Wholesale Mortgage, LLC ("UWM"), with a fixed interest rate stated on the Note (9.25%) and payments due on the first of each month. On the same date, Plaintiffs executed a **Georgia Security Deed** encumbering the Property and granting a power of sale consistent with Georgia law and the instrument's terms. The Security Deed identified **Mortgage Electronic Registration Systems, Inc. ("MERS")** as grantee/nominee for the original lender and its successors/assigns, and it was recorded in the DeKalb County public records on or about **March 19, 2024**.

29. On or about **March 19, 2024**, the Property was acquired through an arm's-length sale at a purchase price reflected in available records of approximately **$620,000**, with a substantial down payment of approximately **$101,500**. Public record summaries reflect the warranty deed transfer to **Dion A. Lee** on that date. Plaintiffs further allege that **Carla Carmen Williams** is a co-borrower and owner-occupant of the Property and that Plaintiffs' bankruptcy schedules describe the Property interest as **joint ownership,** while the loan documents confirm Carla's obligations and relationship to the homestead as a signing borrower on the Note and Security Deed.

30. Plaintiffs entered the transaction in good faith intending to perform. Plaintiffs reasonably expected that (a) payments would be credited promptly and accurately;

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE; NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 26

(b) escrow for taxes and insurance would be handled transparently and in compliance with applicable servicing standards; and (c) if hardship arose, Defendants would fairly administer loss-mitigation review rather than manufacture or compound default through opaque accounting practices.

31. The chain of servicing and enforcement authority became materially important as foreclosure pressure escalated. Plaintiffs received communications that attributed ownership, servicing, and enforcement roles to different entities. Plaintiffs later discovered that borrower-facing communications, recorded assignment activity, and litigation positions could diverge in ways that obscured who had lawful authority to negotiate, correct errors, and control enforcement decisions.

32. Defendant **NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint")** acted as the day-to-day servicer on Plaintiffs' account, controlling statements, payment posting, escrow calculations, fee assessment, and loss-mitigation processing. Defendant **Athene Annuity and Life Company ("Athene")** is alleged to be the purported assignee/beneficiary and secured-creditor claimant for whose benefit servicing and enforcement actions were pursued, including stay-relief litigation. Defendants' authority assertions are material because Georgia's nonjudicial foreclosure framework requires strict statutory compliance and fair exercise of any power of sale. See, e.g., **O.C.G.A. § 23-2-114** (power of sale must

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 27**

be fairly exercised) and **O.C.G.A. § 44-14-162.2** (notice identifying the entity with "full authority" to negotiate, amend, and modify). See also **You v. JP Morgan Chase Bank, N.A., 293 Ga. 67 (2013); TKW Partners, LLC v. Archer Capital Fund, L.P., 302 Ga. App. 443 (2010).**

33. Valuation and equity are central to this dispute. Available market/property profile data reflected an estimated market value in excess of **$640,000** as of late 2025, with positive equity and a loan balance materially below that value. Plaintiffs allege that Defendants' later litigation positions and enforcement narratives attempted to minimize or negate equity through inconsistent totals, disputed arrearage calculations, and assumptions that do not reflect a reconciled ledger.

34. Plaintiffs did not deliberately "game" the system. Plaintiffs prioritized housing stability, made payments when able, sought clarification when figures shifted, and repeatedly attempted to resolve the account through lawful, sustainable terms. Plaintiffs' disputes arose from a combination of hardship and **servicing conduct**—including payment application practices, escrow volatility, and fee layering—that amplified default rather than guiding cure.

35. Plaintiffs' occupancy and homestead status make the harm from foreclosure uniquely severe and not fully remediable after the fact. Foreclosure would cause loss of a unique residence, loss of equity, and destabilization that cannot be

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 28**

meaningfully undone once a sale or dispossession occurs. These facts also implicate local housing-stability policy in DeKalb County and (to the extent applicable) the City of Decatur, including local foreclosure/vacant-property regulatory frameworks adopted pursuant to state authorization. See, e.g., **O.C.G.A. § 44-14-14** (authorization for local vacant/foreclosed registration ordinances), DeKalb County's registry provisions (e.g., **Chapter 18, Article IV, § 18-102** and **Article V, § 18-116**), and City of Decatur nuisance/abatement procedures for vacant unsecured buildings (e.g., **Chapter 54, Article III, § 54-63**).

36. After Shellpoint began servicing the loan, Plaintiffs received periodic statements showing amounts due, escrow components, fees, and delinquency claims that fluctuated without a stable, intelligible reconciliation. Plaintiffs observed discrepancies between amounts transmitted and amounts credited, and they encountered inconsistent "total due" and "arrears" figures across different servicing communications.

37. A Shellpoint mortgage statement dated **July 8, 2025** illustrates the account's escalating posture and the mechanics of the dispute. That statement reflected (among other figures) an outstanding principal balance of approximately **$514,753.94**, a fixed interest rate of **9.2500%**, a "contractual due date" of **April**

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 29

**1, 2025,** and a "total amount due" of approximately **$25,617.01** with a scheduled late charge if not received by mid-August 2025. The statement also reflected a "regular monthly payment" of approximately **$4,978.21** and identified large "overdue payments" totals—figures Plaintiffs dispute as inflated by posting rules and fee layering.

38. The same statement expressly warned that **partial payments may be held in a suspense account and not applied** to the mortgage until a full monthly payment amount is accumulated, while fees and charges continue to accrue. Plaintiffs allege that this practice—when combined with unclear cure guidance and shifting monthly figures—functioned as a trap that expanded delinquency rather than curing it, particularly where escrow volatility and fee assessments altered what Shellpoint deemed a "full" payment.

39. Plaintiffs repeatedly requested clarity on (a) how funds were being applied; (b) what amounts were required to bring the account current; and (c) whether escrow increases were based on a lawful, supported analysis. Plaintiffs contend Shellpoint failed to provide a timely, comprehensive, and intelligible reconciliation sufficient for a reasonable borrower to cure under stable terms.

40. Plaintiffs allege that the account ledger became unreliable for enforcement purposes because the "default" narrative depended on servicer-controlled posting

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 30

rules and internal calculations that were not consistently disclosed or reconciled. Plaintiffs further allege that this unreliability tainted later loss-mitigation decisions and foreclosure escalation.

41. Plaintiffs also allege that enforcement-facing numbers changed depending on context—monthly statements versus loss-mitigation correspondence versus bankruptcy filings versus stay-relief pleadings—indicating that Defendants lacked a single reconciled baseline before escalating foreclosure.

42. As a result, Plaintiffs were deprived of a fair, transparent path to cure and reinstatement. Plaintiffs allege that a servicer exercising reasonable diligence would provide stable reinstatement figures and a meaningful explanation for escrow changes and fee triggers. Plaintiffs allege Shellpoint did not do so.

43. The disputed servicing record became the foundation for foreclosure referral and enforcement pressure. This is material because Georgia requires fairness in the exercise of a power of sale (**O.C.G.A. § 23-2-114**) and strict compliance with notice requirements tied to lawful enforcement authority (**O.C.G.A. § 44-14-162.2**). See **Calhoun First Nat'l Bank v. Dickens, 264 Ga. 285 (1994); James v. Bank of America, N.A.** (Georgia Court of Appeals authority applying § 23-2-114 standards).

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 31**

44. Plaintiffs preserved records of statements, communications, and payment attempts and repeatedly expressed willingness to resolve the loan through sustainable terms rather than forfeiture. Plaintiffs allege Defendants' practices made resolution harder and foreclosure more likely.

45. Plaintiffs contend these servicing defects were a substantial cause of the foreclosure posture: delinquency figures grew through a combination of suspense handling, escrow volatility, and fee layering, while Defendants failed to provide the clear accounting required for fair borrower cure and lawful enforcement decision-making.

46. A central dispute concerns escrow administration and the compounding impact of fees and suspense handling. Plaintiffs allege that escrow components increased without a transparent, borrower-understandable breakdown and that the resulting payment volatility contributed directly to the appearance of default.

47. Plaintiffs further allege that the monthly payment demands shifted across time and across documents. For example, Defendants' enforcement communications later referenced multiple different monthly payment amounts (including amounts around \$4,848.44, \$4,949.08, and \$4,978.21) over the same general delinquency period, reflecting volatility and inconsistent accounting inputs.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 32**

48. Plaintiffs allege late fees and default-related charges were assessed even when payments were transmitted but held in suspense or treated as "insufficient" due to shifting monthly totals. Plaintiffs allege this practice increased the amount required to reinstate and created additional barriers to cure.

49. Plaintiffs requested an itemized reconciliation showing: (a) receipt dates for each payment; (b) how each payment was applied or held; (c) the suspense balance timeline; (d) escrow disbursement history; (e) escrow shortage calculations; (f) fee triggers; and (g) any reversals/waivers. Plaintiffs allege that a complete and intelligible accounting was not provided before foreclosure escalation continued.

50. The same core numbers also shifted across Defendants' own channels: arrears totals and escrow-shortage figures differed between pre-motion communications and stay-relief pleadings, and secured-claim amounts reflected yet another set of totals. Plaintiffs allege these inconsistencies demonstrate a failure to reconcile the ledger before invoking severe enforcement remedies.

51. Plaintiffs allege that arrearage inflation tainted downstream decisions: it was cited to deny retention options, to justify foreclosure escalation, and to support stay-relief litigation. Plaintiffs allege that if the arrears and escrow figures were inflated or miscalculated, the foreclosure posture and all related enforcement decisions are likewise defective.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 33**

52. Plaintiffs further allege that proper servicing would have required meaningful correction once discrepancies were raised. Plaintiffs allege Shellpoint had exclusive control over the ledger and the ability to reconcile it, yet enforcement proceeded while the account remained disputed.

53. Plaintiffs allege these defects caused harm beyond foreclosure risk, including credit impairment, stress, and the loss of time and resources needed to defend the homestead. Plaintiffs allege the harms flowed from servicing opacity and inconsistent accounting rather than from a clear, stable borrower refusal to pay.

54. Plaintiffs specifically dispute the characterization that they were "unable or unwilling" to perform. Plaintiffs allege they sought to perform under lawful and transparent terms and that servicer-controlled posting and escrow/fee practices undermined performance.

55. Plaintiffs therefore seek court-supervised accounting and correction to establish the true account status and prevent enforcement based on unreliable figures.

56. Plaintiffs proactively sought foreclosure-prevention and home-retention assistance and provided financial information supporting affordability of a sustainable payment structure. Plaintiffs sought a durable resolution—particularly a permanent restructuring—rather than delay.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED
FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE
FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH
AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND
FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE
OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11
U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS,
AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT
COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY
PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 34

57. Plaintiffs submitted income and expense information demonstrating ability to pay an affordable modified amount and maintained owner-occupancy. Plaintiffs also executed third-party authorization(s) permitting an authorized representative to communicate with Shellpoint to facilitate submission and processing; Plaintiffs allege Shellpoint's communications and processing were nonetheless inconsistent and did not produce a compliant, good-faith evaluation.

58. On or about **October 21, 2025**, Shellpoint issued a written denial letter addressing "Loss Mitigation Home Retention" options. In that letter, Shellpoint denied a **repayment plan** expressly citing **"active bankruptcy"**; denied long-term forbearance stating the information provided was "not sufficient to verify hardship"; and denied short-term forbearance stating the loan exceeded allowable delinquency. Shellpoint also pointed Plaintiffs toward the federal/state **Homeowner Assistance Fund (HAF)** concept and shifted focus to exit options (short sale or deed-in-lieu), despite Plaintiffs' expressed desire to retain the home.

59. Plaintiffs allege this denial posture was not based on a reconciled ledger and did not fairly address Plaintiffs' disputed accounting issues—especially where Defendants' own figures varied materially across statements and enforcement communications. Plaintiffs allege that a denial premised on disputed delinquency

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 35**

totals is inherently unreliable and functions as a pretext to proceed toward foreclosure.

60. Plaintiffs further allege that denial based on "active bankruptcy," while foreclosure posture was simultaneously advanced through enforcement channels, reflects a dual-track dynamic that deprived Plaintiffs of a meaningful opportunity to stabilize the loan under fair terms.

61. Plaintiffs also experienced breakdowns in communication during mitigation efforts, including shifting document demands, inconsistent call responses, and lack of a stable cure roadmap tied to accurate numbers. Plaintiffs allege these conditions undermined a fair loss-mitigation process.

62. Plaintiffs' requested restructuring is direct and stabilizing: **a fixed 3% interest rate, a monthly payment Plaintiffs can reasonably afford**, and **no further review or trial-period requirement**. Plaintiffs allege this is an equitable and practical solution given the Property's value and the need to end recurring disputes caused by opaque servicing.

63. Plaintiffs allege that rather than engaging in good-faith corrective review and sustainable resolution, Defendants treated loss mitigation as a procedural endpoint to justify enforcement, while disputed accounting remained unresolved.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 36**

64. Plaintiffs allege that because the servicing record was never reconciled, the denial and "excess delinquency" rationale cannot be trusted as a legitimate basis to foreclose a family from its homestead.

65. Plaintiffs allege these denials and process failures materially contributed to foreclosure escalation and the risk of irreversible harm.

66. On or about **October 6, 2025**, Plaintiffs filed a **Chapter 7** bankruptcy petition in the **U.S. Bankruptcy Court for the District of Nevada**, triggering the automatic stay under **11 U.S.C. § 362(a)**. Plaintiffs filed to stabilize and lawfully address debts and expected that enforcement pressure would pause while the bankruptcy proceeded.

67. Plaintiffs allege Defendants had notice of the bankruptcy case and understood the automatic stay's protections. Plaintiffs allege Defendants nonetheless continued an enforcement strategy focused on accelerating foreclosure posture rather than resolving disputed accounting and creating sustainable terms.

68. Prior to the bankruptcy filing, foreclosure steps were already underway. Property profile data reflected that a foreclosure notice was recorded on or about **September 11, 2025**, with an original sale date reflected as **October 7, 2025**, and a stated sale location at **556 N. McDonough Street, Decatur**. Plaintiffs allege

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 37**

these foreclosure steps magnify the urgency of injunctive relief and accounting correction.

69. After the bankruptcy filing, Defendants—through **Tiffany & Bosco, P.A.**—pursued a **Motion for Relief From the Automatic Stay** filed on or about **December 5, 2025**, seeking authority to foreclose and obtain possession of the Property. The motion asserted a default beginning **April 1, 2025**, asserted specific arrears totals and escrow shortages, and asserted that the Property lacked meaningful equity once Defendants' disputed totals and "cost of sale" assumptions were applied.

70. Plaintiffs allege that the stay-relief filings relied on figures and narratives that were materially inconsistent with other account information and valuation data, including inconsistent arrears totals and inconsistent secured-claim amounts appearing across correspondence, schedules, and pleadings. Plaintiffs allege that enforcement based on such shifting numbers is inequitable and evidences the need for judicial accounting.

71. Plaintiffs further allege that Defendants sought expedited enforcement advantages in bankruptcy, including a proposed order terminating the stay and waiving the usual post-order waiting period, thereby heightening the risk of foreclosure before the account's true status could be adjudicated.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 38**

72. Plaintiffs allege the stay-relief litigation was used as leverage: rather than first correcting the ledger and offering fair home-retention terms, Defendants pursued litigation designed to remove protections and accelerate foreclosure.

73. Plaintiffs allege that federal bankruptcy protections and federal servicing protections are meant to operate as safeguards, not as obstacles to be eliminated through pressure tactics supported by disputed accounting. Plaintiffs allege the record here shows the opposite.

74. Plaintiffs allege foreclosure is unnecessary to protect Defendants' legitimate interests because a court-supervised restructuring would stabilize performance, preserve equity, and prevent ongoing disputes fueled by opaque servicing. Plaintiffs allege a 3% restructuring with an affordable payment and no trial period is equitable given the circumstances and the home's value.

75. Plaintiffs allege Defendants' conduct before and after bankruptcy reflects a consistent pattern: failure to reconcile errors, denial of workable retention assistance, and escalation toward foreclosure using inconsistent figures. Plaintiffs allege court intervention is required to prevent further harm.

76. Plaintiffs have suffered and continue to suffer actual damages from Defendants' servicing and enforcement conduct, including costs incurred to respond to

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 39

foreclosure pressure and litigation, impairment of credit standing, and severe emotional distress and instability caused by the threatened loss of their home.

77. Plaintiffs allege the core driver of harm is unreliable accounting—particularly suspense handling, escrow volatility, and fee layering—that created a delinquency narrative inconsistent with a transparent, reconciled ledger. Plaintiffs seek an equitable accounting to establish the true status of principal, interest, escrow, fees, suspense balances, and posting history.

78. Plaintiffs have consistently sought a practical solution and remain willing to make a sustainable monthly payment. Plaintiffs specifically request a **permanent court-ordered loan restructuring** providing **3% fixed interest**, an **affordable monthly payment**, and **no further review or trial-period requirement**, together with correction of improper fees and escrow errors and a stable, lawful servicing framework going forward.

79. Without judicial intervention, the harm will become irreparable: a foreclosure sale or dispossession would permanently displace Plaintiffs from their homestead, destroy accumulated equity, and cause long-term financial and emotional damage that cannot be fully remedied after the fact.

80. A real, present controversy exists regarding the legality of Defendants' servicing record, the accuracy of amounts claimed due, and Defendants' right to enforce

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 40

through foreclosure based on disputed figures. Plaintiffs seek a judicial determination that clarifies rights and obligations and prevents future recurrence.

81. Plaintiffs bring this action to establish the true account status, enforce compliance with applicable servicing and foreclosure standards, stop unlawful foreclosure escalation, and protect their homestead and equity through declaratory and injunctive relief, court-supervised accounting, and permanent restructuring consistent with fairness and stability.

## V.    CAUSES OF ACTION

### A.    FIRST CAUSE OF ACTION: VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA), 12 U.S.C. § 2605, AND REGULATION X, 12 C.F.R. PART 1024 — AGAINST DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING

82. Plaintiffs reallege and incorporate by reference paragraphs **1 through 81** as though fully set forth herein.

83. Defendant **NewRez LLC d/b/a Shellpoint Mortgage Servicing** (**"Shellpoint"**) is a "servicer" of a federally related mortgage loan within the meaning of **12 U.S.C. § 2605(i)** and is therefore subject to the duties and prohibitions of **RESPA, 12 U.S.C. § 2605,** and the CFPB's implementing

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 41

**Mortgage Servicing Rules** in Regulation X, **12 C.F.R. Part 1024**. These authorities impose affirmative obligations on Shellpoint to, among other things: (a) maintain policies and procedures reasonably designed to achieve compliance (**12 C.F.R. § 1024.38**); (b) provide timely and accurate borrower information and servicing administration; (c) conduct proper escrow administration and disclosures (**12 C.F.R. § 1024.17**); (d) respond properly to borrower notices of error and requests for information (**12 C.F.R. §§ 1024.35–1024.36**); and (e) implement and follow loss-mitigation procedures, including restrictions on foreclosure escalation where Regulation X applies (**12 C.F.R. § 1024.41**). In addition, **12 U.S.C. § 2605(k)** prohibits servicers from engaging in specified misconduct, including failing to take timely action to correct servicing errors and failing to comply with CFPB servicing regulations.

84. Shellpoint received mortgage payments from Plaintiffs but, instead of promptly crediting those funds to principal, interest, and escrow in a manner that reduced delinquency exposure, Shellpoint placed and retained payments in suspense and treated the account as delinquent while fees continued to accrue. Shellpoint's own statements warned that partial payments "are not applied" and may be held in suspense until a "full monthly payment" is

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 42**

accumulated, yet Shellpoint simultaneously increased the "full payment" demand through escrow volatility and fee layering, creating an unfair compounding effect. Plaintiffs allege that Shellpoint failed to provide a clear, stable reconciliation showing: (a) receipt dates; (b) posting dates; (c) allocation to principal/interest/escrow/fees; (d) the suspense balance chronology; and (e) the specific cure amount needed at each point in time. Plaintiffs further allege Shellpoint did not take timely corrective action after disputes were raised—conduct that violates **12 U.S.C. § 2605(k)(1)** and Shellpoint's duties under **12 C.F.R. §§ 1024.35–1024.38** to investigate, correct, and communicate accurate servicing information where errors in payment application and account maintenance are asserted.

85. Shellpoint assessed and increased escrow components and asserted escrow "shortages" without providing a transparent, intelligible, and timely escrow accounting sufficient for a reasonable borrower to verify accuracy and cure. Plaintiffs allege Shellpoint failed to provide meaningful escrow analyses and disbursement histories showing the basis for projected taxes/insurance, the shortage/deficiency methodology, and the specific transaction-level escrow activity supporting the amounts demanded. These practices violate the escrow administration and disclosure framework of **12 C.F.R. § 1024.17** and

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 43**

Shellpoint's broader duty to maintain compliant servicing systems and accurate account records under **12 C.F.R. § 1024.38** and **12 U.S.C. § 2605(k)**.

86. Plaintiffs sought home-retention relief and provided financial information supporting an affordable payment structure, including the goal of a permanent restructure that would stabilize performance. Shellpoint nonetheless issued denial positions that cited "active bankruptcy," "insufficient hardship," and "excess delinquency" while Plaintiffs' delinquency totals themselves remained disputed and unreconciled. Plaintiffs allege Shellpoint's loss-mitigation handling was not a good-faith, compliance-driven evaluation because it relied on an inflated and shifting ledger, failed to resolve servicing errors before decisioning, and did not provide a meaningful, consistent cure roadmap. Such conduct violates **12 C.F.R. § 1024.41** (loss-mitigation procedures, evaluation duties, and related safeguards) and **12 U.S.C. § 2605(k)** (prohibiting noncompliant servicing conduct and failures to correct known servicing errors). See, e.g., *Lage v. Ocwen Loan Servicing, LLC,* 839 F.3d 1003 (11th Cir. 2016) (addressing Regulation X loss-mitigation standards), and *Renfroe v. Nationstar Mortg.,*

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 44**

*LLC*, 822 F.3d 1241 (11th Cir. 2016) (addressing RESPA damages/causation in servicing disputes).

87. Plaintiffs allege Shellpoint advanced foreclosure posture and enforcement strategy while loss-mitigation issues and servicing disputes remained unresolved and while the account history was not reconciled. Plaintiffs further allege foreclosure escalation was used as leverage to force exit options rather than to cure errors and stabilize the loan. Where Regulation X applies, **12 C.F.R. § 1024.41(f)–(g)** restricts foreclosure escalation in protected circumstances, and the overall framework requires servicers to use reasonable diligence, provide compliant notices, and avoid conduct that deprives borrowers of a meaningful opportunity for home-retention review. Shellpoint's conduct—pursuing enforcement on an unreconciled ledger and using disputed delinquency figures as the basis to deny or foreclose—constitutes prohibited servicing conduct under **12 U.S.C. § 2605(k)** and noncompliance with Regulation X's loss-mitigation safeguards.

88. As a direct and proximate result of Shellpoint's RESPA and Regulation X violations, Plaintiffs suffered **actual damages** recoverable under **12 U.S.C. § 2605(f)**, including (without limitation): improperly assessed fees and charges; increased arrearage caused by suspense handling and escrow

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 45**

opacity; loss of time and resources attempting to correct and reconcile the account; credit impairment and reporting harm arising from inflated delinquency; and emotional distress and disruption caused by foreclosure escalation. Plaintiffs further allege Shellpoint's misconduct reflects a **pattern or practice** of noncompliance warranting additional statutory remedies under **12 U.S.C. § 2605(f)**. Plaintiffs also seek corrective and equitable relief to the extent necessary to effectuate compliance and prevent foreclosure based on unreliable records, including court-supervised accounting and record correction in support of the requested permanent restructuring (3% fixed interest; affordable monthly payment; no further review period) and to prevent displacement that would trigger local foreclosure/vacancy harms recognized by DeKalb County and City of Decatur housing-stability frameworks.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 46**

**B. SECOND CAUSE OF ACTION: VIOLATION OF THE TRUTH IN LENDING ACT (TILA), 15 U.S.C. § 1601 ET SEQ., AND REGULATION Z, 12 C.F.R. PART 1026 – AGAINST DEFENDANT UNITED WHOLESALE MORTGAGE, LLC, AND DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING**

89. Plaintiffs reallege and incorporate by reference paragraphs **1 through 88** as though fully set forth herein. This cause of action arises from **inaccurate, incomplete, and misleading credit and servicing disclosures** that impaired Plaintiffs' ability to understand the true cost and operation of the loan, to obtain reliable cure/reinstatement information, and to protect their home from foreclosure based on **unstable and unreconciled figures**. TILA is a remedial consumer-protection statute enacted to "assure a meaningful disclosure of credit terms," **15 U.S.C. § 1601(a)**, and Regulation Z implements those requirements for mortgage origination and mortgage servicing, including: (a) creditor disclosure duties at consummation for closed-end mortgage loans **(15 U.S.C. § 1638; 12 C.F.R. § 1026.19(e)–(f)** and the integrated disclosures such as **12 C.F.R. §§ 1026.37–1026.38)**; and (b) ongoing servicing disclosure duties through accurate **periodic mortgage statements (15 U.S.C.**

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 47**

§ 1638(f); **12 C.F.R. § 1026.41**) and servicing rules related to payment crediting and partial-payment treatment (**12 C.F.R. § 1026.36(c)**).

90. Defendant **United Wholesale Mortgage, LLC ("UWM")**, as the originating creditor, was required to ensure that Plaintiffs received clear, accurate, and complete mortgage disclosures at or before consummation in the form and timing required by Regulation Z for closed-end transactions secured by real property. Plaintiffs allege that, upon information and belief, UWM's disclosure package and underwriting representations **failed to provide meaningful consumer-understandable clarity** regarding the true payment structure and long-term cost of credit, including but not limited to the accurate presentation of: (a) the full payment schedule, (b) the total monthly payment components where escrow is required or expected, (c) the total of payments/finance charge/APR calculations as applicable, and (d) any disclosure of payment volatility risk associated with escrow administration. Plaintiffs further allege that deficiencies at origination foreseeably increased the probability that subsequent servicing "amount due" communications would be confusing and that borrowers would be exposed to default and foreclosure risk without a stable understanding of the payment mechanics. Plaintiffs reserve the right to plead additional specificity as discovery

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 48

produces UWM's full origination file, including the Loan Estimate/Closing Disclosure and any underwriting documentation relevant to Plaintiffs' ability to understand and manage the loan.

91. Defendant **Shellpoint**, as the servicer responsible for billing and borrower communications, was required to provide periodic statements that comply with **15 U.S.C. § 1638(f)** and **12 C.F.R. § 1026.41**, including accurate and non-misleading disclosure of (among other things): the amount due and due date; an explanation of the amount due (principal, interest, escrow, fees); transaction activity; partial payment/suspense information; contact information; account information; and delinquency information. Plaintiffs allege Shellpoint violated these requirements by sending statements and related communications that **did not accurately disclose** the true status of Plaintiffs' loan, the true basis for changing amounts due, and the true application of payments—especially where Shellpoint's own records simultaneously reflected suspense-account holding, fee accrual, and shifting monthly payment demands.

92. Plaintiffs allege Shellpoint's periodic statements acknowledged that partial payments may be held in suspense, but failed to present suspense-account effects in a manner that enabled a reasonable borrower to understand exactly:

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 49**

(a) how much was being held; (b) what precise additional amount was required for application; (c) how escrow fluctuations changed what Shellpoint deemed a "full" monthly payment; and (d) how fees assessed during suspense holding altered cure amounts. Plaintiffs allege that this violated Regulation Z's requirement that periodic statements contain meaningful, accurate information about the amount due and the borrower's delinquency status, and it also violated the servicing standards tied to partial-payment handling and prompt crediting principles under **12 C.F.R. § 1026.36(c)** when applied to the real-world servicing posture reflected in Shellpoint's statements.

93. Plaintiffs allege that Shellpoint's periodic statements failed to provide a clear, stable explanation of why the monthly payment demand increased (or varied across time) and how escrow charges and asserted shortages were calculated. Instead, Plaintiffs received "total due" and "overdue" presentations that obscured the real drivers of delinquency and prevented Plaintiffs from knowing what precise reinstatement amount would restore the loan to a current status. Plaintiffs allege that statements that present delinquency and cure totals without a reliable, intelligible breakdown

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 50**

frustrate Regulation Z's consumer-transparency purpose and function as misleading communications in a foreclosure context.

94. Plaintiffs allege that Shellpoint's "amount due," "arrears," and "cure" numbers materially shifted depending on the document and audience— monthly statements, loss-mitigation correspondence, pre-motion enforcement communications, bankruptcy schedules, and stay-relief filings—without a single reconciled ledger explanation. Plaintiffs allege this pattern is incompatible with TILA's requirement of meaningful disclosure and supports the inference that the periodic statements failed to accurately reflect the debt's character and amount. Courts recognize that Regulation Z's periodic-statement mandate exists to provide borrowers with information that is only useful if it·is **accurate and fair**, and the Eleventh Circuit has expressly discussed the statutory requirement and its consumer-protection purpose in disputes involving mortgage statements and debt communications. See, e.g., **Lamirand v. Fay Servicing, LLC**, 38 F.4th 976 (11th Cir. 2022) (discussing 15 U.S.C. § 1638(f) and 12 C.F.R. § 1026.41 and rejecting a categorical "conflict" argument where mortgage statements contain collection features); see also **Shaffer v. Servis One, Inc.**, 347 F. Supp. 3d 1039 (M.D. Fla. 2018) (recognizing the Regulation Z periodic statement framework); **Gonzalez v.**

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 51**

**Specialized Loan Servicing LLC**, 2023 WL ___ (C.D. Cal. Sept. 13, 2023) (finding allegations sufficient to plausibly infer noncompliance with § 1638(f) and § 1026.41 at the pleading stage).

95. Plaintiffs allege Defendants' TILA/Regulation Z violations were material because Plaintiffs reasonably relied on the amounts, due dates, and cure information communicated by the creditor/servicer to decide: when and how to pay, whether additional amounts were required, how to reinstate, and how to pursue home-retention relief. By receiving statements that were not reliable and that did not transparently explain suspense/escrow/fee impacts, Plaintiffs were deprived of a fair chance to cure under stable terms and were pushed closer to foreclosure escalation on a distorted record.

96. Plaintiffs allege the disclosure failures did not occur in a vacuum: inaccurate periodic statement information and opaque "total due" messaging were used to justify denial of home-retention options and to rationalize escalation toward foreclosure and stay-relief litigation. Plaintiffs allege that this disclosure breakdown undermined the very stabilization outcome Plaintiffs sought—i.e., a permanent restructuring that restores predictability and affordability (3% fixed interest, affordable monthly payment, and no additional review period).

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 52

97. Plaintiffs allege actual damages recoverable under 15 U.S.C. § 1640(a) and related provisions, including financial loss from improperly assessed fees and charges, loss of use of funds, credit impairment, time and resources spent attempting to reconcile the account, and emotional distress from foreclosure escalation driven by unreliable statements. Plaintiffs further allege that inaccurate statement-driven foreclosure escalation threatens local public harms recognized in Georgia's anti-blight framework and local ordinances addressing foreclosure and vacancy consequences, including O.C.G.A. § 44-14-14 (authorizing local foreclosure/vacant property registration ordinances), DeKalb County Code Chapter 18 (including foreclosure/vacant property registry provisions), and the City of Decatur's nuisance/abatement framework for dangerous or unsecured vacant premises (Decatur Code Chapter 54, Article III, including § 54-63), demonstrating the strong public interest in preventing wrongful foreclosure based on misleading account disclosures.

98. Plaintiffs seek judgment against UWM and Shellpoint for violations of TILA and Regulation Z and request all relief authorized by law, including: (a) actual damages under 15 U.S.C. § 1640(a); (b) legal fees and costs to the extent authorized by 15 U.S.C. § 1640(a)(3); (c) declaratory and corrective

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 53**

relief requiring Defendants to issue **accurate, reconciled statements** reflecting true principal, escrow, fees, suspense handling, and reinstatement/payoff figures; and (d) such further equitable orders as are necessary to prevent foreclosure based on misleading disclosures— supporting Plaintiffs' requested permanent restructuring (3% fixed interest, affordable payment, and no further review period) and stabilizing performance going forward.

## C. THIRD CAUSE OF ACTION: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA), 15 U.S.C. § 1692 ET SEQ. – AGAINST DEFENDANT TIFFANY & BOSCO, P.A., AND DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING

99. Plaintiffs reallege and incorporate by reference paragraphs **1 through 98** as though fully set forth herein. This claim arises from **debt-collection conduct** tied to a consumer mortgage loan secured by Plaintiffs' primary residence and homestead. The FDCPA was enacted to eliminate abusive debt-collection practices and prohibits false, deceptive, or misleading representations and unfair practices in connection with the collection of consumer debt.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 54

100. The subject mortgage obligation is a "debt" within the meaning of **15 U.S.C. § 1692a(5)** because it arises from a transaction primarily for personal, family, or household purposes. Plaintiffs allege that the communications at issue—monthly statements, cure demands, enforcement letters, and litigation-driven payment pressure—were "in connection with" the collection of a debt because they conveyed debt information and were aimed, at least in part, at inducing payment. See **Caceres v. McCalla Raymer, LLC**, 755 F.3d 1299 (11th Cir. 2014).

101. **Defendant Tiffany & Bosco, P.A. ("T&B")** acted as a "debt collector" under **15 U.S.C. § 1692a(6)** because it regularly attempts to collect consumer debts and sent or prosecuted communications designed to obtain payment and accelerate foreclosure pressure. The Eleventh Circuit has held that a foreclosure firm's letters and documents **demanding payment** and threatening foreclosure can constitute debt-collection activity subject to **15 U.S.C. § 1692e**. See **Reese v. Ellis, Painter, Ratterree & Adams, LLP**, 678 F.3d 1211 (11th Cir. 2012).

102. *Anticipated defense addressed:* To the extent Defendants contend that foreclosure enforcement is categorically outside the FDCPA, the Supreme Court's decision in **Obduskey v. McCarthy & Holthus LLP** confirms that

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 55**

an entity engaged in **no more than** nonjudicial foreclosure is generally treated as a limited-purpose debt collector (primarily for § 1692f(6)), but it does not immunize communications that go beyond mere security-interest enforcement and function as payment demands or deceptive collection conduct.

103. **Defendant Shellpoint** acted as a "debt collector" to the extent it obtained or treated servicing of the loan in a default posture and/or used communications aimed at collecting overdue sums, including "bring your loan current" cure demands, delinquency messaging, and fee-driven collection pressure. The Eleventh Circuit has recognized that a mortgage servicer may be subject to the FDCPA where it attempts to collect payments and enforce a security interest through collection conduct. See **Birster v. American Home Mortgage Servicing, Inc.**, 481 F. App'x 579 (11th Cir. 2012).

104. Plaintiffs allege Defendants violated **15 U.S.C. § 1692e**, including § **1692e(2)(A)** and § **1692e(10)**, by repeatedly stating and leveraging **inconsistent, shifting, and unreconciled** debt amounts and arrears figures to pressure payment and justify foreclosure escalation. By way of example, Defendants' own communications and filings reflected materially different

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 56

totals and components (monthly payment amounts, escrow shortage figures, fees/costs, arrears totals, and "total owed" numbers) across: (a) periodic statements; (b) loss-mitigation/denial correspondence; (c) pre-motion cure/enforcement letters; (d) bankruptcy schedules; and (e) stay-relief litigation papers—without a single consistent ledger reconciliation supporting the numbers. Plaintiffs allege these inconsistencies were material, likely to mislead the least sophisticated consumer, and used as leverage to induce payment under threat of foreclosure.

105. Plaintiffs allege Defendants violated § 1692e(5) (threat to take action that cannot legally be taken) and § 1692f(6) (threatening nonjudicial dispossession when there is no present right to possession through an enforceable security interest), by using foreclosure threats and escalation tactics during periods when (among other defects) the account was disputed and unreconciled and Plaintiffs were under bankruptcy protection and the automatic stay unless and until relief was lawfully obtained. Plaintiffs further allege Defendants' communications and filings escalated foreclosure pressure by portraying the Property as lacking equity through disputed totals and assumptions, while simultaneously demanding payment/cure on

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 57**

unreliable numbers—conduct that is precisely the type of coercive and misleading collection pressure the FDCPA prohibits.

106.    Plaintiffs allege Defendants violated **15 U.S.C. § 1692f**, including **§ 1692f(1)**, by attempting to collect amounts not "expressly authorized" by the agreement or permitted by law and by employing a collection method that was unfair in operation: holding payments in suspense while fees and charges accrued, then using the resulting inflated delinquency to demand cure and accelerate foreclosure posture. In the Eleventh Circuit, debt collectors violate the FDCPA when they include improper charges or otherwise demand sums that the borrower is not obligated to pay under the governing documents and law. See, e.g., **Prescott v. Seterus, Inc.**, 635 F. App'x 640 (11th Cir. 2015).

107.    Plaintiffs allege that Defendants used formal processes and litigation posture—including demand-style cure communications and stay-relief litigation filings—to induce payment on disputed totals and to increase foreclosure leverage rather than first providing a reconciled accounting and lawful cure roadmap. Foreclosure-related communications that demand payment, threaten foreclosure, and convey debt information can constitute FDCPA-regulated collection activity. See **Reese**, 678 F.3d 1211, and **Caceres**, 755 F.3d 1299.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 58

108. As a direct and proximate result of Defendants' FDCPA violations, Plaintiffs suffered actual damages including out-of-pocket costs responding to collection pressure and litigation activity, increased fees and charges driven by the disputed collection posture, emotional distress, and increased risk of displacement and loss of equity. Plaintiffs are entitled to statutory damages, actual damages, and legal fees and costs under **15 U.S.C. § 1692k**.

109. Although the FDCPA's primary remedies are monetary, Plaintiffs also seek injunctive and equitable protection under Georgia law and this Court's equity powers to prevent irreparable harm driven by the same unlawful collection conduct—because wrongful foreclosure and vacancy implicate local public harms and local regulatory burdens, including DeKalb County's foreclosure/vacant property registry framework (e.g., **DeKalb County Code Chapter 18, Article IV, § 18-102; Article V, § 18-116**) and the City of Decatur's abatement authority for vacant, unsecured buildings (**Decatur Code Chapter 54, Article III, § 54-63**).

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 59**

**D. FOURTH CAUSE OF ACTION: WRONGFUL FORECLOSURE AND ATTEMPTED WRONGFUL FORECLOSURE (O.C.G.A. §§ 44-14-162 THROUGH 44-14-162.4; O.C.G.A. § 23-2-114) – AGAINST DEFENDANT ATHENE ANNUITY AND LIFE COMPANY, DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, DEFENDANT TIFFANY & BOSCO, P.A., DEFENDANT MERS, AND DOE DEFENDANTS**

110.    Plaintiffs reallege and incorporate by reference paragraphs **1 through 109** as though fully set forth herein. Under Georgia law, the **power of sale** contained in a security deed is **strictly construed and must be fairly exercised,** and a foreclosing party may be liable in tort for wrongful foreclosure or wrongful attempted foreclosure where it breaches a legal duty in the nonjudicial foreclosure process. **O.C.G.A. § 23-2-114** provides the foundational duty that powers of sale "shall be strictly construed and shall be fairly exercised." Georgia courts further recognize that a wrongful foreclosure claim requires a plaintiff to establish **(1) a legal duty; (2) breach; (3) causation; and (4) damages,** and that violations of Georgia's foreclosure statutes and/or the duty to fairly exercise the power of sale can satisfy the breach element. See, e.g., **Gregorakos v. Wells Fargo Nat'l**

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 60

Ass'n, 285 Ga. App. 744, 647 S.E.2d 289 (2007); **Heritage Creek Dev. Corp. v. Colonial Bank**, 268 Ga. App. 369, 601 S.E.2d 842 (2004); **Racette v. Bank of Am., N.A.**, 318 Ga. App. 171, 733 S.E.2d 457 (2012); **Calhoun First Nat'l Bank v. Dickens**, 264 Ga. 285, 443 S.E.2d 837 (1994).

111.   Georgia's statutory foreclosure scheme requires **strict compliance** with specific prerequisites before any nonjudicial foreclosure sale under power can be valid. Among other requirements, **O.C.G.A. § 44-14-162(a)** provides that no sale under power is valid unless it is **advertised and conducted** at the time/place and in the usual manner of sheriff's sales in the county where the property is located **and** unless written notice is given as required by **O.C.G.A. § 44-14-162.2**. Section 44-14-162 also requires that the **security instrument or assignment vesting the secured creditor with title** be **filed prior to the time of sale** in the office of the clerk of the superior court where the property is located. Georgia further prohibits any "waiver or release" of the § 44-14-162.2 notice requirement made contemporaneously with the security instrument. **O.C.G.A. § 44-14-162.3.** And where a deed under power is issued, it must contain recitals reflecting the giving of notice in compliance with § 44-14-162.2. **O.C.G.A. § 44-14-162.4.**

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 61**

112. Plaintiffs allege Defendants **breached these duties** and engaged in wrongful foreclosure conduct by initiating and advancing foreclosure posture on a servicing record that was **not reconciled, not transparent, and materially inconsistent** as to the amount allegedly due. Plaintiffs allege Shellpoint's servicing practices—including suspense-account handling, opaque escrow changes, and fee layering—**inflated arrears** and manufactured an appearance of default, which Defendants then used to justify foreclosure escalation and to portray foreclosure as inevitable. Plaintiffs further allege that Defendants' cure and arrears figures materially shifted across communications and filings, demonstrating that Defendants lacked a reliable basis to declare a true default sufficient to proceed with a power-of-sale process. Under Georgia law, a foreclosure founded upon an inaccurate or unfairly manufactured default posture violates the duty to **fairly exercise** the power of sale and supports wrongful foreclosure liability.

113. Plaintiffs allege Defendants' foreclosure posture was also defective because the **statutory notice requirements** were not strictly satisfied and/or were satisfied in a manner that was misleading in substance. **O.C.G.A. § 44-14-162.2** requires that the written notice identify the individual or entity with **full authority to negotiate, amend, and modify all terms** of the mortgage

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 62

and provide that person/entity's name, address, and telephone number. While Georgia law (as construed by the Supreme Court of Georgia) does not require that the "secured creditor" itself be named in the notice, it does require that the "full authority" contact be accurately identified. **You v. JP Morgan Chase Bank, N.A.**, 293 Ga. 67, 743 S.E.2d 428 (2013). Plaintiffs allege that Defendants' authority representations were inconsistent across borrower communications, recorded instrument activity, and enforcement filings, impairing Plaintiffs' ability to pursue lawful resolution and supporting a finding of noncompliance and unfair exercise of the power of sale.

114.    Plaintiffs allege Defendants further breached Georgia foreclosure duties by proceeding (or attempting to proceed) with enforcement **without clear, properly filed, and consistently represented enforcement authority**. Georgia law permits the holder of the security deed to exercise the power of sale even if it does not also hold the note; however, the party invoking foreclosure must be the holder/assignee of the deed (or otherwise properly vested) and must comply with the statutory framework governing notice and filings. **You**, 293 Ga. 67. In addition, **O.C.G.A. § 44-14-162(b)** requires that the security instrument or assignment vesting the secured creditor with title be filed **prior to the time of sale** in the clerk's office. Plaintiffs allege that

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 63

the assignment/authority chain involving MERS and Athene, as reflected in recorded instruments and enforcement communications, must be strictly scrutinized because any defect or inconsistency materially undermines the legality of foreclosure escalation and constitutes wrongful attempted foreclosure and unfair exercise of the power of sale.

115.    Plaintiffs also allege **wrongful attempted foreclosure** because Defendants published and circulated foreclosure-related statements and enforcement notices that contained **untrue or misleading information** about Plaintiffs' financial condition and the amount/status of the debt, and did so in a manner intended to pressure payment and facilitate foreclosure. Georgia recognizes wrongful attempted foreclosure where there is a **knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition** and resulting damages. **Aetna Fin. Co. v. Culpepper**, 171 Ga. App. 315 (1984). Plaintiffs allege that inconsistent arrears totals, disputed escrow-shortage figures, and unreconciled "total owed" narratives—when published in foreclosure communications and enforcement filings—constitute actionable attempted wrongful foreclosure conduct under this standard.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 64**

116.    Plaintiffs allege that Defendants' wrongful foreclosure and attempted wrongful foreclosure conduct caused (and continues to threaten) concrete injury, including loss of housing stability, impairment of credit standing, emotional distress, and costs incurred to defend the homestead and prevent foreclosure. Georgia courts require proof of causation and damages tied to the breach of duty, and Plaintiffs allege that Defendants' defective notice/accounting/enforcement conduct materially increased foreclosure risk and forced Plaintiffs into protective legal action to preserve the Property and its equity. See, e.g., **Calhoun First Nat'l Bank v. Dickens**, 264 Ga. 285 (1994) (duty under § 23-2-114 and causation requirement); **Gregorakos**, 285 Ga. App. 744.

117.    Plaintiffs further allege that injunctive and corrective relief is warranted because wrongful foreclosure and vacancy threaten not only private harm but local public harms recognized in Georgia's anti-blight framework and local ordinances. Georgia authorizes local vacant/foreclosed property registries, including penalties, subject to statutory limits. **O.C.G.A. § 44-14-14.** DeKalb County has adopted a **Foreclosure Registry** requiring registration and responsible contact information for foreclosed properties (**DeKalb County Code Chapter 18, Article IV, § 18-102**) and has adopted findings

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 65**

supporting a Vacant Property Registry (including **§ 18-116**). The City of Decatur's nuisance/abatement procedures authorize municipal action to clean and secure premises, including **vacant unsecured buildings**, and impose liens for abatement costs (**Decatur Code Chapter 54, Article III, § 54-63**). These local frameworks underscore why wrongful foreclosure should be enjoined where the enforcement posture is grounded in disputed records and defective statutory compliance.

118. Plaintiffs allege each Defendant contributed to the wrongful foreclosure attempt. **Athene** is the alleged beneficiary/real party in interest for whose benefit foreclosure was advanced; **Shellpoint** executed the servicing decisions and communications that created the default narrative; **Tiffany & Bosco** advanced enforcement pressure through stay-relief litigation and related filings; and **MERS** participated in the recorded chain and assignment framework affecting enforcement authority: **Doe Defendants** include unknown agents, vendors, and entities that participated in foreclosure advertising, notices, posting activity, auction coordination, and related enforcement steps. Plaintiffs allege Defendants are jointly responsible to the extent their acts were coordinated, ratified, or undertaken within an agency relationship in furtherance of foreclosure and dispossession.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 66**

119. Accordingly, Plaintiffs seek judgment on this cause of action, including: (a) declaratory relief confirming noncompliance with Georgia foreclosure requirements and the unfair exercise of the power of sale; (b) preliminary and permanent injunctive relief preventing any foreclosure sale or dispossession based on disputed and unreconciled records; (c) an equitable accounting and record correction as prerequisites to any enforcement; and (d) compensatory and, where supported by proof, enhanced damages authorized by Georgia law for wrongful foreclosure and wrongful attempted foreclosure—together with such additional equitable relief as is necessary to implement a stable, lawful resolution that preserves the homestead and prevents recurrence.

E. **FIFTH CAUSE OF ACTION: BREACH OF CONTRACT (INCLUDING BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING) – AGAINST DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING AND DEFENDANT ATHENE ANNUITY AND LIFE COMPANY**

120. Plaintiffs reallege and incorporate by reference paragraphs **1 through 119** as though fully set forth herein. Plaintiffs' loan relationship is governed by written contracts, including the **Promissory Note** and the **Georgia Security Deed** encumbering the Property (collectively, the "Loan Documents"). Under

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 67**

Georgia law, a security deed containing a power of sale is a **contract**, and its provisions are controlling as to the rights of the parties and their privies. **Gordon v. S. Cent. Farm Credit, ACA**, 213 Ga. App. 816, 446 S.E.2d 514 (1994). Plaintiffs allege Defendants' servicing and enforcement conduct breached express obligations and the implied covenant of good faith and fair dealing **as applied to those express obligations**.

121.    The Loan Documents contemplate that payments tendered will be handled in a manner consistent with the contract's letter and spirit, that escrow funds collected for taxes/insurance will be administered and accounted for consistently with the Security Deed's escrow framework, and that default/cure/reinstatement rights will be administered in a manner that is transparent and not weaponized to manufacture delinquency. Georgia law confirms that contractual performance must be substantially compliant with the contract's spirit and letter and completed within a **reasonable time**, and it may be performed by the party bound to perform or by that party's agent where personal skill is not required. **O.C.G.A. § 13-4-20**. Plaintiffs allege Shellpoint, acting as the servicing agent administering performance under the Loan Documents, failed to perform effectually and within a reasonable time

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 68

where it held payments in suspense, charged fees while doing so, and failed to provide stable cure/reinstatement guidance tied to a reconciled ledger.

122. Plaintiffs allege Shellpoint breached the Loan Documents by handling payments in a manner that **inflated delinquency** and frustrated Plaintiffs' contractual right to cure and reinstate. Although security deeds often permit acceptance of partial payments and temporary suspense handling, Plaintiffs allege Shellpoint's implementation was not contract-faithful because it (a) held funds in suspense while simultaneously increasing the "full payment" demand through escrow volatility and fee accrual; (b) failed to apply or return funds within a reasonable period when a clear cure path existed; (c) assessed default charges that compounded the very deficiency created by servicer-controlled posting rules; and (d) issued shifting "total due" and cure numbers without an intelligible, transaction-level reconciliation. This conduct—taken together—constitutes nonperformance and defective performance under **O.C.G.A. § 13-4-20** and breaches the Loan Documents' payment and accounting expectations.

123. Plaintiffs allege Shellpoint breached the Loan Documents by failing to administer escrow transparently and in a manner consistent with the contractual escrow framework. Plaintiffs allege escrow "shortages," escrow-

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 69**

driven payment increases, and delinquency narratives were asserted without providing a stable, borrower-understandable escrow history showing disbursements, shortage calculations, and the basis for projected escrow changes. Plaintiffs allege that this lack of transparency—and the resulting payment volatility—materially increased default exposure and undermined Plaintiffs' ability to perform. Where escrow administration is contractually required and the servicer controls the records, failure to provide coherent escrow accounting and to administer escrow in good faith constitutes breach of the Loan Documents' escrow obligations and the implied covenant tied to those obligations.

124.   Georgia law recognizes that every contract contains an implied duty of good faith and fair dealing in performance; however, that implied duty is **not an independent source of obligations** and must be anchored to specific contract terms. See **TechBios, Inc. v. Champagne**, 301 Ga. App. 592 (2009); **Stuart Enters. Int'l, Inc. v. Peykan, Inc.**, 252 Ga. App. 231 (2001); **Griffin v. State Bank of Cochran**, 312 Ga. App. 87 (2011); **American Casual Dining, L.P. v. Moe's Southwest Grill, LLC**, 426 F. Supp. 2d 1356 (N.D. Ga. 2006). Plaintiffs allege Shellpoint and Athene breached the implied covenant **by exercising contractual discretion (payment**

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 70

**posting/suspense, fee assessment, escrow adjustments, and default/cure administration) in a manner that undermined the contract's purpose—** home loan performance—rather than facilitating performance through accurate accounting and fair cure administration. Plaintiffs do not allege "bad faith" in the abstract; they allege bad faith **as to specific contractual performance duties.**

125. Plaintiffs allege Athene is responsible as the purported assignee/beneficiary and real party in interest on the Security Deed and for whose benefit the loan was serviced and enforced. Georgia law authorizes transfers of deeds to secure debt by written assignment, and, after transfer, the assignee steps into the position of the grantee/beneficiary for purposes of the deed's rights and obligations. **O.C.G.A. § 44-14-64.** Plaintiffs further allege Shellpoint performed (or failed to perform) core contractual administration functions as Athene's servicer/agent, and defective performance by an agent can constitute breach by the principal and/or expose the performing agent to liability to the extent it undertook contractual performance duties and caused the breach through its own acts. **O.C.G.A. § 13-4-20.**

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 71**

126. Plaintiffs allege Defendants' breaches materially impaired Plaintiffs' ability to perform by making cure and reinstatement practically unachievable on stable terms. Plaintiffs allege the Loan Documents contemplate meaningful notice, cure, and reinstatement pathways; instead, Defendants' performance choices (suspense holding + fee layering + escrow opacity + shifting totals) created a moving target that deprived Plaintiffs of the benefit of their bargain—accurate servicing that allows performance and avoids unnecessary forfeiture of a homestead. This breach also amplified foreclosure pressure in a manner inconsistent with Georgia's requirement that foreclosure powers be fairly exercised.

127. Plaintiffs suffered damages proximately caused by Defendants' breaches, including improper fees and charges, inflated arrearage amounts, credit harm, out-of-pocket costs incurred to prevent foreclosure, and other losses naturally arising from the breach and within the parties' contemplation at contract formation. See **O.C.G.A. §§ 13-6-1, 13-6-2**. Plaintiffs also specially plead litigation expenses and attorney's fees where Defendants' bad-faith servicing and enforcement conduct forced Plaintiffs into litigation and caused unnecessary trouble and expense. **O.C.G.A. § 13-6-11**. In addition, the risk of wrongful foreclosure and vacancy foreseeably implicates local

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 72**

foreclosure/vacant-property registry obligations and associated penalties/costs, underscoring the real-world harms flowing from contract breach-driven foreclosure escalation.

128. Plaintiffs seek all remedies available for breach of contract under Georgia law, including compensatory damages; declaratory relief clarifying the parties' rights and obligations under the Loan Documents; an order requiring a complete and intelligible accounting and correction of the loan ledger; and injunctive relief preventing foreclosure and dispossession based on a breached and unreliable servicing record. Plaintiffs further request equitable relief necessary to stabilize performance and prevent recurring breach-driven foreclosure escalation—namely, court-supervised implementation of a permanent restructuring framework (3% fixed interest rate, affordable monthly payment, and no further review period) as a practical equitable remedy tailored to the contract's purpose and the homestead's protection.

129. Defendants' breaches were not harmless technicalities. They went to the **core contractual administration functions**—payment application, escrow handling, and fair default/cure administration—and created the appearance of default used to justify foreclosure escalation. Plaintiffs are entitled to judgment on this cause of action to prevent Defendants from profiting from

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 73**

defective performance and to restore lawful, fair servicing consistent with the Loan Documents and Georgia contract principles.

## F. SIXTH CAUSE OF ACTION: NEGLIGENCE AND NEGLIGENT MISREPRESENTATION – AGAINST ALL DEFENDANTS

130. Plaintiffs reallege and incorporate by reference paragraphs **1 through 129** as though fully set forth herein. Each Defendant owed Plaintiffs duties of **ordinary diligence and reasonable care** in the servicing, accounting, communication, and enforcement of a residential mortgage loan affecting Plaintiffs' primary residence. Under Georgia law, "ordinary diligence" is the degree of care exercised by ordinarily prudent persons under similar circumstances, and the absence of such diligence constitutes ordinary negligence. Where the law requires a person to perform an act for the benefit of another—or to refrain from doing an act that may injure another—Georgia recognizes a right of recovery for breach of that legal duty if damages result, even when a separate cause of action is not stated in express terms. Private duties likewise arise from statute and from relations created by contract, and the violation of such private duty accompanied by damage gives rise to a right of action.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 74**

131.   Plaintiffs allege Shellpoint breached its duty of ordinary diligence by failing to service the loan with reasonable care, including failing to: (a) apply payments in a transparent and timely manner consistent with accurate account maintenance; (b) avoid destabilizing suspense handling that, in practice, compounded default through fee accrual while funds remained unapplied; and (c) administer escrow and escrow shortage assertions with reasonable diligence and intelligible documentation. Plaintiffs allege these failures were not merely "contract disputes," but negligent servicing conduct undertaken by the party with exclusive control of the account ledger and borrower communications—conduct that foreseeably results in inflated delinquency, erroneous default posture, and wrongful foreclosure pressure.

132.   Plaintiffs allege Shellpoint also breached the duty of ordinary diligence by negligently processing Plaintiffs' requests for home-retention assistance, including by issuing adverse decisions and foreclosure-facing communications premised on disputed or unreconciled delinquency figures, failing to provide a consistent cure roadmap, and failing to correct or reconcile account discrepancies before escalating enforcement. Plaintiffs allege that a reasonably prudent servicer would conduct a compliance-driven review, communicate stable and accurate requirements, and correct known

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 75**

ledger issues before using delinquency status as the basis for denial or foreclosure escalation.

133. Plaintiffs allege Defendant **Tiffany & Bosco, P.A.** and Defendant **Barrett Daffin Frappier Turner & Engel LLP** (to the extent each participated in borrower-facing enforcement notices, cure demands, foreclosure communications, or factual debt assertions used to advance foreclosure posture) breached the duty of ordinary diligence by negligently supplying and circulating **materially inaccurate and inconsistent debt figures** (arrears totals, escrow shortage amounts, fee/cost components, and "total owed" numbers) without reasonable verification against a reconciled ledger. Plaintiffs allege that, even in the foreclosure context, where law firms send communications and present factual account figures that are intended to be relied upon by borrowers and tribunals, ordinary diligence requires confirming the consistency and reliability of those figures before using them to accelerate foreclosure pressure.

134. Plaintiffs allege Athene, as the purported secured-creditor claimant and real party in interest for whose benefit the loan was serviced and enforced, breached the duty of ordinary diligence by allowing enforcement posture to proceed on disputed, shifting, and unreconciled account figures and by

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 76

failing to ensure that its servicing agent and foreclosure representatives maintained accurate ledgers and lawful, accurate enforcement communications. Plaintiffs allege Athene's negligent omission and ratification foreseeably contributed to inflated default narratives and heightened foreclosure risk.

135. Plaintiffs allege MERS, and any Doe entities involved in preparing, executing, recording, or transmitting assignment/authority documents, owed a duty to exercise ordinary diligence in maintaining accurate and reliable recorded information affecting enforcement authority. Plaintiffs allege inaccurate or unclear assignment and authority records foreseeably harm homeowners by creating uncertainty about who has authority to negotiate, correct errors, or enforce the security deed—uncertainty that becomes especially dangerous when foreclosure escalation occurs without a fully reconciled accounting.

136. Plaintiffs allege UWM, as the originating creditor, owed a duty of ordinary diligence not to supply false or misleading information in the origination process that would be relied upon by Plaintiffs in evaluating affordability and the true monthly payment structure (including foreseeable escrow-driven payment volatility). Plaintiffs allege any negligent supply of

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 77**

inaccurate or incomplete information at origination foreseeably contributed to the later servicing breakdown and foreclosure risk by impairing Plaintiffs' ability to anticipate and manage the loan's true cost and payment demands.

137.    Georgia recognizes negligent misrepresentation where a defendant negligently supplies false information for the guidance of others, the plaintiff reasonably relies, and economic injury results. Georgia appellate courts articulate the essential elements as: **(1) negligent supply of false information to foreseeable persons; (2) reasonable reliance; and (3) economic injury proximately resulting from that reliance.** See **Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.**, 267 Ga. 424 (1997); **Smiley v. S & J Investments, Inc.**, 260 Ga. App. 493 (2003). Georgia also limits liability for negligent misrepresentation to a **foreseeable person or limited class of persons** whom the supplier of information is actually aware will rely on the information. Plaintiffs allege Defendants supplied false or misleading information regarding (a) the amount due and arrearage totals; (b) escrow shortage calculations; (c) fees and costs; (d) the status of default and cure; and (e) equity/value narratives used to justify enforcement escalation. Plaintiffs further allege Plaintiffs reasonably relied on these representations in deciding how and when to pay, how to cure/reinstate, and how to pursue

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 78

home-retention relief—and that Defendants' misstatements drove economic harm and foreclosure escalation.

138.   Plaintiffs allege Defendants' negligence and negligent misrepresentation were direct and proximate causes of Plaintiffs' injuries, including improper fees and charges, inflated arrears totals, loss of use of funds, credit impairment, litigation-related costs, and other measurable economic harm. Plaintiffs further allege the threat of wrongful foreclosure created foreseeable and severe non-economic harm, including emotional distress and disruption to family stability. Finally, Plaintiffs allege Defendants' negligent foreclosure escalation foreseeably implicates local housing-stability and anti-blight frameworks—reflecting the real-world harms and costs of wrongful foreclosure pressure—such as DeKalb County's **foreclosure registry requirements** (including registration and responsible-contact obligations for foreclosed properties) and the City of Decatur's authority to abate and secure **vacant, unsecured buildings** and impose liens for abatement costs. Georgia law expressly authorizes local vacant/foreclosed property registration ordinances, underscoring the foreseeability of local harms when negligent foreclosure practices create instability and vacancy risk.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 79**

139.    Plaintiffs seek judgment on this cause of action for all damages proximately caused by Defendants' negligence and negligent misrepresentation, together with such equitable relief as is necessary to prevent ongoing harm driven by the same negligent servicing and enforcement conduct, including: (a) court-supervised accounting and record correction; (b) injunctive relief preventing foreclosure and dispossession on an unreconciled ledger; and (c) implementation of a stabilizing, permanent restructuring framework consistent with equity and feasibility (fixed **3% interest rate**, affordable monthly payment, and no further review period) to prevent recurrence of negligent enforcement based on unreliable figures.

## G. SEVENTH CAUSE OF ACTION: VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT ("GFBPA"), O.C.G.A. § 10-1-390 ET SEQ. — AGAINST DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING AND DEFENDANT ATHENE ANNUITY AND LIFE COMPANY

140.    Plaintiffs reallege and incorporate by reference paragraphs **1 through 139** as though fully set forth herein. The **Georgia Fair Business Practices Act** declares unlawful **"unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or**

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 80

commerce." **O.C.G.A. § 10-1-393(a)**. Plaintiffs allege Defendants' mortgage-servicing and foreclosure-facing conduct toward Plaintiffs—concerning an owner-occupied home loan and related consumer communications—constitutes unfair and deceptive practices within the meaning of the Act.

141.    A private GFBPA action requires **(1) a violation of the Act, (2) causation, and (3) injury**, and **actual injury/damages** is an essential element of a private claim. **Tiismann v. Linda Martin Homes Corp., 279 Ga. 137, 610 S.E.2d 68 (2005)** (quoting and relying on **Zeeman v. Black**). Plaintiffs further allege the deceptive practices at issue were not isolated, purely private wrongs, but were carried out through standardized servicing systems and communications used in the consumer marketplace—thereby satisfying the Act's "public consumer marketplace" orientation. **Zeeman v. Black, 156 Ga. App. 82, 273 S.E.2d 910 (1980)**.

142.    Plaintiffs allege Shellpoint engaged in unfair and deceptive acts by repeatedly communicating delinquency status, "total due" amounts, and cure/reinstatement demands that were **not reliable, not transparently supported, and materially inconsistent** across the channels a reasonable consumer must rely on (periodic statements, loss-mitigation correspondence,

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 81

enforcement letters, and litigation-driven numbers). Plaintiffs allege Shellpoint's own statement language regarding partial-payment "suspense" handling—combined with fee accrual and shifting escrow-driven payment demands—created a misleading appearance that Plaintiffs were inexorably defaulting even when funds were tendered and account disputes were ongoing. Plaintiffs allege the foreseeable tendency of these practices is to mislead ordinary borrowers, increase fee exposure, and drive consumers toward surrender or forced sale rather than informed cure.

143. Plaintiffs allege Shellpoint's loss-mitigation handling also constituted unfair or deceptive practices because Shellpoint denied home-retention options using shifting and internally inconsistent rationales (including "active bankruptcy," "insufficient hardship," and "excess delinquency") while the delinquency figures themselves were inflated by the same opaque servicing practices Shellpoint controlled. Plaintiffs allege Shellpoint's denials and "exit-option" steering (short sale/deed-in-lieu) were presented as if Plaintiffs were categorically ineligible for home retention, when in fact Plaintiffs were seeking a sustainable and lawful restructure and were entitled to fair evaluation on accurate figures. These practices are consumer-facing and have the capacity to mislead similarly situated borrowers in the marketplace.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 82

144. Plaintiffs allege Athene is liable under the GFBPA to the extent it **benefited from, authorized, and/or ratified** Shellpoint's consumer-facing servicing practices and enforcement posture. Plaintiffs allege Athene's economic interest was advanced through foreclosure escalation fueled by unreliable delinquency narratives and inconsistent accounting totals, and that Athene accepted the benefits of enforcement leverage while failing to ensure consumer-facing communications and servicing decisions were accurate, transparent, and fair.

145. Plaintiffs allege Defendants' conduct affects the public consumer marketplace because the challenged acts arise from repeatable servicing policies and standardized communications used across multiple borrower accounts—not a one-off private negotiation. The public interest is heightened in DeKalb County because wrongful foreclosure escalation predictably triggers vacancy/blight consequences addressed by local foreclosure/vacant-property regulatory frameworks, including DeKalb County's **Foreclosure Registry** requirements (**DeKalb County Code, Chapter 18, Article IV, § 18-102**) and **Vacant Property Registry** findings/purpose (**Chapter 18, Article V, § 18-116**), and the City of Decatur's authority to close/secure vacant unsecured buildings and assess lienable abatement costs (**Decatur**

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 83

Code, Chapter 54, Article III, § 54-63). Georgia law expressly recognizes the governmental and community interests implicated by foreclosure/vacancy through its authorization of local vacant/foreclosed property registries and associated penalties/fees. **O.C.G.A. § 44-14-14.**

146. Plaintiffs anticipate Defendants may invoke the GFBPA's exemption for "[a]ctions or transactions specifically authorized under laws administered by … any regulatory agency." **O.C.G.A. § 10-1-396(1)**. Plaintiffs allege that the deceptive and unfair conduct pled here—misstating and shifting debt amounts, using unreconciled figures to drive foreclosure pressure, and steering borrowers based on distorted delinquency narratives—is **not "specifically authorized"** by any regulator; it is the type of conduct consumer-protection and servicing regulations are designed to prevent. Consistent with that principle, courts have held that **residential mortgage transactions are not categorically excluded** from the GFBPA and that alleged deceptive mortgage conduct is not automatically "specifically authorized" merely because the industry is regulated. See, e.g., **Stroman v. Bank of Am. Corp., 852 F. Supp. 2d 1366 (N.D. Ga. 2012)** (discussed in statutory annotations applying § 10-1-396).

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 84**

147.   Plaintiffs allege Defendants' GFBPA violations caused measurable injury, including increased fees and charges, inflated arrearage totals, loss of opportunity to cure under stable and accurate figures, credit impairment, costs incurred responding to enforcement pressure, and other economic harms. Plaintiffs further allege emotional distress and disruption accompanied the foreclosure escalation driven by deceptive servicing narratives, and that these harms were the foreseeable result of Defendants' unfair and deceptive consumer-facing conduct. **Tiismann** confirms that private GFBPA relief depends on actual injury resulting from a violation.

148.   Plaintiffs allege compliance with the GFBPA's pre-suit demand requirement by delivering (or causing delivery of) a written demand for relief at least **30 days** prior to filing, identifying the unfair or deceptive acts relied upon and the injury suffered, as required by **O.C.G.A. § 10-1-399(b)**. Plaintiffs will also serve the Georgia Attorney General with the Complaint in the manner and time required by **O.C.G.A. § 10-1-399(g)**.

149.   Plaintiffs seek judgment against Shellpoint and Athene under the GFBPA for: (a) **actual damages**; (b) **treble damages** for intentional violations as authorized by **O.C.G.A. § 10-1-399(c)**; (c) **legal fees and litigation expenses** as authorized by **O.C.G.A. § 10-1-399(d)**; and (d) such

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 85**

**declaratory and equitable relief** as is necessary to stop continuing consumer harm and prevent foreclosure based on deceptive servicing records—including orders compelling accurate accounting/record correction and preserving the status quo while this Court adjudicates Plaintiffs' right to the requested permanent restructure (3% fixed interest rate, affordable payment, and no further review period).

## H. EIGHTH CAUSE OF ACTION: UNJUST ENRICHMENT / MONEY HAD AND RECEIVED (PLED IN THE ALTERNATIVE) – AGAINST DEFENDANT ATHENE ANNUITY AND LIFE COMPANY, DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, AND DOE DEFENDANTS

150.   Plaintiffs reallege and incorporate by reference paragraphs **1 through 149** as though fully set forth herein. This claim is pled **in the alternative** to Plaintiffs' contract-based causes of action and seeks restitution where Defendants retained money, fees, charges, or enforcement-derived benefits that—**in equity and good conscience**—they should not be permitted to keep.

151.   Under Georgia law, **unjust enrichment** applies when, as a matter of fact, there is **no legal contract** governing the particular benefit at issue, but the defendant has been conferred a benefit that it **equitably ought to return or**

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 86

compensate for. **Tuvim v. United Jewish Communities, Inc.**, 285 Ga. 632 (2009) (quoting **Engram v. Engram**, 265 Ga. 804 (1995)). Relatedly, Georgia recognizes claims in quasi-contract and "money had and received" as remedies grounded in equity where one party possesses money belonging to another that it has **no right to retain**.

152.  Plaintiffs allege Defendants **received and retained benefits** at Plaintiffs' expense through a servicing-and-enforcement model that generated: (a) late fees, default fees, and other charges assessed while payments were held or treated as insufficient; (b) escrow-related increases and asserted shortages that inflated the "amount due" and the cure burden; and (c) enforcement leverage derived from inflated delinquency narratives (including the ability to demand immediate cure, accelerate foreclosure posture, and press for relief that would enable sale/possession). Plaintiffs allege these "benefits" were not earned through lawful, transparent servicing, but were instead produced by **opaque posting rules, suspense handling, and unreconciled accounting** that made Plaintiffs' account appear materially worse than it should have been under a fair and accurate ledger.

153.  Georgia's "money had and received" remedy is founded on the equitable principle that **no one ought to unjustly enrich himself at the expense of**

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 87

**another**, and it lies where the defendant has received money which the plaintiff is "ex aequo et bono" entitled to recover and which the defendant is not entitled to retain. **J.C. Penney Co. v. West**, 233 Ga. App. 111 (1976). Likewise, the Court of Appeals has explained that unjust enrichment applies where there is no enforceable contract governing the benefit and retention would be unjust, and that money had and received is appropriate where a party has received money belonging to another which, **in equity and good conscience**, it is not entitled to keep. **Cochran v. Ogletree**, 244 Ga. App. 537 (2000). Plaintiffs allege Defendants' retained fees/charges and leveraged enforcement posture fit squarely within these equitable principles.

154.   Plaintiffs acknowledge that a Note and Security Deed exist, but plead unjust enrichment **in the alternative** for any category of benefit not authorized by, not traceable to, or not recoverable under the Loan Documents—particularly where Defendants' claimed amounts depend on internal posting rules and fee layering rather than a reconciled contractual ledger. Georgia courts hold that unjust enrichment is an alternative theory that applies when there is no legal contract governing the benefit, and where a valid contract controls the benefit the unjust-enrichment theory fails. **Tidikis v. Network for Medical Communications & Research LLC**, 274

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 88**

Ga. App. 807 (2005). Plaintiffs therefore plead this cause to ensure restitution is available if the Court determines that Defendants' challenged fees/charges, suspense-retained funds, or enforcement-derived gains fall outside enforceable contractual entitlement (or if Defendants cannot prove contractual authority for the specific benefits retained). Plaintiffs seek no duplicative recovery.

155. Plaintiffs allege **Athene** was unjustly enriched as the purported assignee/beneficiary and real party in interest because it benefited from the servicer's fee/charge posture and from the enhanced enforcement leverage created by inflated arrears and unreconciled accounting—leverage that increased Athene's bargaining power and positioned Athene to capture Plaintiffs' homestead equity through sale/possession pressure rather than fair, sustainable resolution.

156. Plaintiffs further allege Defendants' enforcement-driven benefits include **externalizing foreclosure and vacancy-related burdens** onto the community while pursuing private gain. Georgia authorizes local foreclosure/vacant property registry regimes (including fees and penalties) to address blight and stability harms. **O.C.G.A. § 44-14-14.** DeKalb County's registry ordinances require registration and responsible-contact information

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 89

for foreclosed and vacant properties (including **Chapter 18, Article IV, § 18-102** and **Article V, § 18-116**), reflecting the real public costs of foreclosure and vacancy. The City of Decatur's nuisance/abatement framework similarly authorizes the City to close and secure **vacant, unsecured buildings** and assess the property for abatement costs that become a lien (**Decatur Code, Chapter 54, Article III, § 54-63**). Plaintiffs allege it is inequitable for Defendants to retain fees and enforcement advantages produced by improper servicing while the foreseeable community burdens of wrongful foreclosure and vacancy risk are shifted outward.

157.   Plaintiffs suffered corresponding detriments, including improperly assessed or demanded fees/charges, increased cure burdens, loss of time and resources attempting to reconcile the account, credit harm, and increased foreclosure risk and equity loss—all directly linked to Defendants' retention of servicing-derived monetary benefits and enforcement leverage.

158.   Plaintiffs seek restitutionary relief sufficient to eliminate unjust enrichment, including disgorgement of improper fees/charges, **credits to the loan ledger**, and adjustments necessary to restore the parties to an equitable posture. An accounting is necessary to quantify unjust gains and determine offsets. To the extent Defendants contend certain fees or charges were

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 90

"voluntarily paid" and therefore unrecoverable; Georgia's voluntary payment rule contains statutory and common-law exceptions where payment is induced by **artifice, deception, or fraudulent practice. O.C.G.A. § 13-1-13** (exceptions recognized in annotations and case law).

159.   Plaintiffs are entitled to judgment on this claim and to such restitutionary and equitable remedies as the Court deems just and proper, including relief that supports stabilization of the loan and prevents Defendants from profiting from disputed, deceptive, or inequitable servicing practices.

## I.   NINTH CAUASE OF ACTION: EQUITABLE ACCOUNTING (COURT-SUPERVISED ACCOUNTING AND RECORD CORRECTION) – AGAINST DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING AND DEFENDANT ATHENE ANNUITY AND LIFE COMPANY

160.   Plaintiffs reallege and incorporate by reference paragraphs **1 through 159** as though fully set forth herein. Plaintiffs seek a **court-supervised equitable accounting** because the servicing record governing this residential loan— including payment application, suspense handling, escrow administration, fees, and asserted arrears—has become **opaque, internally inconsistent, and incapable of reliable resolution through ordinary statement review.**

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 91

Plaintiffs allege that Shellpoint controls the servicing ledger and possesses superior knowledge of the account's posting rules, suspense logic, escrow calculations, corporate advances (if any), fee triggers, reversals, and internal adjustments, and that Plaintiffs cannot determine the true amount owed or the legitimacy of any alleged default without judicial supervision.

161.    Georgia equity recognizes accounting relief where the facts are complex, the information is peculiarly within the knowledge of the defendant, and a plaintiff cannot obtain an accurate determination through ordinary means. Here, the account history is uniquely within Shellpoint's control, involves technical posting systems, and has been used to justify foreclosure escalation. Plaintiffs allege the Court's equitable powers are necessary to ensure that any enforcement or cure analysis is grounded in a **reconciled ledger**, not disputed totals.

162.    Plaintiffs allege that Shellpoint's suspense handling created uncertainty as to: (a) when payments were received; (b) what amounts were held in suspense; (c) when and how those funds were applied to principal, interest, escrow, or fees; (d) whether funds were returned; and (e) how suspense timing influenced late fees, default charges, and delinquency days. Plaintiffs allege that Shellpoint's statements do not provide a complete posting history

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 92**

showing suspense balances and application events in a transaction-level format sufficient to verify delinquency and cure.

163.   Plaintiffs allege escrow increases and asserted shortages materially drove payment volatility and default narrative. Plaintiffs allege that a lawful accounting must include: (a) escrow collection history; (b) insurance and tax disbursement records; (c) annual escrow analyses (including cushion/shortage/deficiency calculations); (d) escrow adjustment dates and reasons; and (e) any escrow-related fees assessed. Plaintiffs allege that without these documents, Plaintiffs cannot verify whether "shortages" were real, whether disbursements were timely, or whether escrow changes improperly inflated delinquency.

164.   Plaintiffs allege that Defendants asserted materially inconsistent figures across multiple channels (monthly statements, loss-mitigation correspondence, enforcement letters, bankruptcy schedules, and stay-relief pleadings). Plaintiffs allege these inconsistencies demonstrate that the "amount due" and "arrears" being used for enforcement are not anchored to a single reconciled transaction history. Plaintiffs request that the Court compel Defendants to produce and reconcile: principal, interest, escrow, fees, corporate advances, recoveries, suspense balances, unapplied funds,

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 93**

reversals, and credits—so the Court can determine whether any default exists and, if so, its true amount.

165.   Plaintiffs allege they sought clarification and correction but were not provided a stable, complete, and intelligible accounting. Plaintiffs allege that informal statement review cannot resolve the dispute because the key facts (posting logic, suspense rules, fee triggers, reversals, escrow projections, and internal adjustments) are controlled by Defendants and are not transparently disclosed to borrowers. Plaintiffs allege a court-ordered accounting is therefore the most efficient and fair path to clarity.

166.   Plaintiffs allege that without accounting, Defendants will continue relying on inflated or inaccurate totals to justify foreclosure and dispossession, causing irreparable harm through loss of a unique home and substantial equity. Plaintiffs allege that the duty to "fairly exercise" any power of sale under Georgia law (**O.C.G.A. § 23-2-114**) cannot be satisfied where the underlying default figures are unreconciled and internally inconsistent. Plaintiffs allege the accounting is therefore necessary to determine whether foreclosure posture is lawful before any sale activity proceeds.

167.   Plaintiffs allege Athene is the purported assignee/beneficiary and secured-creditor claimant whose rights depend on the accuracy of Shellpoint's

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 94**

servicing records. Plaintiffs allege Athene cannot seek to benefit from enforcement based on disputed records while refusing to ensure transparent accounting. Plaintiffs therefore request that the Court order production from both the servicer and the claimed loan owner/beneficiary as necessary to produce a complete accounting and to prevent reliance on incomplete production.

168.  Plaintiffs request an accounting order requiring Defendants to produce, at minimum:

a.  A complete **loan transaction history** from inception to present with all posting codes;

b.  A **suspense account history** showing each suspense deposit, application, and release/return;

c.  Itemized **fees and corporate advances** (if any), including the basis and authority for each charge and whether reversed/waived;

d.  Escrow **disbursement records** and annual escrow analyses;

e.  Copies of all **payment notices**, "amount due" statements, cure/reinstatement figures, and payoff quotes issued during the relevant period; and

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 95**

f.  The internal **crediting rules** used to determine when a payment is treated as "full" versus "partial," including how escrow changes affected that threshold.

169.  Plaintiffs are entitled to an equitable accounting and to corrective orders necessary to establish the true account status. Upon completion of the accounting, the Court can determine: (a) the true amount owed (if any); (b) whether delinquency and fees were improperly inflated; (c) whether loss-mitigation denials and enforcement decisions were premised on inaccurate records; and (d) what equitable remedies are necessary to restore fairness. Plaintiffs request that the Court: (i) order credits, reversals, and record corrections where warranted; (ii) enjoin foreclosure pending completion and correction; and (iii) use the reconciled accounting as the factual foundation for the requested permanent restructuring (3% fixed interest rate, affordable payment, and no further review period) to stabilize performance and prevent recurrence.

170.  **Local policy context reinforcing the need for accuracy before foreclosure:** Wrongful foreclosure and vacancy predictably trigger community harms and local regulatory burdens addressed by DeKalb County's foreclosure/vacant property registry framework (including **DeKalb**

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 96

County Code Chapter 18, Article IV, § 18-102 and Article V, § 18-116) and the City of Decatur's nuisance/abatement procedures for vacant unsecured buildings (**Decatur Code Chapter 54, Article III, § 54-63**).

## J.  TENTH CAUSE OF ACTION: DECLARATORY RELIEF AND INJUNCTIVE RELIEF (O.C.G.A. §§ 9-4-2, 9-11-65; (AS APPLICABLE) 28 U.S.C. §§ 2201–2202) – AGAINST ALL DEFENDANTS

171.    Plaintiffs reallege and incorporate by reference paragraphs **1 through 170** as though fully set forth herein. An **actual, present, and justiciable controversy** exists between Plaintiffs and Defendants concerning (a) the legality and accuracy of the servicing record; (b) the true amount owed (if any) on the loan; (c) the existence and amount of any default; (d) the legality of Defendants' loss-mitigation denials and foreclosure escalation; and (e) which entity or entities possess lawful authority to enforce the Georgia Security Deed, exercise the power of sale, and negotiate/modify the loan. Plaintiffs contend Defendants' enforcement posture is built on disputed and unreconciled accounting and defective authority/notice representations; Defendants contend they may proceed with enforcement. Declaratory relief is necessary to define and settle the parties' rights and to prevent foreclosure and dispossession based on unreliable records.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 97

172.   Georgia's Declaratory Judgment Act authorizes courts to declare rights and other legal relations in cases of actual controversy to relieve parties from uncertainty and insecurity. **O.C.G.A. § 9-4-2.** Plaintiffs seek declarations determining, among other things:

   a.   The **true account status** and amounts due, including principal, interest, escrow, fees, suspense balances, reversals, credits, and corporate advances (if any);

   b.   Whether Shellpoint complied with federal servicing requirements governing payment posting, escrow administration, servicing error correction, and loss-mitigation handling (**12 U.S.C. § 2605; 12 C.F.R. Part 1024; 12 C.F.R. Part 1026**);

   c.   Whether Defendants' delinquency and cure assertions were materially inconsistent and misleading such that enforcement based on those figures is unlawful or inequitable;

   d.   Whether Defendants satisfied Georgia's strict foreclosure prerequisites, including fair exercise of the power of sale (**O.C.G.A. § 23-2-114**) and statutory notice requirements (**O.C.G.A. §§ 44-14-162 through 44-14-162.4**); and

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 98**

  e. Which Defendant(s) held "full authority" to negotiate, amend, and modify the loan terms for purposes of **O.C.G.A. § 44-14-162.2**, and whether that authority was consistently and accurately represented.

173. Plaintiffs further seek declarations that:

  a. Foreclosure activity grounded in **inflated or unreconciled delinquency figures** is unlawful and inconsistent with Georgia's requirement that the power of sale be **fairly exercised**;

  b. Defendants must **correct servicing records** and provide a complete, intelligible accounting before any foreclosure sale, deed under power, or dispossession is pursued; and

  c. Plaintiffs are entitled to **fair evaluation** for sustainable home retention based on accurate financial data and reconciled servicing records.

174. Plaintiffs seek temporary, preliminary, and permanent injunctive relief under **O.C.G.A. § 9-11-65** to prevent imminent and irreparable harm. Plaintiffs face the threatened loss of a unique homestead and substantial equity, displacement, and long-term financial damage. Money damages alone cannot restore the home after a foreclosure sale or dispossession. An

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 99**

injunction is necessary to preserve the status quo while this Court adjudicates the legality of Defendants' servicing, notice compliance, and enforcement authority.

175.    Plaintiffs satisfy the standards for injunctive relief because:

a.  **Irreparable harm** is imminent—foreclosure and dispossession permanently alter property rights and destroy unique housing stability;

b.  Plaintiffs have a **substantial likelihood of success** based on the pleaded statutory and equitable violations, including RESPA/Regulation X servicing failures, inconsistent debt representations, and Georgia foreclosure noncompliance;

c.  The **balance of hardships** favors Plaintiffs because foreclosure would cause irreversible loss while Defendants can be protected through lawful payments, accounting, and court supervision; and

d.  The **public interest** favors enforcing consumer-protection standards and preventing wrongful displacement and blight. Georgia's public policy requires fairness in power-of-sale enforcement (**O.C.G.A. § 23-2-114**) and strict compliance with foreclosure notice rules (**O.C.G.A. § 44-14-162.2**)

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 100**

176.  Plaintiffs request injunctive orders that:

    a.  Enjoin Defendants and all persons acting in concert with them from initiating, advancing, advertising, conducting, or completing any foreclosure sale, deed-under-power issuance, dispossession, or eviction activity concerning the Property during the pendency of this action;

    b.  Bar further default escalation based on disputed figures and require preservation of all servicing and enforcement records;

    c.  Compel production of a complete escrow history, suspense ledger, payment posting history, and itemization of fees and corporate advances; and

    d.  Prohibit reliance on inconsistent or unreconciled figures in any foreclosure or possession effort.

177.  Plaintiffs further request declaratory and equitable orders establishing a **permanent stabilizing restructuring framework** to end recurring disputes caused by opaque servicing and shifting totals. Specifically, Plaintiffs request that Defendants be ordered to implement a **permanent loan restructuring** with: (a) a **fixed 3% interest rate**; (b) a **monthly payment Plaintiffs can reasonably afford** based on verified income and expenses; and (c) **no**

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 101

**further review or trial period**, together with correction/crediting of improper fees, charges, suspense balances, and escrow errors. Plaintiffs request this relief because it is the most practical equitable remedy to stabilize performance, preserve the homestead, and prevent repeated enforcement cycles driven by unreliable servicing records.

178.    Declaratory and injunctive relief are especially necessary because Defendants have shown a willingness to escalate enforcement while the account remains disputed, to present inconsistent amounts owed and equity narratives across different channels, and to refuse to correct the servicing record voluntarily. Without Court intervention, Defendants will continue pressing foreclosure posture on an unreconciled ledger.

179.    Plaintiffs have **no adequate remedy at law** absent the requested declaratory and injunctive relief. Once a foreclosure sale occurs, restoration is complex and may not fully remedy the harm, and the home and equity are unique and irreplaceable. This Court's intervention is required to prevent irreversible outcomes and to ensure any enforcement—if ever permitted—occurs only after lawful compliance, accurate accounting, and fair exercise of any power of sale.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 102**

180.   Plaintiffs request that the Court enter declaratory judgments and injunctive orders consistent with this cause of action and the Prayer for Relief, applicable to all Defendants, their agents, successors, and assigns. Plaintiffs request that the Court retain jurisdiction to enforce compliance, supervise accounting and record correction, ensure implementation of the permanent restructuring remedy, and prevent future unlawful servicing or enforcement conduct.

181.   **Local stability context reinforcing injunctive necessity:** Wrongful foreclosure and vacancy create community harms and regulatory burdens recognized in Georgia's anti-blight framework and local ordinances, including the statutory authorization for local foreclosure/vacant property registries (**O.C.G.A. § 44-14-14**), DeKalb County's foreclosure registry and vacant property registry provisions (**Chapter 18, Article IV, § 18-102; Article V, §.18-116**), and the City of Decatur's authority to abate unsafe/unsanitary or vacant unsecured buildings and assess lienable costs (**Decatur Code Chapter 54, Article III, § 54-63**).

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 103**

## K. ELEVENTH CAUSE OF ACTION: ABUSE OF PROCESS / MALICIOUS ABUSE OF PROCESS (GEORGIA COMMON LAW) – AGAINST DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, DEFENDANT ATHENE ANNUITY AND LIFE COMPANY, DEFENDANT TIFFANY & BOSCO, P.A., AND DOE DEFENDANTS

182. Plaintiffs reallege and incorporate by reference paragraphs **1 through 181** as though fully set forth herein.

183. Under Georgia law, **abuse of process** (also referred to in Georgia decisions as "malicious abuse of process") occurs when a party **perverts legally issued process** to accomplish an **ulterior purpose** for which the process was not designed, and commits a **willful act in the use of process not proper in the regular prosecution of the proceeding**. *Ferguson v. Atlantic Land & Dev. Corp.*, 248 Ga. 69 (1981); *Yost v. Torok*, 256 Ga. 92 (1986); *Ostroff v. Coyner*, 187 Ga. App. 109 (1988). Importantly, **"regular and legitimate use of process, though with a bad intention, is not"** abuse of process; liability requires more than mere initiation of a lawful proceeding. *Ferguson*, 248 Ga. at 71; *Yost*, 256 Ga. at 93. Likewise, the "mere issuance" of routine pleadings, standing alone, is not enough; the claim is about

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 104

**improper use after issuance.** *Medoc Corp. v. Keel,* 152 Ga. App. 684 (1979).

184.    Plaintiffs allege Defendants used and threatened multiple forms of **legal process** and process-like enforcement mechanisms—including (a) Georgia power-of-sale foreclosure procedures and related notices/advertising steps governed by **O.C.G.A. §§ 44-14-162 through 44-14-162.4**; (b) bankruptcy stay-relief process in Plaintiffs' Chapter 7 case; and (c) litigation-driven enforcement filings and proposed orders seeking expedited permission to foreclose and obtain possession—not to fairly resolve a genuine accounting dispute or enforce a truly reconciled default, but to **extract payment on disputed amounts, accelerate leverage, and force Plaintiffs toward displacement.**

185.    Plaintiffs allege Defendants' dominant purpose in invoking these processes was not the proper purpose of the proceedings (i.e., to adjudicate a legitimate, accurately stated default and determine lawful enforcement), but rather to **coerce payment or capitulation** by: (a) pressing foreclosure posture on numbers that Defendants knew (or should have known) were internally inconsistent; (b) steering Plaintiffs away from sustainable home retention and toward exit/dispossession outcomes; and (c) using the threat of

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 105**

imminent sale/possession as leverage to suppress disputes about suspense handling, escrow volatility, and fee layering.

186.    Plaintiffs allege Defendants committed willful improper acts beyond mere filing, including (among other acts):

a.    Advancing enforcement and stay-relief positions built on **shifting arrears totals and component figures** (monthly payment amounts, escrow shortage numbers, fees/costs, and "total owed" totals) that were inconsistent across Defendants' own channels and not anchored to a single reconciled transaction history;

b.    Using process to demand cure and accelerate foreclosure posture while simultaneously withholding the very accounting detail necessary for Plaintiffs to cure under stable terms (posting dates, suspense balances, escrow disbursement history, and fee triggers);

c.    Pursuing process-based acceleration rather than correcting known servicing discrepancies—thereby **perverting process** into a pressure device; and

d.    Seeking enforcement advantage through procedural escalation designed to remove protective time and to rush foreclosure posture before accounting could be adjudicated.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 106

187. Defendant-specific participation:

   a. **Shellpoint** is liable because it initiated and fed the enforcement machinery with an unreconciled ledger, inconsistent figures, and foreclosure escalation decisions, while failing to provide a stable accounting that would allow legitimate cure and performance.

   b. **Athene** is liable because it is the purported beneficiary/real party in interest that authorized, ratified, and benefited from the process misuse and enforcement leverage, including efforts to obtain sale/possession pressure over a Georgia homestead without first ensuring accurate accounting and fair servicing.

   c. **Tiffany & Bosco, P.A.** is liable because it prosecuted the stay-relief and enforcement posture using figures and narratives Plaintiffs allege were inconsistent and unreliable, and because it participated in using litigation process as leverage for coercion rather than as a good-faith mechanism to resolve disputed accounting and propose fair home-retention terms.

   d. **Doe Defendants** include unknown foreclosure agents, trustees, document preparers, field-service vendors, auctioneers, and other

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 107**

actors who participated in the process misuse through notices, postings, sale coordination, or related enforcement steps.

188.    Plaintiffs allege the process misuse caused harm beyond ordinary litigation burden. Plaintiffs were subjected to heightened foreclosure pressure, increased risk of displacement and equity loss, and substantial emotional distress. Plaintiffs incurred costs responding to enforcement and bankruptcy litigation tactics and were forced into defensive legal action to preserve a unique homestead.

189.    Plaintiffs allege Defendants' abuse of process was **willful** and not accidental. Defendants had notice of disputed figures and inconsistencies, yet chose to escalate process-based leverage rather than correct the underlying record. This pattern demonstrates intentional misuse of process as a coercive mechanism.

190.    Plaintiffs further allege that this process misuse foreseeably magnifies community harms and regulatory burdens associated with wrongful foreclosure and vacancy—burdens recognized in Georgia's anti-blight framework and local ordinances, including DeKalb County's foreclosure/vacant property registry requirements and the City of Decatur's authority to abate and secure vacant unsecured buildings. These public-

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 108

interest consequences reinforce the need for equitable relief halting foreclosure escalation while the Court determines the true accounting and legality of enforcement.

191. Plaintiffs are entitled to judgment on this cause of action, including compensatory damages, litigation-related costs caused by the misuse of process, and—where supported by proof—such additional damages as Georgia law permits for intentional tortious misconduct (including nominal damages where appropriate under **O.C.G.A. § 51-12-4** and punitive damages where proven under **O.C.G.A. § 51-12-5.1**), together with equitable relief necessary to prevent continued misuse of enforcement mechanisms against Plaintiffs' homestead.

## L. TWELFTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) – AGAINST ALL DEFENDANTS

192. Plaintiffs reallege and incorporate by reference paragraphs **1 through 191** as though fully set forth herein. Georgia recognizes a cause of action for **intentional infliction of emotional distress,** but it imposes a **stringent burden:** Plaintiffs must show **(1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection; and (4) severe emotional distress.** See, e.g., *Georgia Power Co. v. Johnson,* 155 Ga. App.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 109

862, 274 S.E.2d 17 (1980). In the wrongful-foreclosure context, Georgia courts have held that **mental anguish damages may be sought**, but the claim is treated as an IIED claim and the standard remains demanding. See *Blanton v. Duru*, 247 Ga. App. 175, 543 S.E.2d 448 (2000); *DeGolyer v. Green Tree Servicing, LLC*, 291 Ga. App. 444, 662 S.E.2d 141 (2008).

193.   Plaintiffs allege Defendants' conduct in this matter was not limited to ordinary servicing error or routine enforcement; rather, Defendants escalated foreclosure and dispossession pressure against Plaintiffs' homestead while knowingly relying on **unreconciled, shifting debt figures** and while refusing to provide a coherent accounting sufficient to allow cure and reinstatement under stable terms. Georgia courts require that the conduct be **"so terrifying or insulting as naturally to humiliate, embarrass or frighten"** the plaintiff, and Plaintiffs allege Defendants' conduct meets that standard because it involved repeated foreclosure threats and enforcement escalation based on figures Defendants knew (or should have known) were internally inconsistent and misleading.

194.   Plaintiffs allege Defendants occupied a position of superior power and control over Plaintiffs' home and account ledger and exploited that power by:

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 110**

a.   Maintaining a foreclosure posture built on **suspense-account holding**, fee layering, and opaque escrow volatility;

b.   Issuing and relying upon inconsistent "amount due," arrears, and cure totals across statements, denial letters, enforcement correspondence, and litigation papers;

c.   Denying or steering away from home-retention options while continuing to escalate foreclosure leverage; and

d.   Advancing a foreclosure/dispossession narrative while Plaintiffs were actively disputing the ledger and seeking transparent reconciliation.

195.   Plaintiffs allege this course of conduct predictably produces fear, humiliation, and terror in ordinary homeowners because the threatened injury is the loss of the family home—an injury unique in nature and magnitude.

196.   Plaintiffs allege Defendants acted intentionally or, at minimum, with reckless disregard for the high probability of severe emotional harm. In foreclosure-related emotional distress claims, Georgia courts emphasize that the plaintiff must meet a stringent standard and that **intentional conduct to cause harm is an essential element** when the emotional-distress claim is tethered to wrongful foreclosure conduct. *DeGolyer* (quoting and applying

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 111**

*McCarter v. Bankers Trust Co.*). Plaintiffs allege Defendants' repeated escalation on disputed numbers—while refusing to provide a reconciled ledger and while pressing toward foreclosure/possession—reflects a conscious decision to use foreclosure pressure as leverage regardless of the human consequences.

197.  Plaintiffs allege Defendants' conduct caused severe and continuing emotional distress, including anxiety, sleeplessness, fear of displacement, panic regarding loss of equity and homelessness, disruption to daily functioning, and destabilization of family life. Plaintiffs allege the distress went well beyond ordinary frustration and rose to a level that no reasonable person should be expected to endure, particularly where the conduct threatened immediate loss of a homestead and continued even as Plaintiffs sought clarification and correction.

198.  Plaintiffs allege a direct causal connection between Defendants' foreclosure pressure, inconsistent figures, refusal to reconcile the ledger, and continued escalation, and Plaintiffs' emotional distress. Plaintiffs allege that absent Defendants' conduct—especially the choice to pursue foreclosure and possession leverage on unreconciled numbers—Plaintiffs would not have suffered the severe emotional harm described herein.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 112**

199. Plaintiffs are entitled to recover damages for mental pain and anguish where a violation of a legal duty constitutes an actionable wrong, and such legal wrong "imputes damage." **O.C.G.A. § 51-12-6**; see also cases cited in the statutory annotations recognizing recovery for mental anguish in proper circumstances. Plaintiffs also seek compensatory damages for emotional distress as part of their broader tort damages and, where supported by proof of willful, malicious, or consciously indifferent conduct, punitive damages under Georgia law.

200. Defendants' conduct threatened foreclosure-driven displacement and vacancy—harms recognized in local stability frameworks such as DeKalb County's foreclosure/vacant property registry regime and the City of Decatur's nuisance/abatement authority for vacant unsecured buildings. Plaintiffs allege these local policies underscore that wrongful foreclosure escalation is not merely a private inconvenience; it is a recognized destabilizing event with foreseeable, serious consequences—making Defendants' continued pressure tactics on disputed figures especially egregious.

201. Plaintiffs are entitled to judgment on this cause of action for all damages proximately caused by Defendants' extreme and outrageous conduct,

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 113

including non-economic damages for severe emotional distress, together with such additional relief as the Court deems just and proper to prevent ongoing harm (including injunctive relief halting foreclosure and dispossession while the true accounting and lawful enforcement rights are adjudicated).

202.   This claim complements Plaintiffs' statutory and equitable causes of action by capturing the **human cost** of Defendants' course of conduct— conduct that used foreclosure and dispossession pressure, rather than accurate accounting and fair servicing, as the primary enforcement tool.

## M. THIRTEENTH CAUSE OF ACTION: CIVIL CONSPIRACY (GEORGIA COMMON LAW; DERIVATIVE TORT THEORY) – AGAINST ALL DEFENDANTS

203.   Plaintiffs reallege and incorporate by reference paragraphs **1 through 202** as though fully set forth herein.

204.   Under Georgia law, a civil conspiracy **"may be founded"** only where two or more persons combine **either** to do an act which is a tort **or** to do a lawful act by methods that constitute a tort; however, **"the conspiracy itself furnishes no cause of action,"** and **"the gist of the action … is not the** conspiracy alleged, but the **tort committed** against the plaintiff and the resulting damage." *Metro Atlanta Task Force for the Homeless, Inc. v.*

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 114**

*Ichthus Cmty. Tr.*, 298 Ga. 221, 780 S.E.2d 311 (2015); *Summer-Minter & Assoc. v. Giordano*, 231 Ga. 601 (1971); *Rose v. Zurowski*, 244 Ga. App. 190 (1999); *Association Servs., Inc. v. Smith*, 249 Ga. App. 629 (2001).

205. Plaintiffs expressly plead (and incorporate here) the underlying tortious and unlawful conduct that supplies the required predicate for conspiracy liability, including: **wrongful foreclosure / attempted wrongful foreclosure** (including breach of the duty that powers of sale "shall be strictly construed and shall be fairly exercised," **O.C.G.A. § 23-2-114**, and statutory foreclosure notice requirements), negligent servicing and **negligent misrepresentation, abuse of process,** and **intentional infliction of emotional distress,** together with related statutory violations pleaded elsewhere that were used as **unlawful means** to further the tortious objective of forced displacement.

206. The essential element of civil conspiracy in Georgia is proof of a **common design**—a mutual understanding, either express or tacit, "as to how [the defendants] will accomplish an unlawful design." *Tyler v. Thompson*, 304 Ga. App. 707, 707 S.E.2d 137 (2011) (quoting Georgia civil conspiracy authorities and explaining the "common design" requirement). Plaintiffs allege that Defendants—acting in a coordinated servicing-and-enforcement

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 115**

chain—shared and pursued a common objective: **to escalate foreclosure and dispossession** against Plaintiffs' homestead by using **unreconciled, shifting account figures**, escrow/fee inflation mechanisms, and enforcement filings/communications as leverage, rather than correcting the ledger and providing a fair cure/reinstatement path.

207.    Plaintiffs allege the conspiracy was carried out through interdependent, sequential overt acts, including but not limited to:

    a.  **Servicing-based default inflation**: generating inconsistent "amount due," arrears, escrow shortage, and fee figures; holding payments in suspense while late fees and default charges accrued; and using those figures to characterize Plaintiffs as delinquent;

    b.  **Loss-mitigation as a pretextual gate**: denying home-retention options while relying on disputed delinquency figures and steering away from sustainable retention;

    c.  **Authority/recordation steps**: preparing, executing, or relying on recorded instruments and authority narratives (including the MERS/assignment chain) to support enforcement positioning;

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 116**

d. **Foreclosure escalation steps in Georgia**: initiating or advancing power-of-sale foreclosure posture, including notices/advertising and related coordination; and

e. **Litigation-driven coercion**: advancing stay-relief and other enforcement filings and communications to increase foreclosure leverage and accelerate the path to sale/possession while the ledger remained disputed and unreconciled.

208. Plaintiffs allege Defendants knew or should have known that the debt figures and cure narratives were disputed, internally inconsistent, and unreconciled across channels, yet they proceeded in concert. Plaintiffs further allege Defendants' coordinated course of conduct relied on unlawful means and tortious methods—including misrepresentations of the amount/status of the debt, misuse of foreclosure pressure, and unfair exercise of power-of-sale enforcement—contrary to Georgia's fairness requirements for foreclosure process and the strict compliance required for foreclosure notices and filings.

209. Plaintiffs allege the concerted actions described above proximately caused concrete harm, including: inflated fees/charges, increased cure burdens, credit impairment, litigation-related expenses, and severe emotional distress arising from threatened loss of a unique homestead and substantial equity.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 117

Plaintiffs further allege the conspiracy foreseeably magnified community harms and regulatory burdens associated with wrongful foreclosure and vacancy, which Georgia law and local ordinances explicitly address— including Georgia's authorization for vacant/foreclosed property registry regimes (**O.C.G.A. § 44-14-14**), DeKalb County's foreclosure and vacant property registry provisions (e.g., **§ 18-102** and **§ 18-116**), and the City of Decatur's authority to secure vacant unsecured buildings and assess lienable abatement costs (**Decatur Code § 54-63**).

210.    Once a conspiracy is formed, Georgia law recognizes that "members of the conspiracy are **jointly and severally liable** for acts of co-conspirators done in furtherance of the conspiracy." *Tyler v. Thompson*, 304 Ga. App. 707 (2011) (citing *Cook v. Robinson*, 216 Ga. 328 (1960)). Plaintiffs allege each Defendant is therefore liable for the wrongful acts committed by other conspirators in furtherance of the common design, to the extent those acts proximately caused Plaintiffs' damages.

211.    Because the conspiracy's overt acts are tied to foreclosure escalation on an unreconciled ledger, Plaintiffs request relief that both compensates past harm and prevents recurrence, including: (a) compensatory damages; (b) injunctive and declaratory relief halting foreclosure and dispossession while the Court

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 118**

adjudicates the true account status and enforcement authority; (c) court-supervised accounting and record correction; and (d) the stabilizing, permanent restructuring remedy requested throughout this Complaint (fixed 3% interest rate, affordable monthly payment, and no further review period) to end the cycle of disputed servicing and enforcement leverage.

212. Plaintiffs therefore request that judgment be entered in their favor on this cause of action and that the Court order all damages and equitable relief necessary to remedy and deter Defendants' concerted wrongful conduct.

## N. FOURTEENTH CAUSE OF ACTION: QUIET TITLE / CANCELLATION OF INSTRUMENTS (QUIA TIMET) (O.C.G.A. §§ 23-3-40 ET SEQ.; O.C.G.A. § 23-2-53) – AGAINST DEFENDANT ATHENE ANNUITY AND LIFE COMPANY, DEFENDANT MERS, AND DOE DEFENDANTS

213. Plaintiffs reallege and incorporate by reference paragraphs 1 through 212 as though fully set forth herein. Plaintiffs bring this claim to remove clouds upon title and to prevent the continued use of recorded and enforcement-related instruments that cast doubt on Plaintiffs' ownership rights and marketability of title to the Property. Georgia equity "will lend its aid to remove a cloud upon title" so that a person in rightful possession may enjoy

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 119

property "without present annoyance and harassment, or threatened molestation." **Duffee v. Jones**, 208 Ga. 639, 68 S.E.2d 699 (1952).

214.   This is a **conventional quia timet** claim under **O.C.G.A. § 23-3-40 et seq.**, brought to cancel or neutralize identified writings that operate as clouds upon title. Under **O.C.G.A. § 23-3-42**, a plaintiff seeking cancellation as a cloud must show (among other things) that: **(1)** the plaintiff cannot immediately or effectually protect rights through another proceeding, and **(2)** the instrument sought to be canceled would throw a cloud or suspicion upon title and might be vexatiously or injuriously used against the plaintiff. Plaintiffs allege those prerequisites are met because Defendants' enforcement posture—driven by disputed accounting and authority assertions—threatens foreclosure, sale, and dispossession, and ordinary statement review has proven inadequate to resolve the cloud created by the recorded and enforcement-facing writings.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 120**

215.    Plaintiffs allege that the following categories of writings and recorded/enforcement instruments (and related publications), whether already recorded or threatened to be recorded/used, constitute **clouds upon title** to the Property within the meaning of Georgia quiet title law:

    a.    Any **assignment(s)** and recorded authority instruments purporting to vest Athene with enforcement rights **to the extent** such instruments are being used in connection with an enforcement narrative grounded on unreconciled accounting and inconsistent authority representations, including any assignment executed by or through **MERS** as nominee/grantee;

    b.    Any **foreclosure-related notices, advertisements, and recorded filings** premised on disputed delinquency figures or noncompliant authority disclosures, including the recorded notice activity referenced in public property records; and

    c.    Any future **deed under power**, substitute-trustee/foreclosure conveyance, or related instrument issued or threatened to be issued based on the same disputed and unreconciled record.

216.    Plaintiffs allege these clouds are legally material because Georgia's nonjudicial foreclosure scheme requires strict statutory compliance, including

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 121**

that the **security instrument or assignment vesting the secured creditor with title** be filed prior to the time of sale (**O.C.G.A. § 44-14-162(b)**), and that the written foreclosure notice identify the individual or entity with **full authority** to negotiate, amend, and modify all terms of the mortgage (**O.C.G.A. § 44-14-162.2**). Instruments and notices used to support foreclosure posture while those statutory requirements are disputed—and while the "amount due" itself is unreconciled—operate as a continuing cloud that impairs marketability and threatens Plaintiffs' right to quiet enjoyment of the Property.

217.   Plaintiffs further allege that equity supports cancellation and quiet title relief where recorded instruments or claims to enforce are being used **inequitably** or in a manner that suppresses material facts. Under **O.C.G.A. § 23-2-53**, suppression of a material fact which a party is under an obligation to communicate constitutes fraud, and the obligation may arise from the circumstances of the case. Plaintiffs allege that to the extent the recorded and enforcement-facing instruments at issue were prepared, transmitted, or relied upon while suppressing material facts about the true accounting, suspense handling, escrow volatility, and/or true enforcement authority, those writings function as **iniquitous clouds** and should be canceled or enjoined from use.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 122

218. Plaintiffs acknowledge that Georgia courts may dismiss a quiet-title petition where the petitioner seeks to quiet title **against a valid, unsatisfied security deed** without alleging satisfaction of the underlying debt. See, e.g., **Montia v. First-Citizens Bank & Trust Co.**, 341 Ga. App. 867, 801 S.E.2d 907 (2017). Plaintiffs do **not** seek a windfall or to extinguish any valid secured obligation without doing equity. Rather, Plaintiffs seek to remove and neutralize **clouds created by defective or inequitable instruments and enforcement claims**—including authority and foreclosure notices premised on unreconciled accounting—so that any future enforcement (if ever permitted) occurs only after lawful compliance, accurate accounting, and fair exercise of rights. Plaintiffs expressly plead their willingness to do equity through a court-supervised permanent restructuring (3% fixed interest, affordable payment, no further review period) once the true ledger is established.

219. To the extent this Court determines that a statutory quiet title action "against all the world" is necessary to conclusively bind unknown claimants or unknown adverse interests implicated by Doe Defendants, Plaintiffs request the Court proceed under the statutory framework in **O.C.G.A. § 23-3-60 et seq.**, including the verified-petition requirements of **O.C.G.A. § 23-**

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 123

**3-62,** submission to a special master under **O.C.G.A. § 23-3-63**, and notice/process procedures under **O.C.G.A. § 23-3-65**. Plaintiffs plead this request to ensure the remedy is procedurally complete and capable of conclusively removing title clouds where unknown parties may assert adverse interests.

220.    Plaintiffs allege that continued clouds on title create imminent and ongoing harm: they impair marketability, impede refinancing and settlement options, and amplify the risk of wrongful foreclosure and vacancy. These harms are not purely private; wrongful foreclosure and vacancy foreseeably trigger local regulatory burdens and community harm recognized in DeKalb County's foreclosure/vacant property registry framework (including **DeKalb County Code Chapter 18, Article IV, § 18-102** and **Article V, § 18-116**) and the City of Decatur's authority to close and secure vacant unsecured buildings and assess lienable costs (**Decatur Code, Chapter 54, Article III, § 54-63**).

221.    Plaintiffs request that the Court enter judgment quieting title and canceling or neutralizing the clouds identified herein by: (a) declaring that Defendants may not rely on disputed or unreconciled figures and defective authority representations to support foreclosure posture; (b) ordering the delivery up

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 124

and cancellation (or judicial nullification) of any recorded or published instruments that cast a cloud upon title due to illegality, inequity, or fraud-by-suppression; and (c) directing Defendants to record corrective instruments as necessary to clear title and prevent future vexatious use. Georgia courts have recognized cancellation of title-clouding instruments as an equitable remedy where the facts warrant it. See, e.g., **Northwest Carpets, Inc. v. First Nat'l Bank of Chatsworth**, 280 Ga. 535, 630 S.E.2d 407 (2006) (affirming cancellation of a deed as a cloud upon title under appropriate circumstances).

222. Plaintiffs further request injunctive relief prohibiting Defendants and their agents from recording, publishing, or using any additional foreclosure-related instruments premised on disputed and unreconciled accounting or defective authority disclosures; directing compliance with Georgia's strict foreclosure prerequisites (**O.C.G.A. §§ 44-14-162 and 44-14-162.2**) before any foreclosure sale is attempted; and retaining jurisdiction to enforce compliance and ensure that the Property's title is restored to a clear, marketable state consistent with corrected accounting and lawful enforcement rights.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 125

## O. FIFTEENTH CAUSE OF ACTION: WILLFUL VIOLATION OF THE AUTOMATIC STAY; DAMAGES UNDER 11 U.S.C. § 362(K) – AGAINST DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, DEFENDANT ATHENE ANNUITY AND LIFE COMPANY, DEFENDANT TIFFANY & BOSCO, P.A., AND DOE DEFENDANTS

223.    Plaintiffs reallege and incorporate by reference paragraphs **1 through 222** as though fully set forth herein. Plaintiffs filed a **Chapter 7** bankruptcy petition on or about **October 6, 2025** (U.S. Bankruptcy Court, District of Nevada), which automatically triggered the **automatic stay** under **11 U.S.C. § 362(a)**. The automatic stay is a fundamental debtor protection designed to impose an immediate freeze of the status quo by halting collection, enforcement, and foreclosure activity against the debtor and property of the estate.

224.    Section **362(a)** prohibits, among other things, acts to: (a) **commence or continue** actions to recover a prepetition claim; (b) **obtain possession of** or exercise control over property of the estate; (c) **enforce a lien** against property of the estate; and (d) **collect, assess, or recover** a prepetition claim against the debtor. Plaintiffs are "individual[s]" within the meaning of §

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 126

362(k) and are entitled to statutory damages if they are injured by a **willful** stay violation.

225.  Plaintiffs allege that Defendants had **actual notice** of the bankruptcy filing and the existence of the stay, yet—**upon information and belief**—continued acts intended to collect and to advance foreclosure/dispossession leverage on the Property, including by:

a.  Continuing foreclosure posture and enforcement pressure tied to a sale schedule that public records reflect was set to proceed immediately after the bankruptcy filing (including the original sale date reflected in public foreclosure data), and failing to promptly halt and unwind foreclosure steps after notice of the stay;

b.  Transmitting and/or causing transmission of collection communications post-petition that demanded cure or payment of prepetition arrears and fees (including communications from counsel and servicer that stated arrears totals, demanded response within short deadlines, and threatened escalating enforcement); and

c.  Continuing to assess, demand, or leverage disputed late fees, default fees, escrow shortages, and arrears totals during the stay as part of a "pay now or lose your home" pressure posture—despite

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 127**

the unreconciled and internally inconsistent ledger described in this Complaint.

226.    Plaintiffs allege that Defendants' post-petition collection and foreclosure-pressure conduct was not limited to permissible "informational" notices. Instead, the communications and enforcement steps were directed at inducing payment and accelerating possession/sale leverage while the automatic stay was in effect. A creditor (and its agents) has an affirmative duty to discontinue post-petition collection activity in non-bankruptcy fora once it is aware of the bankruptcy filing, and delay or continuation can constitute a willful stay violation. Defendants cannot immunize stay-violating collection behavior by labeling communications as "not a stay violation" when the substance and effect are to demand payment, escalate foreclosure posture, or advance dispossession leverage.

227.    Plaintiffs acknowledge that a motion for relief from stay is a mechanism authorized by the Bankruptcy Code; however, Defendants' ability to **request** stay relief does not authorize them to **continue** collection or foreclosure escalation while the stay remains in force, nor does it excuse the use of disputed and unreconciled figures to increase pressure during the protected period. Plaintiffs allege Defendants used stay-relief posture as part of a

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 128**

broader enforcement strategy, while continuing acts designed to collect and to advance foreclosure leverage before any lawful relief was granted.

228. The standard for a willful violation is satisfied where the violator **knew the automatic stay was in effect** and **intended the actions** that violated the stay; no specific intent to violate the stay is required. Plaintiffs allege Defendants' conduct was willful because Defendants had notice of the bankruptcy and nevertheless intentionally continued the challenged collection and foreclosure-pressure acts.

229. Acts taken in violation of the automatic stay are **void and without effect**. To the extent Defendants or their agents took post-petition steps to enforce the lien, proceed with foreclosure, or obtain possession without lawful stay relief, those steps are void and must be declared null and unenforceable, and Defendants must be compelled to unwind any resulting consequences.

230. Section **362(k)(1)** mandates that an individual injured by any willful stay violation **"shall recover actual damages, including costs and attorneys' fees,"** and, in appropriate circumstances, may recover **punitive damages**. Actual damages may include out-of-pocket losses, litigation response costs, and—in proper circumstances—emotional distress damages, subject to evidentiary requirements. Plaintiffs allege they suffered actual damages

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 129

including (without limitation): costs incurred responding to stay-violating enforcement pressure; increased fees and charges leveraged during the protected period; and significant emotional distress arising from the threat of losing their home during bankruptcy's intended breathing spell.

231.  Plaintiffs also seek legal fees and costs incurred in stopping and remedying the stay violations, consistent with Eleventh Circuit authority recognizing that § 362(k) expressly authorizes fee shifting as part of actual damages.  Plaintiffs further allege punitive damages are warranted because Defendants' conduct reflects reckless disregard for statutory protections and for Plaintiffs' rights, particularly where Defendants pressed foreclosure leverage on disputed figures while the stay was in effect.

232.  Plaintiffs allege Defendants are jointly responsible to the extent each participated in, directed, ratified, or benefited from the stay-violating conduct: Shellpoint as servicer and primary communicator; Athene as the real party in interest benefiting from enforcement leverage; Tiffany & Bosco as counsel transmitting enforcement/collection pressure; and Doe Defendants as enforcement agents/vendors involved in foreclosure steps and related communications. Plaintiffs request judgment on this cause, including § 362(k) damages, and further request declaratory and injunctive orders

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 130**

necessary to prevent further stay-related misconduct, compel record correction, and bar any foreclosure or dispossession activity during the stay.

233. **Local harm context (supporting irreparability and the need to halt foreclosure pressure):** Wrongful foreclosure and vacancy impose community burdens addressed by DeKalb County's foreclosure/vacant property registry framework and the City of Decatur's nuisance/abatement authority for vacant unsecured buildings; these local policies underscore the severe and foreseeable harm that results when foreclosure is pressed during protected periods on disputed records.

## P. SIXTEENTH CAUSE OF ACTION: VIOLATION OF RESPA AND REGULATION X: PROHIBITED DUAL-TRACKING AND UNLAWFUL LOSS-MITIGATION HANDLING (12 U.S.C. § 2605; 12 C.F.R. § 1024.41; 12 U.S.C. § 2605(K)) – AGAINST DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING

234. Plaintiffs reallege and incorporate by reference paragraphs **1 through 233** as though fully set forth herein. This cause of action arises under **RESPA, 12 U.S.C. § 2605**, including **§ 2605(k)**, and the CFPB's implementing loss-mitigation rules in **Regulation X, 12 C.F.R. § 1024.41**, which impose mandatory procedures once a borrower submits a loss-mitigation application.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 131

The Regulation X framework is designed to ensure **reasonable diligence,** timely and meaningful notices, and to prevent foreclosure from proceeding in prohibited circumstances—particularly where the servicer has not fairly processed the borrower's request or where foreclosure escalation would undermine the borrower's statutory protections.

235.   Plaintiffs allege they submitted a loss-mitigation request supported by financial documentation and homeowner information sufficient to trigger Shellpoint's duties to: (a) exercise **reasonable diligence** to obtain documents and information necessary to complete the application (**12 C.F.R. § 1024.41(b)(1)**); (b) provide required written notices regarding completeness and any missing items, and provide a meaningful opportunity to cure deficiencies (**12 C.F.R. § 1024.41(b)(2)**); and (c) conduct a good-faith evaluation of available options once an application is complete (**12 C.F.R. § 1024.41(c)**), including providing a proper written decision that complies with the regulation's notice standards. Plaintiffs allege Shellpoint did not meet these duties.

236.   Plaintiffs allege Shellpoint failed to exercise reasonable diligence in the loss-mitigation process because requirements and document demands shifted, communications were inconsistent, and Plaintiffs were not guided toward

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 132**

completion with stable and actionable instructions. Plaintiffs allege that Shellpoint's process did not function as a compliance-driven effort to complete the application, but rather as an obstacle course that resulted in denial while foreclosure posture advanced. These failures violate **12 C.F.R. § 1024.41(b)** and also reflect noncompliant servicing administration prohibited by **12 U.S.C. § 2605(k)(1)**.

237.   Plaintiffs allege Shellpoint denied home-retention options while relying on **disputed delinquency figures** inflated by Shellpoint's suspense-account handling, fee layering, and opaque escrow calculations. Plaintiffs further allege Shellpoint's denial rationales (including "active bankruptcy," "insufficient hardship," and "excess delinquency") were not applied in good faith because they did not reconcile Plaintiffs' financial information against a **reconciled ledger** and did not address the servicing error disputes that drove the "delinquency" narrative. Plaintiffs allege a denial premised on a distorted or unreconciled ledger is not a compliant evaluation under **12 C.F.R. § 1024.41(c)** and constitutes prohibited conduct under **12 U.S.C. § 2605(k)**.

238.   Plaintiffs allege Shellpoint advanced foreclosure posture and enforcement strategy while loss-mitigation issues and servicing disputes were unresolved, thereby depriving Plaintiffs of the protections Regulation X was enacted to

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 133**

ensure. Regulation X restricts a servicer from making the first notice or filing required for foreclosure (and from proceeding with a sale in certain protected circumstances) when a complete application is pending and the borrower is entitled to the regulation's loss-mitigation process. **12 C.F.R. § 1024.41(f)–(g).** Plaintiffs allege that Shellpoint's sequencing—denial on disputed figures and continued escalation toward foreclosure—constitutes prohibited dual-tracking and unlawful foreclosure pressure within the meaning and purpose of Regulation X.

239. Plaintiffs allege Shellpoint failed to provide adequate written explanations tied to accurate and reconciled data. Plaintiffs allege denial communications did not: (a) reconcile Plaintiffs' verified financial information with the stated denial reasons; (b) meaningfully address servicing error disputes affecting delinquency figures; or (c) provide a stable and intelligible cure roadmap. Plaintiffs allege these deficiencies violate the notice requirements and the good-faith decisioning standards embodied in **12 C.F.R. § 1024.41(c)–(d).**

240. Regulation X's loss-mitigation framework exists to prevent precisely the harm Plaintiffs suffered: increased fees and default exposure, acceleration of foreclosure pressure, loss of meaningful opportunity to resolve before enforcement, and threatened loss of a unique homestead. Plaintiffs allege

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 134**

Shellpoint's dual-tracking and noncompliant denial posture was a substantial cause of those harms.

241.    Plaintiffs suffered actual damages recoverable under **12 U.S.C. § 2605(f)**, including out-of-pocket losses, fee escalation traceable to unlawful servicing/denial posture, credit impairment, emotional distress, and litigation expenses incurred to prevent foreclosure and correct the servicing record. Plaintiffs further allege Shellpoint's conduct reflects a **pattern or practice** of noncompliance, warranting additional statutory remedies under **12 U.S.C. § 2605(f)** in addition to actual damages and fee-shifting.

242.    Plaintiffs seek injunctive relief compelling compliance with Regulation X and preventing foreclosure escalation while the account is reconciled and the loss-mitigation process is properly administered. Plaintiffs further allege that the most effective equitable remedy to end recurring dual-tracking and disputed-figure cycles is a **permanent court-ordered restructuring** requiring: (a) a **fixed 3% interest rate**, (b) a **monthly payment Plaintiffs can afford**, and (c) **no further review or trial period**, together with correction/crediting of improper fees and escrow errors. Plaintiffs allege this relief aligns with the consumer-protection purpose of Regulation X and

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 135**

prevents repeated servicing disputes and foreclosure pressure driven by opaque accounting.

243.   Plaintiffs are entitled to judgment on this cause of action, including actual damages, statutory remedies, attorney's fees where authorized, and corrective/injunctive relief compelling Shellpoint to comply with Regulation X and RESPA and enjoining any foreclosure activity based on noncompliant loss-mitigation handling and unreconciled account figures.

## Q. SEVENTEENTH CAUSE OF ACTION: VIOLATION OF O.C.G.A. § 44-14-162.2 AND RELATED GEORGIA FORECLOSURE NOTICE REQUIREMENTS (STRICT COMPLIANCE REQUIRED) – AGAINST DEFENDANT ATHENE ANNUITY AND LIFE COMPANY, DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, DEFENDANT MERS, AND DOE DEFENDANTS

244.   Plaintiffs reallege and incorporate by reference paragraphs **1 through 243** as though fully set forth herein. Georgia's nonjudicial foreclosure framework requires **strict compliance** with statutory prerequisites before the exercise of a power of sale. **O.C.G.A. § 44-14-162.2(a)** requires that the secured creditor (or its agent) give the debtor written notice of the initiation of proceedings to exercise a power of sale, and that such notice include the **name, address,**

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 136

**and telephone number** of the individual or entity who has **full authority** to negotiate, amend, and modify all terms of the mortgage with the debtor. The statute's purpose is practical: to ensure homeowners know **who actually has authority** to work out the loan and avoid foreclosure and are not forced into a runaround among entities that disclaim decision-making power.

245. Georgia courts emphasize that the § 44-14-162.2 notice requirement is mandatory and must be satisfied as written. The Supreme Court of Georgia has held that the statute requires identification of the party with "full authority" to negotiate, amend, and modify, but it does not require that the "secured creditor" itself be identified in the notice so long as the "full authority" contact is properly identified. **You v. JP Morgan Chase Bank, N.A.,** 293 Ga. 67, 743 S.E.2d 428 (2013). Courts have also held that **substantial compliance** may not cure a materially misleading notice where the designated contact does not in fact possess the required authority or where the notice functions to frustrate the debtor's statutory opportunity to negotiate. See, e.g., **Reese v. Provident Funding Assocs., LLP,** 317 Ga. App. 353, 730 S.E.2d 551 (2012) (addressing notice content/authority issues and emphasizing statutory purpose).

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 137**

246. Plaintiffs allege Defendants violated **O.C.G.A. § 44-14-162.2** because foreclosure-related notices and authority communications failed to **clearly and accurately identify** the true individual/entity with full authority to negotiate, amend, and modify the loan terms, and/or identified a party that did not in fact have such authority. Plaintiffs allege Defendants' communications were inconsistent regarding who owned the loan, who could approve a modification, and who had decision-making authority, thereby depriving Plaintiffs of the very statutory protection § 44-14-162.2 was enacted to provide.

247. Plaintiffs further allege Defendants' notice noncompliance was compounded by **defective accounting** that rendered any notice and cure opportunity illusory. A foreclosure notice cannot serve its statutory function if the borrower is simultaneously being presented with **unstable, unreconciled, and shifting amounts due** that prevent meaningful negotiation, reinstatement, or cure. Plaintiffs allege that suspense-account practices, escrow opacity, and fee layering distorted delinquency totals and tainted the "default" narrative used to justify foreclosure initiation, such that any notice premised on those figures was substantively misleading and

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 138

inconsistent with the fairness and transparency the statute is designed to promote.

248.   Plaintiffs allege **MERS's involvement** in the chain of assignments and authority memorialization contributed to the confusion and misdirection that § 44-14-162.2 seeks to prevent. Plaintiffs allege that recorded assignment activity and servicer/beneficiary communications created mixed signals as to who had authority to negotiate and modify. Plaintiffs allege that, in a power-of-sale system where authority is often fragmented, the statute's requirement is especially important—and Defendants' inconsistent authority representations violated Georgia foreclosure policy.

249.   Plaintiffs allege **Athene** and **Shellpoint** are responsible because they controlled and benefited from the enforcement posture: Shellpoint communicated with Plaintiffs, issued statements and notices, and handled loss mitigation; Athene claimed beneficial ownership/secured-creditor status and benefited from foreclosure leverage. Plaintiffs allege MERS and Doe Defendants contributed through assignment and notice processes and through foreclosure-related communications that failed to provide accurate authority information.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 139**

250. Plaintiffs allege these statutory notice defects caused concrete harm. Plaintiffs were deprived of a meaningful opportunity to communicate with a real decision-maker to negotiate cure or modification. Plaintiffs were forced into defensive action, incurred costs, and faced increased risk of loss of equity and displacement. The harm is irreparable if foreclosure proceeds based on defective notice.

251. Strict compliance with **O.C.G.A. § 44-14-162.2** is required, and material defects render foreclosure initiation improper and support wrongful foreclosure and injunctive relief. Georgia's Supreme Court and Court of Appeals decisions recognize that accurate "full authority" information is central to the statute's function, and that failure to comply supports declaratory relief and foreclosure restraint. **You**, 293 Ga. 67; **Reese**, 317 Ga. App. 353.

252. Plaintiffs seek declaratory and corrective relief requiring Defendants to: (a) identify and designate the true party with full authority to negotiate, amend, and modify all terms of the mortgage; (b) provide a corrected and reconciled reinstatement/cure figure grounded in accurate accounting; and (c) refrain from any sale or dispossession activity unless and until statutory

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 140**

notice compliance is established and the underlying accounting disputes are corrected.

253.  Plaintiffs are therefore entitled to judgment on this cause of action, including: (a) a declaration of noncompliance with § 44-14-162.2 and related notice requirements; (b) injunctive relief preventing any foreclosure sale based on defective notice; (c) an accounting and record-correction order to ensure any cure figure is accurate; and (d) such further relief as Georgia law and equity permit to protect Plaintiffs' homestead and to enforce strict compliance with Georgia's foreclosure statutes.

## R. EIGHTEENTH CAUSE OF ACTION: CONVERSION (GEORGIA LAW) – AGAINST DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, DEFENDANT ATHENE ANNUITY AND LIFE COMPANY, AND DOE DEFENDANTS

254.  Plaintiffs reallege and incorporate by reference paragraphs **1 through 253** as though fully set forth herein. Under Georgia law, the owner of personal property is entitled to its possession, and **any deprivation of such possession is a tort for which an action lies. O.C.G.A. § 51-10-1.** Conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, **in hostility to the**

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 141

**owner's rights**, and includes wrongful detention of property or funds that the defendant is obligated to apply or return.

255. **Money can be the subject of conversion** in Georgia only where it comprises a **specific, separate, identifiable fund** and the defendant is obligated to apply it or treat it in a particular manner, rather than merely owing a general debt. See, e.g., **Taylor v. Powertel, Inc., 250 Ga. App. 356 (2001); Rubenstein v. Palatchi, 359 Ga. App. 773 (2021)**. Georgia courts likewise recognize that specific negotiable instruments and identifiable payments can be the subject of conversion where the property is particular and traceable. See **Decatur Auto Center, Inc. v. Wachovia Bank, N.A., 276 Ga. 817 (2003)**.

256. Plaintiffs transmitted **specific mortgage payments** to Shellpoint—by check and/or electronic transfer—identified by date, amount, and transaction record, and tendered solely for the specific purpose of being applied to Plaintiffs' loan obligations (principal, interest, and escrow) and reducing delinquency exposure. Plaintiffs allege Shellpoint accepted those payments and placed them into one or more **suspense accounts** or other holding ledgers instead of applying them as required to accomplish the purpose for which the payments were tendered.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 142

257.    Plaintiffs allege the funds held in suspense constituted a **specific and identifiable fund** because each payment was traceable through Shellpoint's own account systems, payment histories, suspense ledger entries, and transaction logs tied to Plaintiffs' loan number and statement history. Plaintiffs allege that, unlike a general unsecured debt, these funds were **earmarked and receipted** as mortgage payments belonging to Plaintiffs until properly applied, credited, or returned, and Shellpoint had a duty to treat them in a particular manner—i.e., to credit them to the account as received (or, if held temporarily, to apply or return them within a reasonable time and provide intelligible cure guidance).

258.    Plaintiffs allege Shellpoint wrongfully exercised dominion and control over these identifiable funds by: (a) retaining them in suspense while simultaneously treating the account as delinquent; (b) assessing late fees, default charges, and other amounts as if the payments had not been made; and (c) using the resulting inflated arrearage posture as leverage to deny home-retention options and escalate foreclosure. Plaintiffs allege this conduct was inconsistent with Plaintiffs' ownership rights in the tendered funds and inconsistent with the limited purpose for which the funds were entrusted.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 143**

259. Plaintiffs allege Shellpoint's conversion was **intentional or knowing**. Shellpoint's statements and servicing communications expressly disclose that partial payments may be held in suspense until a "full" payment is accumulated; yet Shellpoint's own servicing practices, escrow volatility, and fee layering altered what Shellpoint deemed a "full" payment and extended suspense holding in a manner that magnified delinquency and charges. Plaintiffs allege this was not an accidental bookkeeping error but a deliberate servicing practice that foreseeably deprives borrowers of the benefit of their tendered funds.

260. Plaintiffs allege the converted funds were (and remain) **identifiable and traceable**. Plaintiffs will prove the specific payments at issue through bank records, payment confirmations, and Shellpoint's own loan history/suspense ledgers showing receipt, holding, application (if any), reversals (if any), and allocation. Plaintiffs further allege that discovery will establish the suspense-account rules and internal posting codes that show precisely how Plaintiffs' funds were detained, reclassified, or applied.

261. Plaintiffs allege the conversion caused direct and foreseeable harm, including loss of use of Plaintiffs' money, improper fee escalation, inflated delinquency posture, impairment of cure/reinstatement ability, and increased

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 144

foreclosure and dispossession risk. Plaintiffs allege the conversion also materially contributed to the denial of meaningful loss mitigation and to enforcement escalation based on amounts that would have been materially different had the payments been properly applied.

262.    Plaintiffs allege **Athene** is liable to the extent it benefited from, ratified, directed, or accepted the benefits of Shellpoint's conversion-based servicing posture, including the fee-driven arrearage inflation and enhanced foreclosure leverage. Plaintiffs further allege Athene is liable under agency/respondeat superior principles because Shellpoint acted as Athene's servicing agent in handling payments and enforcing the loan, and Georgia law provides that a principal is liable for torts committed by its agent/servant within the scope of the principal's business. **O.C.G.A. § 51-2-2.** Plaintiffs likewise allege Doe Defendants participated in or facilitated the conversion through servicing systems, payment posting rules, fee assessment, or enforcement decisions and are jointly responsible to the extent proven.

263.    Plaintiffs are entitled to judgment on this cause of action, including: (a) return of converted funds and/or **credits to the loan ledger** in the full amount of the converted payments; (b) interest and consequential damages proximately caused by the conversion; and (c) equitable and injunctive relief

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 145**

necessary to prevent ongoing conversion-based harm, including orders prohibiting the continued wrongful detention of payments in suspense where used to manufacture delinquency and orders requiring immediate reconciliation and application of tendered funds as part of the Court's broader corrective relief (including the requested permanent restructuring framework).

## S. NINETEENTH CAUSE OF ACTION: SLANDER OF TITLE (GEORGIA COMMON LAW) – AGAINST DEFENDANT ATHENE ANNUITY AND LIFE COMPANY, DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, DEFENDANT MERS, DEFENDANT TIFFANY & BOSCO, P.A., AND DOE DEFENDANTS

264.    Plaintiffs reallege and incorporate by reference paragraphs **1 through 263** as though fully set forth herein.

265.    Under Georgia law, **slander of title** is the malicious publication of false words that disparage a plaintiff's title to property, causing the plaintiff to sustain **special damages**. The essential elements include: **(1) publication; (2) falsity; (3) malice; (4) special damages; and (5) the plaintiff's interest in the property.** See, e.g., *Latson v. Boaz*, 278 Ga. App. 576, 629 S.E.2d 481 (2006) (requiring special damages and describing slander of title standards);

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 146

*Kidd v. First Commerce Bank*, 264 Ga. App. 536, 591 S.E.2d 369 (2003) (recognizing slander of title and the need for special damages). Plaintiffs plead these elements with particularity based on Defendants' recorded and published foreclosure-related assertions and authority representations.

266.    Plaintiffs allege Defendants published and caused to be published title-disparaging statements concerning Plaintiffs' Property by:

      a.    Recording and/or causing the recording of foreclosure-related notices or authority instruments in the DeKalb County real property records;

      b.    Publishing foreclosure sale posture (including notices/advertisements and related public-facing communications) that conveyed default and enforcement claims; and

      c.    Submitting and circulating enforcement filings and factual statements in related proceedings that were reasonably expected to reach third parties (including trustees, title/settlement actors, credit-reporting channels, and real estate market participants), thereby impairing marketability and creating a cloud.

267.    Plaintiffs allege the published statements were false or materially misleading because they asserted (explicitly or by necessary implication)

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 147**

that: (a) Plaintiffs were in a defined default amount stated with precision; (b) the arrearage totals and cure amounts were accurate; (c) the Property lacked meaningful equity; and/or (d) the publishing party possessed lawful authority to foreclose and exercise the power of sale. Plaintiffs allege that these assertions were not grounded in a single reconciled ledger and were inconsistent across Defendants' own communications and filings, including shifting totals for arrears, escrow shortages, fees, and "total owed." Plaintiffs further allege that inconsistent authority narratives and assignment-related representations contributed to public confusion about who held enforceable rights.

268.   Plaintiffs allege MERS and related actors participated in the publication of misleading title-related information through recorded assignment/authority documents that were used (or threatened to be used) to justify foreclosure posture even while the underlying "default" and accounting record remained disputed and unreconciled. Plaintiffs allege that recording instruments that purport to vest enforcement authority—while Defendants simultaneously disseminate inconsistent authority and debt narratives—creates a cloud on title and disparages Plaintiffs' property rights.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 148**

269. Plaintiffs allege Defendants acted with malice within the meaning of Georgia slander-of-title law because they knew, or recklessly disregarded, that the amounts and default status being published were unreliable. Plaintiffs allege Defendants were on notice of disputes and inconsistencies in the loan figures and yet continued to publish foreclosure posture and authority assertions rather than pausing to reconcile the ledger. Plaintiffs allege Defendants' continued publication of foreclosure-related default/authority claims—despite known inconsistencies—satisfies malice/recklessness for slander of title.

270. Plaintiffs allege special damages flowing directly from the title disparagement, including:

    a. Costs incurred to investigate, contest, and remove the cloud on title (including legal fees, recording-research costs, and costs related to defensive litigation and title correction);

    b. Loss of opportunity to refinance, sell on fair terms, or complete a sustainable restructuring due to title uncertainty and foreclosure-posture impairment;

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 149**

c. Increased transaction friction and expenses (e.g., inability to obtain reliable payoff/reinstatement figures and inability to obtain stable title clearance); and

d. Additional costs and harms that are measurable and directly traceable to the published title-disparaging statements.

271. Plaintiffs allege these damages are not speculative; they are the natural and foreseeable consequence of publishing foreclosure default and authority claims that cloud title.

272. Plaintiffs allege the cloud on title continues until corrected and that continued reliance on the published statements perpetuates harm, threatens irreparable injury, and increases the risk of wrongful foreclosure and vacancy. This is particularly significant in DeKalb County and (to the extent the Property falls within or implicates City of Decatur housing-stability policy) because wrongful foreclosure and vacancy carry predictable community harms and regulatory burdens addressed by local ordinances—including DeKalb County's foreclosure/vacant property registry framework and the City of Decatur's nuisance/abatement authority for vacant unsecured buildings (e.g., **DeKalb County Code Chapter 18** registry provisions; **Decatur Code Chapter 54, Article III, § 54-63**). These local frameworks

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 150**

underscore the importance of accurate title-related publications and the public interest in preventing wrongful foreclosure clouds from persisting.

273.    Plaintiffs anticipate Defendants may invoke litigation privilege defenses for some statements. Plaintiffs allege that slander of title here is not limited to privileged pleadings; it is grounded in the broader set of **recorded instruments and foreclosure publications** (including recordings and public foreclosure posture) that operate as title clouds. Further, to the extent any privilege argument is raised, Plaintiffs allege that knowingly false and reckless title-disparaging conduct should not be immunized where it functions as an instrument of wrongful foreclosure and creates measurable special damages.

274.    Plaintiffs are therefore entitled to judgment on this cause of action, including: (a) compensatory damages for special damages and related losses; (b) cancellation of slanderous publications and corrective recording relief necessary to clear title; (c) injunctive relief enjoining further publication or recording of false default/authority claims; and (d) such other relief as the Court deems just and proper to restore clear title and prevent continued harassment and injury from title disparagement.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 151**

## T. TWENTIETH CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY / QUASI-FIDUCIARY DUTY IN ESCROW ADMINISTRATION – AGAINST DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING AND DEFENDANT ATHENE ANNUITY AND LIFE COMPANY

275.   Plaintiffs reallege and incorporate by reference paragraphs **1 through 274** as though fully set forth herein. This cause of action is narrowly directed to Defendants' **escrow administration**—the collection, holding, accounting, and disbursement of Plaintiffs' escrow funds for taxes and insurance— because Defendants' control of escrow funds created a **confidential and quasi-fiduciary relationship** requiring heightened good faith, candor, and care beyond ordinary arms-length billing.

276.   Plaintiffs allege the Loan Documents and servicing structure required Plaintiffs to remit escrow funds monthly for the limited purpose of paying **property taxes and hazard insurance** and maintaining the loan in good standing. Plaintiffs allege Shellpoint assumed exclusive control over: (a) the amount of escrow collected, (b) the timing and destination of disbursements, (c) escrow projections and "shortage/deficiency" determinations, and (d) the

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 152**

recordkeeping necessary for Plaintiffs to verify whether escrow funds were applied correctly.

277.   Georgia law recognizes that a confidential relationship exists—whether created by law or resulting from contract—where one party is situated to exercise a controlling influence over another's conduct or where, from a relationship of mutual confidence, the law requires the utmost good faith. **O.C.G.A. § 23-2-58**. Plaintiffs allege that escrow administration fits this definition because Defendants controlled a dedicated stream of borrower funds and the internal escrow math and disbursement timing that borrowers cannot independently replicate, while Plaintiffs were required to rely on Defendants' honesty and competence to avoid tax/insurance lapse, delinquency claims, and foreclosure escalation.

278.   Plaintiffs acknowledge Georgia authority holding that a **general lender-borrower relationship** typically does not, by itself, create a fiduciary duty. See, e.g., **Pardue v. Bankers First Fed. Sav. & Loan Ass'n**, 175 Ga. App. 814 (1985) (no fiduciary duty in ordinary lender-borrower setting). Plaintiffs allege, however, that this case is different: Defendants were not merely a lender communicating at arm's length; Shellpoint (for Athene) functioned as an **escrow holder/administrator** controlling identifiable funds entrusted for

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 153

a defined purpose and wielding discretionary power over the timing, accounting, and application of those funds—circumstances Georgia law recognizes can give rise to fiduciary-type obligations for escrow holders and similar custodians. See, e.g., **Tom Brown Contracting, Inc. v. Fishman**, 286 Ga. App. 589 (2008) (addressing fiduciary-duty principles in the escrow-agent context).

279.    Plaintiffs allege that, as a practical and compliance baseline, escrow administrators must provide transparent accounting and timely escrow analyses consistent with federal servicing rules. Regulation X's escrow rule requires (among other duties) escrow analyses and escrow account statements, including annual escrow statements with specific required information. **12 C.F.R. § 1024.17(i)** (CFPB). While Plaintiffs separately plead statutory servicing violations elsewhere, those federal duties underscore that escrow administration is not casual billing; it is a regulated custodial function that demands accuracy, transparency, and good-faith accounting—consistent with the fiduciary-like nature of holding and disbursing another person's funds for a limited purpose.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 154

280. Plaintiffs allege Defendants breached fiduciary/quasi-fiduciary duties by, among other things:

    a. Asserting escrow "shortages" and increasing escrow demands without providing a complete, intelligible escrow transaction history showing tax/insurance disbursements, shortage calculations, cushions, and adjustment reasoning;

    b. Failing to timely provide escrow analyses and supporting documentation sufficient for Plaintiffs to verify accuracy and dispute errors;

    c. Allowing escrow volatility and opaque projections to inflate the "full monthly payment" threshold, increasing delinquency exposure while simultaneously holding payments in suspense; and

    d. Failing to correct known escrow accounting errors once identified, despite the foreseeability that escrow mismanagement would trigger default posture, fee escalation, and foreclosure pressure.

281. Plaintiffs allege escrow mismanagement directly increased Plaintiffs' monthly payment demands and made the account appear more delinquent than it should have been, which in turn increased fees, charges, and

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 155

foreclosure leverage. Plaintiffs allege Defendants benefited from the resulting delinquency posture—creating an inherent conflict inconsistent with fiduciary principles requiring utmost good faith in administering entrusted funds. Plaintiffs allege equity requires correction because Defendants cannot be permitted to profit from escrow handling that destabilizes performance.

282.   Plaintiffs allege Athene is liable because it is the real party in interest that benefited from escrow-driven enforcement leverage and because Shellpoint administered escrow as Athene's servicing agent. Athene accepted the benefits of the escrow administration (including any shortage collections and enforcement advantages) and had the ability and duty to require proper administration and transparent accounting. Plaintiffs allege Athene's omission and ratification contributed to the breach.

283.   Plaintiffs suffered damages proximately caused by escrow-administration breaches, including increased payment demands, inflated delinquency/fees, lost time and costs attempting to correct escrow issues, credit impairment, and emotional distress. Plaintiffs also allege that escrow-driven foreclosure escalation foreseeably increases the risk of vacancy and displacement— harms recognized in local regulatory frameworks addressing

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 156**

foreclosure/vacancy consequences, including DeKalb County's foreclosure registry requirements (**DeKalb County Code, Chapter 18, Article IV, § 18-102**) and the City of Decatur's authority to secure vacant unsecured buildings and assess lienable abatement costs (**Decatur Code, Chapter 54, Article III, § 54-63**).

284. Plaintiffs are entitled to judgment on this cause of action and seek: (a) compensatory damages; (b) restitution/credits for escrow-related overcharges and shortage amounts improperly calculated or demanded; (c) a court-supervised escrow accounting requiring production of disbursement proofs, analyses, and full escrow histories; (d) injunctive relief preventing foreclosure escalation based on escrow-inflated figures until escrow records are reconciled; and (e) such additional equitable relief as necessary to stabilize performance—including recalibration of escrow and implementation of the permanent restructuring framework requested in this Complaint (fixed **3%** interest rate, affordable monthly payment, and no further review period) once the true escrow ledger is established.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 157**

**U. TWENTY-FIRST CAUSE OF ACTION: VIOLATION OF THE GEORGIA RICO ACT (CIVIL RICO) (O.C.G.A. § 16-14-1 ET SEQ.) – AGAINST DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, DEFENDANT ATHENE ANNUITY AND LIFE COMPANY, DEFENDANT TIFFANY & BOSCO, P.A., AND DOE DEFENDANTS**

285.   Plaintiffs reallege and incorporate by reference paragraphs **1 through 284** as though fully set forth herein. This cause of action is brought under the **Georgia Racketeer Influenced and Corrupt Organizations Act ("Georgia RICO")**, which prohibits persons and entities from acquiring or maintaining interests in property, or conducting/participating in an enterprise, **through a pattern of racketeering activity,** and also prohibits conspiracies and endeavors to do so.

286.   **Georgia RICO statutory framework and defined terms.** Georgia RICO defines an "**enterprise**" broadly to include any legal entity **or** any "association or group of individuals associated in fact although not a legal entity." Georgia RICO defines a "**pattern of racketeering activity**" as at least **two acts** of racketeering activity that are interrelated by common characteristics and are not isolated incidents, with timing constraints

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 158

(including the "within four years" requirement). "Racketeering activity" includes (among many enumerated crimes) **theft offenses**, violations of the **Georgia Residential Mortgage Fraud Act**, and **false statements and writings** (O.C.G.A. § 16-10-20), all of which constitute predicate racketeering acts for civil RICO purposes when pleaded and proven.

287. Plaintiffs allege Defendants constituted an **association-in-fact enterprise** within the meaning of **O.C.G.A. § 16-14-3(3)**, comprised of: (a) **Athene**, the purported beneficiary/secured-creditor claimant; (b) **Shellpoint**, the servicing agent controlling the ledger, escrow, suspense posting, and borrower-facing accounting; (c) **Tiffany & Bosco**, the enforcement and stay-relief counsel transmitting and litigating enforcement positions; and (d) Doe participants (document preparers, foreclosure vendors, and other enforcement actors) who carried out foreclosure-related steps and communications. Plaintiffs allege the enterprise functioned as a continuing unit with a shared objective: to generate **pecuniary gain and enforcement leverage** through inflated delinquency/fee layering, unreconciled accounting narratives, and accelerated foreclosure posture designed to pressure Plaintiffs toward payment on disputed sums or toward loss of the homestead.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 159**

288.    Plaintiffs allege Defendants violated **O.C.G.A. § 16-14-4(a)** by acquiring or maintaining, through a pattern of racketeering activity (or its proceeds), an interest in or control of property of any nature, including money—namely, servicer-controlled fee revenue, escrow-related sums, and other monetary benefits derived from the alleged racketeering scheme. Plaintiffs further allege Defendants violated **O.C.G.A. § 16-14-4(b)** by conducting or participating in the enterprise through a pattern of racketeering activity, and violated **O.C.G.A. § 16-14-4(c)** by conspiring and/or endeavoring to violate § 16-14-4(a)–(b), with overt acts committed to effect the unlawful objectives.

289.    Plaintiffs allege, upon information and belief, that Defendants' enterprise operated through repeated predicate acts that qualify as "racketeering activity" under **O.C.G.A. § 16-14-3(5)**, including (without limitation):

   a.    **Theft-related racketeering activity (Article 1 of Chapter 8, Title 16):** Georgia RICO expressly includes "theft" offenses as racketeering activity. Plaintiffs allege Defendants repeatedly obtained and retained money through deceptive and unlawful servicing practices (including the assessment/collection of fees and charges not lawfully due and the retention/misapplication of identifiable borrower funds), and used those amounts to build and

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 160**

sustain an enforcement posture; these acts constitute theft-type predicate conduct as defined by Georgia law and are interrelated across time, communications, and account events.

b. **Georgia Residential Mortgage Fraud Act predicate activity (O.C.G.A. §§ 16-8-100 through 16-8-106):** Georgia RICO specifically includes violations of the "Georgia Residential Mortgage Fraud Act" as racketeering activity. The Act defines the "mortgage lending process" to include not only origination events but also the **execution of deeds under power of sale that must be recorded** and the execution of **assignments that must be recorded** under Georgia foreclosure law. The Act further provides that residential mortgage fraud includes knowingly filing (or causing to be filed) with the county registrar of deeds any document that the filer knows contains a deliberate misstatement, misrepresentation, or omission. Plaintiffs allege, upon information and belief, that Defendants caused and/or used recorded foreclosure-related documents and authority instruments in the mortgage lending process that contained deliberate misstatements or omissions concerning default status, amounts owed, and/or

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 161**

authority, and leveraged those recorded instruments to advance foreclosure posture.

    c. **False statements and writings (O.C.G.A. § 16-10-20) as racketeering activity:** Georgia RICO expressly includes "false statements and writings" under **O.C.G.A. § 16-10-20** as racketeering activity. Plaintiffs allege, upon information and belief, that Defendants knowingly used false writings or statements within matters under the jurisdiction of Georgia political subdivisions (including county recording processes and foreclosure-related filings/communications directed to or filed within DeKalb County), in order to support foreclosure escalation and to induce payment on disputed totals.

290.    Plaintiffs allege Defendants' predicate acts were not isolated mistakes; they were **interrelated** by common intents, methods, victims, and results, and they occurred as part of a coordinated course of conduct designed to inflate delinquency and increase enforcement leverage. Georgia RICO's pattern definition requires at least two interrelated racketeering acts, not isolated incidents, within the statutory timing window. Plaintiffs allege the enterprise's acts satisfy both "closed-ended" continuity (repeated acts over

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 162

the relevant servicing/enforcement period) and "open-ended" continuity (the same standardized methods are capable of repetition against other borrowers).

291.   Plaintiffs allege Defendants knowingly conducted or participated in the enterprise's affairs through the racketeering pattern described above. Plaintiffs further allege direct injury to Plaintiffs' **business and property interests**, including inflated fees and charges, loss of use of funds, clouding of title, increased cure burdens, threatened loss of equity, and litigation expenses incurred to counter the enterprise's conduct—injuries proximately caused by Defendants' pattern of racketeering activity and enforcement leverage scheme. Georgia's civil remedy provision authorizes recovery by persons injured "by reason of" a violation of **O.C.G.A. § 16-14-4**.

292.   The Supreme Court of Georgia has recognized the remedial/compensatory purpose of Georgia RICO and has held that predicate acts in civil RICO actions are proven by a **preponderance of the evidence**, not a heightened standard. Plaintiffs allege the enterprise's conduct falls within the statute's intended reach: an interrelated pattern of criminally defined acts used to inflict economic harm and extract pecuniary gain through a coordinated scheme.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 163**

293. Pursuant to **O.C.G.A. § 16-14-6**, Plaintiffs seek:

    a. **Treble damages** (three times actual damages) and, where appropriate, punitive damages;

    b. **Legal fees** and the costs of investigation and litigation reasonably incurred; and

    c. Injunctive and other equitable relief authorized by Georgia RICO to prevent continued significant loss or damage and to impose reasonable restrictions and corrective measures.

294. Plaintiffs further request that equitable relief include court-supervised accounting and record correction and the permanent restructuring remedy sought throughout this Complaint (3% fixed interest, affordable payment, and no further review period), as a practical means to halt recurrence of racketeering-driven foreclosure pressure.

295. Plaintiffs therefore request that judgment be entered in their favor on this cause of action and that the Court award all statutory and equitable relief authorized under Georgia RICO to compensate Plaintiffs, deter recurrence, and prevent foreclosure and dispossession driven by the enterprise's alleged racketeering conduct.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 164**

## V. TWENTY-SECOND CAUSE OF ACTION: UNCONSCIONABILITY (EQUITABLE DEFENSE/CLAIM TO LIMIT ENFORCEMENT) (O.C.G.A. § 11-2-302; O.C.G.A. § 23-2-114; GEORGIA EQUITY PRINCIPLES) – AGAINST DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING AND DEFENDANT ATHENE ANNUITY AND LIFE COMPANY

296.    Plaintiffs reallege and incorporate by reference paragraphs **1 through 295** as though fully set forth herein. Georgia law empowers courts to refuse to enforce, or to limit enforcement of, an unconscionable contract term or unconscionable contract application. **O.C.G.A. § 11-2-302** authorizes courts to police unconscionability and to prevent oppression and unfair surprise. Although Article 2 of the UCC typically governs the sale of goods, Georgia courts and equity recognize unconscionability as a broader doctrine used to prevent inequitable enforcement where one party's superior power and oppressive practices produce outcomes that "shock the conscience." Plaintiffs plead unconscionability here as an equitable basis to **limit or condition foreclosure enforcement** and to prevent the power of sale from being used as an oppression tool rather than as a fair remedy.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 165**

297. Plaintiffs allege procedural unconscionability existed in the servicing and enforcement process because Defendants controlled the loan ledger, suspense rules, escrow calculations, fee triggers, and communications that determined whether Plaintiffs were treated as "current" or "defaulted." Plaintiffs could not negotiate on equal footing because: (a) Defendants possessed exclusive access to the internal posting logic and escrow math; (b) Plaintiffs were provided shifting totals without transaction-level transparency; and (c) the cure/reinstatement "target" changed as Defendants increased payment demands through escrow and fee layering. Plaintiffs allege this one-sided control deprived Plaintiffs of meaningful choice and made informed decision-making impossible.

298. Plaintiffs allege substantive unconscionability existed because Defendants enforced a default posture created or materially worsened by Defendants' own practices—particularly: (a) holding payments in suspense while late fees and default charges accrued; (b) increasing monthly payment demands through opaque escrow handling; and (c) using the inflated arrearage to deny retention relief and accelerate foreclosure. Plaintiffs allege enforcement under these conditions is oppressive, harsh, and "shocks the conscience"

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 166**

because it converts a home-loan performance dispute into a forfeiture mechanism that destroys substantial homeowner equity.

299. Plaintiffs allege the unconscionable result was produced not by one clause in isolation but by a coordinated course of conduct in which Defendants: (a) controlled the definition of "full payment," (b) controlled suspense retention, (c) controlled fee assessments, (d) controlled escrow "shortage" narratives, and (e) used the resulting default posture to justify foreclosure escalation. Plaintiffs allege unconscionability can arise from the **manner of performance and enforcement**, especially where enforcement is used as leverage rather than as a fair remedy grounded in accurate accounting.

300. Georgia law imposes an independent equity duty in foreclosure: powers of sale "shall be strictly construed and shall be fairly exercised." **O.C.G.A. § 23-2-114.** Plaintiffs allege Defendants' attempt to foreclose on an unreconciled ledger—while using suspense/fees/escrow opacity to manufacture delinquency—constitutes unfair exercise of the power of sale and supports the Court's equitable authority to refuse or condition enforcement. This fairness requirement reinforces the unconscionability claim because it confirms that foreclosure is not meant to be a weapon used to enforce inflated numbers created by servicer-controlled mechanics.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 167

301.   Plaintiffs allege unconscionability is further demonstrated by Defendants' refusal to consider or implement a reasonable, stabilizing restructure that would preserve the homestead while ensuring ongoing performance. Plaintiffs allege a permanent restructure at **3% fixed interest**, with an affordable monthly payment and **no further review period**, would stabilize the account and end recurring disputes caused by opaque servicing. Plaintiffs allege Defendants instead prioritized leverage, fees, and foreclosure posture over fairness and sustainability—deepening the oppressive nature of the enforcement.

302.   Plaintiffs allege the Court may refuse to permit foreclosure and dispossession based on unconscionable practices and may condition any enforcement rights on correction of accounting and fair servicing. Plaintiffs allege money damages alone are inadequate because the home is unique and the equity loss from foreclosure is irreparable. Plaintiffs therefore seek equitable intervention to stop continued unconscionable enforcement and to restore fair dealing.

303.   Plaintiffs allege Defendants benefitted from unconscionable practices through fee revenue, inflated arrearage posture, and enhanced bargaining power. Equity disfavors allowing a party to retain benefits derived from

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 168

oppressive practices. Plaintiffs therefore seek disgorgement/credit of improper charges, accounting correction, and equitable restructuring to prevent unjust outcomes.

304. Plaintiffs request that the Court declare Defendants' servicing-and-enforcement practices unconscionable as applied to Plaintiffs' homestead, limit or condition enforcement rights, and enjoin foreclosure pending: (a) completion of a court-supervised accounting; (b) correction of escrow and suspense practices; and (c) implementation of a permanent restructuring framework that restores predictability and fairness (3% fixed interest, affordable payment, no further review period).

305. Plaintiffs therefore request judgment in their favor on this cause of action and such equitable relief as is necessary to restore fairness, protect the homestead, prevent foreclosure based on oppressive and unreconciled practices, and ensure that Defendants may not enforce a forfeiture outcome created by their own unconscionable course of conduct.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 169**

**W. TWENTY-THIRD CAUSE OF ACTION: LACK OF STANDING / FAILURE TO ESTABLISH RIGHT TO ENFORCE (NOTE/AUTHORITY AND PROOF-OF-ENFORCEMENT DEFECTS) (U.C.C. §§ 3-301, 3-309; O.C.G.A. §§ 11-3-301, 11-3-309; O.C.G.A. §§ 44-14-162(B), 44-14-162.2; GEORGIA EQUITY) – AGAINST DEFENDANT ATHENE ANNUITY AND LIFE COMPANY, DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, DEFENDANT MERS, AND DOE DEFENDANTS**

306.    Plaintiffs reallege and incorporate by reference paragraphs **1 through 305** as though fully set forth herein. Plaintiffs bring this cause to require **strict proof of enforcement authority** before any foreclosure sale or dispossession proceeds against a Georgia homestead. While Georgia's power-of-sale system can allow enforcement by the holder of the security deed even where note-holding is disputed, Georgia law still requires **lawful, consistent authority** and strict statutory compliance in the foreclosure process, and Defendants cannot proceed on shifting narratives without producing the proof that the law requires. See **You v. JP Morgan Chase Bank, N.A.,** 293 Ga. 67, 743 S.E.2d 428 (2013).

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 170

307. Under the Georgia UCC, a party may enforce a negotiable promissory note only if it is: (a) a **holder**; (b) a **nonholder in possession** with the rights of a holder; or (c) a person not in possession but entitled to enforce under the lost-note provisions. **O.C.G.A. § 11-3-301**; see also **O.C.G.A. § 11-3-309** (lost, destroyed, or stolen instrument). Plaintiffs allege Defendants have asserted enforcement rights and collection/foreclosure posture without consistently producing proof that would allow a court (or the borrower) to verify the claimed right to enforce the Note under these standards.

308. Separately, Georgia requires that, before a foreclosure sale under power, **"the security instrument or assignment vesting the secured creditor with title"** must be filed in the office of the clerk of the superior court in the county where the land lies. **O.C.G.A. § 44-14-162(b).** Georgia also requires that the foreclosure notice identify the party with **full authority** to negotiate, amend, and modify all terms of the mortgage. **O.C.G.A. § 44-14-162.2.** Plaintiffs allege the authority chain and "who has enforcement authority" communications were inconsistent across Defendants' borrower-facing communications, recorded chain assertions, and enforcement posture— creating material doubt that must be resolved before any sale or dispossession is allowed.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 171

309. Plaintiffs allege that Defendants' communications and filings alternated among different entities as "owner," "beneficiary," "servicer," and "authority contact;" without a stable, reconciled proof trail. Plaintiffs allege this uncertainty undermines enforcement legitimacy and deprives Plaintiffs of the statutory opportunity to negotiate with a true decision-maker. See **O.C.G.A. § 44-14-162.2** and **You**, 293 Ga. 67 (authority-contact requirement).

310. Plaintiffs allege MERS's role as nominee/grantee in the security deed and the use of recorded assignment instruments can create a situation where recordation is used to imply authority without establishing the actual **right to enforce** the Note and without ensuring that the foreclosure posture is being advanced by a party with lawful authority. Plaintiffs allege the right to enforce a note under **O.C.G.A. § 11-3-301** is distinct from the mere existence of recorded instruments, and Defendants must not be permitted to proceed with enforcement based on conclusory statements of authority rather than proof.

311. Plaintiffs allege Defendants relied on statements of authority rather than producing clear proof of: (a) possession of the original Note (or a valid lost-note showing under **O.C.G.A. § 11-3-309**); (b) a complete endorsement chain where required; (c) assignment instruments vesting security deed title

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 172

prior to sale (**O.C.G.A. § 44-14-162(b)**); and (d) consistent designation of the "full authority" party in foreclosure notices (**O.C.G.A. § 44-14-162.2**). Plaintiffs allege discrepancies between borrower communications and litigation positions further demonstrate that foreclosure should not proceed without strict proof.

312.    Plaintiffs allege standing/authority defects are exacerbated by unreliable accounting because enforcement authority must be exercised based on a **valid, accurate obligation** and a fair foreclosure posture. Where the amount claimed due is shifting and unreconciled, Defendants' enforcement assertions are suspect and must be tested through a court-supervised accounting before any sale proceeds. Georgia equity requires that powers of sale be **fairly exercised (O.C.G.A. § 23-2-114)**, and fairness cannot exist when the enforcing party cannot prove both authority and an accurate default.

313.    Plaintiffs allege lack of standing/authority caused harm by subjecting Plaintiffs to enforcement pressure by entities whose authority was not proven, forcing Plaintiffs to defend against uncertain claims, incur costs and stress, and face increased wrongful foreclosure risk. Plaintiffs allege these harms are compensable and are also grounds for equitable relief to prevent foreclosure based on unproven authority.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 173**

314. Plaintiffs request declaratory relief determining the true enforcing party and the true chain of authority and request injunctive relief halting foreclosure until Defendants produce: (a) the Note (or lawful lost-note proof under **O.C.G.A. § 11-3-309**); (b) proof of entitlement to enforce under **O.C.G.A. § 11-3-301**; (c) proof of recorded assignment vesting title under **O.C.G.A. § 44-14-162(b)**; and (d) proof of compliant "full authority" notice under **O.C.G.A. § 44-14-162.2**. Plaintiffs further request an accounting before enforcement to ensure any cure figure is accurate and lawful.

315. Plaintiffs are entitled to judgment on this cause of action. Defendants must prove enforcement authority and standing (as applicable to the asserted enforcement theory) or be barred from foreclosure and dispossession. Plaintiffs request such further relief as the Court deems just and proper to protect homeowners from unauthorized foreclosure and to ensure strict compliance with Georgia's statutory and equitable requirements before any power-of-sale remedy is exercised.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 174**

## X. TWENTY-FOURTH CAUSE OF ACTION: FAILURE TO PROVIDE ACCURATE PAYOFF, REINSTATEMENT, AND VALIDATION INFORMATION (SERVICING TRANSPARENCY / CURE-IMPAIRMENT CLAIM) – AGAINST DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING AND DEFENDANT ATHENE ANNUITY AND LIFE COMPANY

316. Plaintiffs reallege and incorporate by reference paragraphs **1 through 315** as though fully set forth herein. Plaintiffs allege that, once foreclosure posture was asserted and Plaintiffs sought to cure, reinstate, or validate the debt, Shellpoint (and Athene through its agent) had a duty to provide **clear, itemized, and reliable** payoff and reinstatement information so that Plaintiffs could evaluate options, tender cure funds, and avoid foreclosure. Plaintiffs allege Defendants instead provided shifting, opaque, and internally inconsistent figures that deprived Plaintiffs of a meaningful cure pathway and materially increased foreclosure risk.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE; NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 175

317. Plaintiffs allege that the duty to provide accurate payoff/reinstatement/validation information arises from multiple sources, including:

   a. **RESPA/Regulation X** requirements that servicers maintain policies and procedures to provide borrowers with **timely and accurate information** and to correct errors and respond to information requests (**12 C.F.R. §§ 1024.38, 1024.35–1024.36; 12 U.S.C. § 2605(k)**);

   b. **TILA/Regulation Z** requirements that periodic statements and servicing communications provide meaningful, accurate information about amounts due and account status (**15 U.S.C. § 1638(f); 12 C.F.R. § 1026.41**); and

   c. Georgia's foreclosure framework requiring fair exercise of the power of sale (**O.C.G.A. § 23-2-114**) and meaningful notice/cure opportunities under **O.C.G.A. §§ 44-14-162 through 44-14-162.2**, which are undermined when cure figures are unstable, unexplained, and not tethered to a reconciled ledger.

318. Plaintiffs allege that Shellpoint's figures changed from statement to statement and from communication to communication (including differing

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 176

monthly payment amounts and arrears totals across servicing correspondence, loss-mitigation communications, and enforcement filings), without a single reconciled explanation of: (a) what amounts were principal/interest; (b) what amounts were escrow; (c) what amounts were fees/costs; (d) what amounts were held in suspense; and (e) what specific amount would actually reinstate the loan at any given moment. Plaintiffs allege this instability rendered cure and reinstatement practically impossible and forced Plaintiffs into escalating foreclosure risk.

319.    Plaintiffs allege Defendants' reinstatement figures included fees and charges generated by Defendants' own suspense-account and escrow practices, yet Defendants failed to provide the underlying basis, authority, and transaction-level support for those items. Plaintiffs allege that a reinstatement demand is not meaningful where it is presented as a lump-sum total without a reliable breakdown explaining why each component is due, how it was calculated, and whether it is lawful.

320.    Plaintiffs allege that when Plaintiffs disputed the delinquency narrative and sought clarification, Defendants failed to provide a coherent validation-style reconciliation showing the true payment history, suspense balances, posting dates, escrow disbursements, and fee triggers. Plaintiffs allege

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 177

Defendants' refusal to provide intelligible reconciliation prevented Plaintiffs from verifying the debt's true status and prevented informed decision-making—especially where Defendants simultaneously insisted foreclosure would proceed based on the disputed totals.

321.    Plaintiffs allege inaccurate and inflated reinstatement totals were used to justify home-retention denials by making Plaintiffs appear unable to reinstate or "too delinquent" to qualify, creating a self-fulfilling enforcement narrative. Plaintiffs further allege Defendants used the same disputed totals in enforcement litigation posture, including equity and necessity arguments, thereby amplifying foreclosure leverage and misleading decision-makers.

322.    Plaintiffs allege Defendants' failure to provide accurate, stable payoff and reinstatement information caused foreseeable harm, including: inability to cure and reinstate; increased fees and arrears caused by delay and compounding charges; lost opportunities to stabilize the loan before enforcement accelerated; litigation-related costs incurred to prevent foreclosure; and increased risk of wrongful foreclosure and loss of substantial equity. Plaintiffs allege these harms were proximately caused by Defendants' failure to provide the information necessary for cure.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 178**

323.    Plaintiffs request an order compelling Defendants to produce **reconciled payoff and reinstatement statements** supported by a complete itemization and documentary backing, including: suspense histories, posting rules, escrow transaction histories, fee itemization with basis/authority, and a chronological loan transaction history. Plaintiffs further request that Defendants be enjoined from relying on defective figures in any foreclosure or dispossession activity until reconciled figures are provided and validated through court-supervised accounting.

324.    Plaintiffs allege Athene is responsible because it is the purported beneficiary/secured-creditor claimant relying upon these payoff and reinstatement figures to justify foreclosure posture and to pursue enforcement leverage. Plaintiffs allege Shellpoint acted as Athene's agent in generating and communicating cure and payoff numbers, and Athene cannot accept the benefits of enforcement based on disputed totals while disavowing responsibility for the failure to provide accurate cure/validation information.

325.    Plaintiffs are entitled to judgment on this cause of action and seek: (a) declaratory relief confirming Defendants' duty to provide accurate, reconciled payoff/reinstatement information; (b) injunctive relief staying enforcement pending correction; (c) damages to the extent permitted for

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 179

losses caused by cure impairment and fee escalation; and (d) such further equitable relief as the Court deems just—including orders supporting Plaintiffs' requested permanent restructuring (3% fixed interest, affordable monthly payment, no further review period) once the true accounting is established and cure feasibility is restored.

Y. **TWENTY-FIFTH CAUSE OF ACTION: BAD-FAITH POST-PETITION SERVICING AND BANKRUPTCY-RELATED ENFORCEMENT CONDUCT; LACK OF CANDOR/GOOD-FAITH IN BANKRUPTCY PROCEEDINGS (EQUITABLE RELIEF) – AGAINST DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, DEFENDANT ATHENE ANNUITY AND LIFE COMPANY, AND DEFENDANT TIFFANY & BOSCO, P.A.**

326.   Plaintiffs reallege and incorporate by reference paragraphs **1 through 325** as though fully set forth herein. Plaintiffs filed a **Chapter 7** bankruptcy petition on or about **October 6, 2025**, triggering the **automatic stay** under **11 U.S.C. § 362(a)**. Congress describes the automatic stay as a fundamental debtor protection that provides a **"breathing spell"** and stops collection and enforcement pressure while the bankruptcy court administers the case. Plaintiffs allege Defendants were aware of the bankruptcy filing and the

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z; AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 180**

protections it affords but nonetheless advanced a post-petition enforcement strategy driven by inconsistent and unreconciled figures rather than accurate accounting and lawful restraint.

327.  Plaintiffs allege that post-petition conduct in bankruptcy proceedings must be performed in **good faith** and with **candor**. Bankruptcy filings and written motions are subject to **Federal Rule of Bankruptcy Procedure 9011**, which requires that factual contentions have evidentiary support (or will likely have evidentiary support after investigation) and that papers are not presented for improper purposes such as harassment or needless increase in litigation cost. Plaintiffs allege Defendants' post-petition servicing and litigation posture violated these good-faith and evidentiary-support expectations by presenting shifting debt and equity narratives without first reconciling the servicing ledger.

328.  Plaintiffs allege Defendants (through Shellpoint and its counsel) provided materially inconsistent arrears and component figures during the bankruptcy case and related enforcement communications, including differences between pre-motion correspondence and stay-relief filings regarding: monthly payment amounts used for arrears calculations; escrow shortage totals; fees/costs totals; and total arrears asserted. Plaintiffs allege Defendants failed

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 181

to withdraw, correct, or reconcile these inconsistencies despite notice that the account figures were disputed, thereby undermining the integrity of the bankruptcy process and impairing Plaintiffs' ability to respond meaningfully.

329.  Plaintiffs allege Defendants pursued stay-relief and related enforcement pressure not to resolve the accounting dispute in good faith, but to increase foreclosure leverage and accelerate the path to sale/possession while the ledger remained unreconciled. Plaintiffs allege Defendants sought procedural advantage (including expedited relief) while refusing to provide the transaction-level accounting necessary to validate the default and cure posture.

330.  Plaintiffs allege that bankruptcy courts possess express statutory authority to **prevent abuse of process** and to enforce compliance with bankruptcy rules and orders, including through **11 U.S.C. § 105(a)**. Plaintiffs allege Defendants' post-petition conduct—using inconsistent and unreconciled debt figures to drive enforcement posture and foreclosure leverage—constitutes the type of abusive, inequitable use of process that § 105(a) is designed to prevent. Plaintiffs allege these same facts independently support equitable restraint and corrective relief in this Court because the foreclosure posture in Georgia depends on accurate accounting and lawful authority.

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE; NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 182

331.   Plaintiffs allege that, consistent with the purpose of § 362 and the bankruptcy system's rehabilitative and orderly-administration function, creditors and their agents must act with restraint and accuracy once a bankruptcy filing is known. Plaintiffs allege Defendants instead pressed forward with a leverage-driven posture that increased stress, uncertainty, and costs while Plaintiffs were under bankruptcy protection.

332.   Plaintiffs allege this bad-faith post-petition conduct caused direct harm, including litigation costs incurred to respond to inconsistent enforcement narratives, loss of time and opportunity to stabilize the loan through accurate cure/reinstatement information, and destabilization of Plaintiffs' housing security during the period when federal law is designed to reduce such pressures. Plaintiffs plead this cause **in addition to** (and to the extent not fully remedied by) their statutory stay-violation and other tort/statutory causes of action.

333.   Plaintiffs allege Athene is responsible because it is the real party in interest benefiting from the enforcement posture and because Shellpoint and foreclosure counsel acted for Athene's benefit in presenting post-petition debt and equity narratives to support foreclosure leverage. Plaintiffs allege Shellpoint is responsible as the primary servicer controlling the underlying

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X; TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 183**

ledger and the source of the figures disseminated post-petition. Plaintiffs allege Tiffany & Bosco is responsible to the extent it advanced enforcement filings and communications based on figures that were not reconciled and that materially shifted despite notice of disputes.

334.   Plaintiffs further allege that post-petition foreclosure escalation on disputed figures foreseeably increases the risk of vacancy and community harm, and triggers local regulatory burdens reflected in DeKalb County's **Foreclosure Registry** (e.g., **DeKalb County Code Chapter 18, Article IV, § 18-102**) and the City of Decatur's abatement procedures for unsafe/vacant premises (e.g., **Decatur Code Chapter 54, Article III, § 54-63**), underscoring the public interest in restraining bad-faith enforcement tactics while records are corrected. Georgia law also addresses local vacancy/foreclosure registry authority through **O.C.G.A. § 44-14-14**, further confirming the recognized public harms of foreclosure/vacancy driven by improper enforcement practices.

335.   Plaintiffs request judgment on this cause of action and seek equitable relief declaring Defendants' post-petition enforcement posture inconsistent with good faith and candor, ordering corrective accounting and record reconciliation, and enjoining further post-petition enforcement escalation

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 184

against Plaintiffs' homestead based on inconsistent and unreconciled figures—together with such additional relief as the Court deems just and proper to prevent continued inequitable enforcement conduct.

## Z. TWENTY-SIXTH CAUSE OF ACTION: EQUITABLE ESTOPPEL (GEORGIA LAW) (O.C.G.A. §§ 24-14-26, 24-14-27, 24-14-29; GEORGIA EQUITY) – AGAINST ALL DEFENDANTS

336. Plaintiffs reallege and incorporate by reference paragraphs **1 through 335** as though fully set forth herein.

337. **Equitable estoppel** applies to prevent a party from asserting rights or positions that are inconsistent with that party's prior conduct, declarations, or omissions where such conduct was intended to mislead (or was so grossly negligent as to amount to constructive fraud) and **did mislead another to that person's injury. O.C.G.A. § 24-14-29** provides that equitable estoppel generally requires "some intended deception" or "gross negligence as to amount to constructive fraud," by which another is misled to injury.

338. Under Georgia law, the essential elements of estoppel by conduct include: **(1)** a false representation or concealment of facts; **(2)** within the knowledge of the party making the representation or concealing the facts; **(3)** ignorance of the truth by the party relying; **(4)** intent to influence the other's conduct;

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 185

and **(5)** inducement causing the relying party to act to their detriment. Where the estoppel relates to real estate rights, the party claiming estoppel must be ignorant of the true facts **and** ignorant of any convenient means of acquiring such knowledge, and **no estoppel** arises where both parties have equal knowledge or equal means of obtaining the truth. **O.C.G.A. § 24-14-27(a)– (b).**

339. Plaintiffs allege Defendants made representations—expressly and by necessary implication through their statements, notices, loss-mitigation communications, and enforcement posture—regarding: **(a)** how payments would be credited and what amounts were required to cure; **(b)** that loss-mitigation submissions would be processed and evaluated in good faith on accurate account data; **(c)** who possessed authority to negotiate, amend, and modify loan terms; and **(d)** that foreclosure and dispossession would not proceed on a disputed ledger without lawful compliance and accurate figures. Plaintiffs allege these representations were material because they concerned Plaintiffs' ability to keep their home and avoid foreclosure.

340. Plaintiffs **reasonably relied** on Defendants' representations and conduct by: (a) continuing to tender payments; (b) submitting financial and hardship documentation; (c) channeling communications through the designated

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 186

contacts/servicer process; and (d) refraining from alternative protective actions they would have pursued sooner had Defendants provided accurate, stable cure figures and truthful authority/accounting disclosures. Plaintiffs allege their reliance was foreseeable because Defendants controlled the account ledger, escrow calculations, posting rules, and the enforcement timeline.

341.    Plaintiffs allege Defendants then acted **inconsistently** and to Plaintiffs' detriment by: (a) treating tendered payments as delinquent through suspense handling while fees accrued; (b) presenting shifting and unreconciled "amount due" and cure figures across communications and filings; (c) denying home-retention relief while relying on delinquency figures inflated by Defendants' own servicing practices; and (d) escalating foreclosure and enforcement posture notwithstanding disputed accounting and unresolved authority issues. Plaintiffs allege this reversal and inconsistency satisfy the deception/constructive fraud concept embodied in **O.C.G.A. § 24-14-29.**

342.    **Injury and prejudice are essential** to equitable estoppel, and Plaintiffs allege they suffered concrete prejudice because Defendants' representations and subsequent inconsistent conduct caused Plaintiffs to change position for the worse—incurring increased fees and cure burdens, losing time and

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 187

opportunity to stabilize the loan earlier, and enduring heightened foreclosure risk and litigation-related costs. Georgia law recognizes that detriment/prejudice and inducement to change one's position are essential ingredients of estoppel.

343. Plaintiffs therefore allege Defendants should be **equitably estopped** from asserting foreclosure and enforcement rights based on the very delinquency narrative and cure totals that Defendants induced Plaintiffs to rely upon and then destabilized through inconsistent and unreconciled accounting. Plaintiffs further allege estoppel supports the equitable principle that the power of sale must be **fairly exercised**, and foreclosure cannot proceed on a posture created or amplified by misleading conduct. **O.C.G.A. § 23-2-114.**

344. As a result, Plaintiffs request equitable orders: (a) preventing Defendants from relying on inconsistent delinquency/cure positions and from advancing foreclosure/dispossession until the ledger is reconciled and authority is clearly established; (b) requiring Defendants to provide accurate, itemized cure/reinstatement figures and a complete transaction-level accounting; and (c) requiring Defendants to proceed consistently with their representations and with lawful servicing and foreclosure standards, including a stable, court-supervised path to the permanent restructuring remedy sought in this

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 188

Complaint (3% fixed interest rate, affordable monthly payment, and no further review period).

345.    Applying estoppel here also serves the public interest because wrongful foreclosure escalation and vacancy risk carry recognized community harms and local regulatory burdens. Georgia law authorizes local vacant/foreclosed property registry regimes, reflecting the governmental interest in preventing blight and instability. **O.C.G.A. § 44-14-14**. DeKalb County's foreclosure registry provisions (e.g., **Code of Ordinances § 18-102**) and the City of Decatur's authority to secure vacant unsecured buildings and assess lienable abatement costs (**Decatur Code § 54-63**) underscore that equitable intervention to prevent foreclosure on an unreconciled record protects not only Plaintiffs' homestead but also the surrounding community from avoidable displacement and vacancy impacts.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 189**

**AA.    TWENTY-SEVENTH CAUSE OF ACTION: VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT ("GUDTPA") (O.C.G.A. § 10-1-370 ET SEQ.) – AGAINST DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING AND DEFENDANT ATHENE ANNUITY AND LIFE COMPANY**

346.    Plaintiffs reallege and incorporate by reference paragraphs **1 through 345** as though fully set forth herein. This cause of action seeks **injunctive and corrective relief** to stop ongoing deceptive trade practices and prevent continued foreclosure escalation based on misleading servicing and enforcement communications.

347.    Under the GUDTPA, a person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person (among other things): **(i)** causes a likelihood of confusion or misunderstanding as to the **source, sponsorship, approval, or certification** of goods or services; **(ii)** causes a likelihood of confusion as to **affiliation, connection, or association** with another; and/or **(iii)** represents that goods or services have **characteristics, uses, benefits, or quantities** they do not have, or that a person has a **status, affiliation, or connection** that the person does not have. **O.C.G.A. § 10-1-372(a)(2), (a)(3), (a)(5).**

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 190

348. Plaintiffs allege Shellpoint engaged in deceptive trade practices by repeatedly issuing borrower-facing communications and foreclosure-facing narratives that were likely to mislead reasonable consumers about the **nature and effect** of Shellpoint's servicing "services," including:

a. Representations (express and implied) that payments would be applied in a manner that reduced delinquency exposure, while Shellpoint's own statements disclosed partial-payment suspense holding and Shellpoint's practices produced shifting "full payment" thresholds through escrow volatility and fee layering;

b. Representations that "amount due," arrears, and cure/reinstatement figures were stable and reliable, while the figures materially shifted across statements and enforcement communications without a reconciled ledger explanation; and

c. Representations that loss-mitigation review would be conducted fairly and consistently, while denials were issued on rationales (including "bankruptcy" and "excess delinquency") that were applied against disputed and unreconciled accounting totals.

349. Plaintiffs allege Athene engaged in deceptive trade practices, and/or is liable for deceptive trade practices carried out for its benefit, by allowing and

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 191**

ratifying borrower-facing and foreclosure-facing communications that created a likelihood of confusion or misunderstanding as to:

    a. Which entity had **approval/authority** to negotiate, amend, and modify all terms of the mortgage;

    b. The true affiliation/connection among Athene, Shellpoint, and any enforcement agents; and

    c. The accuracy and reliability of the claimed default and cure figures used to justify foreclosure posture and to resist sustainable home-retention solutions.

350. These authority and approval confusions track the specific deceptive-trade-practice categories in **O.C.G.A. § 10-1-372(a)(2)–(3) and (a)(5).**

351. The GUDTPA authorizes injunctive relief where a person is **likely to be damaged** by a deceptive trade practice. **O.C.G.A. § 10-1-373(a).** Proof of monetary damage, loss of profits, or intent to deceive is **not required** for injunctive relief under § 10-1-373(a); the focus is preventing continuing deception and future harm. Plaintiffs allege they are "likely to be damaged" because foreclosure and dispossession remain threatened and because Defendants' deceptive servicing communications and authority narratives continue to impair Plaintiffs' ability to cure, reinstate, negotiate, and protect

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 192**

their homestead. Georgia appellate authority confirms that, if a plaintiff proves a deceptive trade practice and likelihood of damage, a trial court may enjoin the conduct under equitable principles.

352.    Plaintiffs allege Defendants' deceptive practices increase the likelihood of wrongful foreclosure and vacancy, which foreseeably triggers community harms and regulatory burdens addressed by local ordinances—reinforcing the equitable need for immediate restraint. DeKalb County's **Foreclosure Registry** requires registration and responsible-contact information for foreclosed real property (**DeKalb County Code § 18-102**), and the City of Decatur authorizes municipal action to close and secure **vacant, unsecured buildings** and to assess lienable abatement costs (**Decatur Code § 54-63**). These local frameworks underscore that deceptive foreclosure and servicing narratives cause harms that extend beyond private loss and warrant injunctive prevention.

353.    Plaintiffs anticipate Defendants may invoke the GUDTPA exemption for "[c]onduct in compliance with the orders or rules of or a statute administered by a federal, state, or local governmental agency." **O.C.G.A. § 10-1-374(a)(1)**. Plaintiffs allege the deceptive practices pled here are **not** "conduct in compliance"; they are alleged violations of federal servicing rules and

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 193**

Georgia foreclosure standards (including inaccurate and shifting default/cure representations and misleading authority/approval positioning). Georgia courts have applied § 10-1-374's exemption where challenged conduct is truly in compliance with a regulated statutory scheme; Plaintiffs allege the opposite here—noncompliance and deception—so the exemption does not bar relief.

354.    Plaintiffs request an injunction under **O.C.G.A. § 10-1-373(a)** requiring Defendants to cease deceptive trade practices and to implement corrective measures, including:

a.    Prohibiting further dissemination of inconsistent or unreconciled "amount due," arrears, and cure figures;

b.    Requiring issuance of corrected, itemized, reconciled payoff/reinstatement figures supported by the transaction history and escrow/suspense ledgers;

c.    Requiring clear designation of the entity with actual approval/authority to negotiate, amend, and modify loan terms (so consumers are not misled as to "approval" and "affiliation"); and

d.    Enjoining foreclosure escalation while deceptive practices persist and until corrective accounting and disclosures are completed.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 194**

355. Costs are allowed to the prevailing party unless the Court directs otherwise, and the Court may award legal fees where Defendants willfully engaged in a deceptive trade practice knowing it to be deceptive. **O.C.G.A. § 10-1-373(b)**. Plaintiffs seek costs and, where supported by proof of willfulness, legal fees.

356. Plaintiffs therefore request judgment in their favor on this cause of action and entry of injunctive and corrective relief under the GUDTPA to prevent ongoing deception, protect Plaintiffs from likely future damage, and restore lawful, transparent servicing communications necessary to stabilize performance and prevent wrongful foreclosure.

**BB.      TWENTY-EIGHTH CAUSE OF ACTION: FRAUD BY CONCEALMENT / FRAUDULENT NONDISCLOSURE (SUPPRESSION OF MATERIAL FACTS) (O.C.G.A. §§ 23-2-53, 51-6-2; PUNITIVE DAMAGES: O.C.G.A. § 51-12-5.1) – AGAINST DEFENDANT NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, DEFENDANT ATHENE ANNUITY AND LIFE COMPANY, DEFENDANT TIFFANY & BOSCO, P.A., AND DOE DEFENDANTS**

357. Plaintiffs reallege and incorporate by reference paragraphs **1 through 356** as though fully set forth herein.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 195**

358.   Georgia law provides that **suppression of a material fact** by one who is under an obligation to communicate that fact constitutes fraud, and the obligation may arise from the confidential relations of the parties or from the particular circumstances of the case. **O.C.G.A. § 23-2-53.** Georgia also recognizes the related tort principle that fraud may consist of **willful misrepresentation** or **willful concealment** of a material fact made to induce another to act, and upon which the other party acts to their injury. **O.C.G.A. § 51-6-2.** Plaintiffs allege Defendants engaged in fraud by concealment and nondisclosure by withholding material information uniquely within Defendants' control—information necessary for Plaintiffs to cure, reinstate, obtain home-retention relief, and protect the homestead from foreclosure.

359.   Plaintiffs allege Shellpoint and Athene controlled the servicing ledger, suspense posting rules, escrow calculations, fee triggers, reversals, and internal adjustments—facts that borrowers cannot independently replicate. Plaintiffs allege Defendants' superior knowledge and exclusive control created a "particular circumstance" triggering a duty to disclose material facts necessary for Plaintiffs to protect their rights, especially where Defendants demanded payment, asserted default, denied mitigation, and escalated foreclosure based on the same undisclosed mechanics.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 196**

360. Plaintiffs allege Defendants concealed and/or failed to disclose material facts about:

    a. How suspense-account rules operated in practice, including what specific amounts were being held, for how long, and what precise additional amount was required for application at each point in time;

    b. How escrow volatility and fee layering changed what Defendants deemed a "full payment," thereby extending suspense retention and compounding delinquency; and

    c. How late fees, default charges, and escrow "shortages" were triggered and calculated while payments were held or treated as insufficient.

361. Plaintiffs allege these concealed facts were material because they determined whether Plaintiffs could cure and reinstate and whether foreclosure posture was justified.

362. Plaintiffs allege Defendants concealed that denial rationales (including "excess delinquency" or inability to qualify) were driven by disputed and unreconciled accounting figures inflated by Defendants' own posting rules, suspense handling, and escrow opacity. Plaintiffs allege denial

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 197**

communications failed to disclose internal inconsistencies in account totals and failed to disclose that a corrected ledger could materially change eligibility outcomes. Plaintiffs allege Defendants' nondisclosure was intended to induce resignation, delay, or acceptance of exit options rather than home retention.

363.   Plaintiffs allege concealment extended to enforcement and litigation posture: Defendants presented selective totals to support foreclosure escalation (including arrears and equity narratives) while omitting material contrary information, including conflicting figures appearing elsewhere in Defendants' own records and communications and the underlying transaction-level data necessary to verify the asserted amounts. Plaintiffs allege such selective presentation and nondisclosure distorted the narrative of default and equity and was intended to induce payment under pressure and facilitate foreclosure authorization.

364.   Plaintiffs allege Tiffany & Bosco participated in concealment by advancing enforcement filings and communications that asserted debt and equity positions derived from unreconciled figures while omitting known or readily ascertainable inconsistencies and omitting the transaction-level accounting needed to validate the asserted numbers. Plaintiffs allege that

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 198

when counsel transmits and relies on selective figures in a foreclosure-driven context—while withholding material inconsistencies—it participates in fraudulent nondisclosure that foreseeably injures homeowners and impairs their ability to respond and cure.

365. Plaintiffs allege Defendants intended or reasonably expected Plaintiffs to rely on Defendants' partial disclosures and silence. Plaintiffs allege Plaintiffs did rely by continuing to make payments, attempting cure based on the figures provided, pursuing mitigation through the channels Defendants designated, and making strategic decisions (including bankruptcy strategy and defensive actions) without access to the material facts withheld. Plaintiffs allege Plaintiffs would have acted differently and more effectively had Defendants disclosed the true suspense, escrow, fee, and ledger mechanics.

366. Plaintiffs allege Defendants' concealment proximately caused damages, including: increased fees and charges, inflated arrearage totals, loss of opportunity to cure earlier, denial of home-retention relief, escalation toward foreclosure and loss of equity, credit harm, and litigation-related expenses incurred to prevent foreclosure and correct the record. Plaintiffs allege these

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 199**

damages were foreseeable because Defendants' concealment directly impaired the borrower's ability to reinstate and defend the homestead.

367.    Plaintiffs allege Defendants' concealment was willful, intentional, or at least reckless, undertaken to protect and advance foreclosure leverage, and warrants punitive damages under **O.C.G.A. § 51-12-5.1** to punish and deter such conduct. Plaintiffs also seek equitable relief requiring full disclosure, court-supervised accounting, and injunctive relief preventing foreclosure and dispossession until Defendants disclose and reconcile the true ledger and escrow history and cease concealment-based enforcement tactics.

## VI.    PRAYER FOR RELIEF

368.    WHEREFORE, Plaintiffs **Dion Andre Lee** and **Carla Carmen Williams** respectfully request that this Court enter judgment in their favor and against Defendants, and grant the relief set forth below to fully remedy Defendants' unlawful conduct, protect Plaintiffs' homestead and equity, and prevent recurrence of the practices described in this Complaint.

369.    Pursuant to **O.C.G.A. § 9-4-2**, Plaintiffs request declaratory relief declaring the rights and obligations of the parties with respect to the Note, the

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 200**

Georgia Security Deed, and any claimed assignments or enforcement authority, including declarations that:

a. Defendants' servicing practices—including payment application, suspense-account handling, escrow administration, and borrower-facing delinquency/cure communications—violated applicable federal servicing laws and regulations (including **RESPA, 12 U.S.C. § 2605** and **12 C.F.R. Part 1024, TILA/Regulation Z,** and the **FDCPA,** where applicable);

b. Any foreclosure posture premised on **inaccurate, unreconciled, or internally inconsistent accounting** is unlawful and inequitable;

c. The entity with "full authority" to negotiate, amend, and modify the loan terms must be accurately identified and disclosed as required by **O.C.G.A. § 44-14-162.2,** and Defendants' conflicting or defective authority disclosures render foreclosure initiation improper;

d. Any exercise (or attempted exercise) of the power of sale must comply with Georgia equity's requirement that powers of sale be **strictly construed and fairly exercised** under **O.C.G.A. § 23-2-114;**

e. Any post-petition enforcement acts taken contrary to the protections of 11 U.S.C. § 362(a) (and/or without lawful relief where required) are

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 201**

void and unenforceable, and may not be used to support sale, dispossession, or title transfer.

370.    Pursuant to **O.C.G.A. § 9-11-65**, Plaintiffs request temporary, interlocutory, and permanent injunctive relief enjoining Defendants, their agents, successors, assigns, and all persons acting in concert with them from initiating, advancing, advertising, conducting, or completing any foreclosure sale, deed-under-power issuance, dispossession/eviction, or other enforcement action against the Property during the pendency of this action and thereafter unless and until Defendants fully comply with this Court's orders and applicable law.

371.    Plaintiffs further request injunction terms requiring Defendants to:

a.   Cease any default escalation based on disputed figures and refrain from relying on inconsistent "amount due," arrears, escrow shortage, or cure totals;

b.   Preserve all records and communications (including complete servicing ledgers, suspense histories, escrow analyses, fee assessments, call logs, and loss-mitigation review records);

c.   Provide corrected, stable, itemized cure/reinstatement figures and designate a single, lawful "full authority" contact consistent with **O.C.G.A. § 44-14-162.2**;

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 202**

    d. Take any corrective steps necessary to prevent avoidable vacancy/blight consequences recognized by local law, including DeKalb County's foreclosure registry obligations (**DeKalb County Code § 18-102**) and the City of Decatur's vacant unsecured building abatement authority (**Decatur Code § 54-63**) to the extent applicable.

372. Plaintiffs request equitable relief in the form of a **permanent loan restructuring**, without any further review or trial period, requiring Defendants to implement a restructuring that includes:

    a. A fixed interest rate of **3.00%**;

    b. A monthly payment Plaintiffs can reasonably afford based on verified income and necessary household expenses; and

    c. Elimination, correction, or crediting of improper fees, charges, suspense balances, and escrow errors so as to stabilize the loan and preserve Plaintiffs' home.

373. Plaintiffs request an order requiring Defendants to provide a full, transparent, court-supervised equitable accounting of the loan from inception to present, including: principal, interest, escrow transactions, suspense balances, posting rules, fee assessments, corporate advances (if any), reversals, waivers, and credits. Plaintiffs further request corrective orders requiring Defendants to correct

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 203**

servicing records, statements, notices, and reports (including any credit reporting or third-party reporting) to reflect the true account status and the Court's findings.

374.    Plaintiffs request cancellation, reformation, and quiet title relief as necessary to void, reform, or declare unenforceable any instruments, notices, filings, publications, or threatened conveyances premised on inaccurate accounting, defective authority, noncompliant notice, or unlawful practices—so as to remove clouds on title and prevent any sale/transfer/dispossession based on defective records.

375.    Plaintiffs request an award of **actual damages** in an amount to be proven at trial, including financial losses, increased fees and charges, loss of use of funds, credit impairment, emotional distress (where recoverable under the pleaded causes), and litigation-related costs, together with statutory damages where authorized under **RESPA, TILA**, the **FDCPA, 11 U.S.C. § 362(k)** (as applicable), and other applicable statutes.

376.    Plaintiffs further request enhanced, treble, and punitive damages where permitted by law, including:

a.  Punitive damages under **O.C.G.A. § 51-12-5.1** for willful misconduct, fraud, wantonness, oppression, or conscious indifference to consequences (where proven);

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 204

b. Treble and other enhanced remedies under the **Georgia RICO Act** and consumer-protection statutes where proven and authorized.

377. Plaintiffs request restitution, disgorgement, and credits for all amounts improperly assessed, collected, retained, or leveraged by Defendants through unlawful servicing practices, including amounts arising from suspense-account handling, escrow mismanagement, and improper foreclosure escalation, with such amounts credited to reduce any alleged delinquency and to restore a lawful account posture.

378. Plaintiffs request an award of reasonable legal fees, litigation expenses, and costs as authorized by statute and equity, including (without limitation) litigation expenses where Defendants acted in bad faith, were stubbornly litigious, or caused unnecessary trouble and expense under **O.C.G.A. § 13-6-11**, and all federal fee-shifting provisions applicable to the pleaded federal claims.

379. Plaintiffs request:

a. Pre-judgment interest on liquidated sums where allowed under **O.C.G.A. § 7-4-15**; and

b. post-judgment interest as required under **O.C.G.A. § 7-4-12**.

380. Plaintiffs request that this Court retain jurisdiction to enforce compliance with its orders, supervise accounting and record correction, ensure

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 205**

implementation of the permanent restructuring relief, and prevent future unlawful servicing or enforcement conduct.

381.    Plaintiffs request such other and further legal or equitable relief as the Court deems just and proper to fully remedy Defendants' misconduct, protect Plaintiffs' homestead and equity, and prevent recurrence of the unlawful practices described herein.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 206**

**DATED: January 5, 2025**

**Respectfully submitted,**

Dion Andre Lee, Pro Se
1000 Cathedral Pl.
Decatur, GA 30034
(702) 626-9454
dlee.gfa@gmail.com

Carla Carmen Williams, Pro Se
1000 Cathedral Pl.
Decatur, GA 30034
(702) 626-9454
dlee.gfa@gmail.com

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 207

# VERIFICATION

I, **Dion Andre Lee**, declare as follows:

1.  I am a Plaintiff in this civil action and an owner-occupant of the real property commonly known as **1000 Cathedral Place, Decatur, DeKalb County, Georgia 30034** (the "Property").

2.  I have personal knowledge of the matters stated in the foregoing **Verified Complaint** because I am a borrower on the subject mortgage loan, I have communicated with the servicer and related entities about the loan, I have reviewed mortgage statements and notices concerning the loan, and I have experienced the foreclosure and enforcement conduct described in the Verified Complaint.

3.  I have read the **Verified Complaint** in its entirety, including all numbered paragraphs, all causes of action, all requested remedies, and the Prayer for Relief.

4.  The factual allegations in the Verified Complaint are true and correct based upon my personal knowledge, except as to those matters that are stated on information and belief. As to matters stated on information and belief, I believe them to be true and correct based on records, correspondence, and other information available to me, including mortgage statements, servicing communications, foreclosure-related notices,

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 208

bankruptcy-related filings and notices, and other documents referenced in or attached to the Verified Complaint.

5. I understand that this Verification is intended to verify the truth and accuracy of the allegations contained in the Verified Complaint and that Defendants may rely upon this Verification in responding to or litigating this case.

6. I further understand that any intentional misstatement of fact in this Verification may subject me to penalties for perjury under applicable law.

7. I declare **under penalty of perjury under the laws of the State of Georgia** that the foregoing is true and correct.

**Executed on this 5th day of January 2025, at Decatur, Georgia.**

**Respectfully submitted,**

Dion Andre Lee, Pro Se
1000 Cathedral Pl.
Decatur, GA 30034
(702) 626-9454
dlee.gfa@gmail.com

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 209**

# VERIFICATION

I, **Carla Carmen Williams**, declare as follows:

1. I am a Plaintiff in this civil action and an owner-occupant of the real property commonly known as **1000 Cathedral Place, Decatur, DeKalb County, Georgia 30034** (the "Property").

2. I have personal knowledge of the matters stated in the foregoing **Verified Complaint** because I am a co-borrower on the subject mortgage loan, I have participated in communications and decision-making concerning the loan and foreclosure prevention, I have reviewed mortgage statements and notices concerning the loan, and I have personally experienced the foreclosure and enforcement conduct described in the Verified Complaint.

3. I have read the **Verified Complaint** in its entirety, including all numbered paragraphs, all causes of action, all requested remedies, and the Prayer for Relief.

4. The factual allegations in the Verified Complaint are true and correct based upon my personal knowledge, except as to those matters that are stated on information and belief. As to matters stated on information and belief, I believe them to be true and correct based on records, correspondence, and other information available to me, including mortgage statements, servicing communications, foreclosure-related

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 210

notices, bankruptcy-related filings and notices, and other documents referenced in or attached to the Verified Complaint.

5. I understand that this Verification is intended to verify the truth and accuracy of the allegations contained in the Verified Complaint and that Defendants may rely upon this Verification in responding to or litigating this case.

6. I further understand that any intentional misstatement of fact in this Verification may subject me to penalties for perjury under applicable law.

7. I declare **under penalty of perjury under the laws of the State of Georgia** that the foregoing is true and correct.

**Executed on this 5th day of January 2025, at Decatur, Georgia.**

**Respectfully submitted,**


_____
Carla Carmen Williams, Pro Se
1000 Cathedral Pl.
Decatur, GA 30034
(702) 626-9454
dlee.gfa@gmail.com

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 211**

# EXHIBIT A

## PROPERTY PROFILE

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 212**

## 1000 CATHEDRAL PL, DECATUR, GA 30034

### Property Details

| | | |
|---|---|---|
| Type SFR | Advanced Type Single Family Residence | County DEKALB |
| Year Built 2000 | Zoning R100 | APN 15-160-01-181 |
| Beds 5 | Units 1 | Radar ID P81DA97E |
| Baths 5.5 | Rooms | Subdivision CARL PAULK SURV |
| Sq Ft 1,544 | Garage Yes / 3 | Census 234.13 |
| Lot Sq Ft 177,725 | Pool No | Tract |
| Lot Acres 4.08 | Fireplace Yes | Lot 181 |
| Stories 2 | HVAC Yes | |

Legal 115 X 302 X 137 X 381 X 331 X 99 X 172 X 451...6.06AC 5-19-97 359 X 331 X 99 X 172 X 400 X 354 X 193... 4.05AC 1-23-98

### Tax Assessment

| | |
|---|---|
| Total Value $240,280 | Year Assessed 2025 |
| Land Value $16,400 | Annual Taxes $4,280 |
| Improvements $223,880 | Est. Tax Rate 1.8% |
| Owner Exempt No | Tax Rate Area 04 |

### Market Value and Rent

| | | | |
|---|---|---|---|
| Estimated Value | $444,092 | $181/sf as of 11/10/2025 | 61% confidence |
| Comp. Sales | $518,754 | $148/sf as of Today | $277k - $525k |
| Comp. Listings | $504,035 | $141/sf as of Today | $314k - $545k |
| HUD FM Rent | $2,653 | $0.74/sf | |

### Transaction History (Current Owner)

| Type | # | Date | Doc# | Party | Name | Amount |
|---|---|---|---|---|---|---|
| Release | | 12/28/2009 | 212405 | Grantor | PAULK, EARL | $426,000 |
| | | | | Grantee | BANCMORTGAGE F | |
| Loan ELOC | 1r | 7/26/2004 | 16399000728 | Borrower | PAULK EARL JR & | $500,000 |
| | | | | Lender | WACHOVIA BK NA | |
| Loan CashOut | 2r | 5/12/2005 | 17422000109 | Borrower | PAULK EARL JR & | $152,073 |
| | | | | Lender | WACHOVIA BK NA | |
| Trustees Deed Trustees Deed-Reo | | 11/10/2009 | 194835 | Grantor | PAULK EARL JR & | $309,672 |
| | | | | Grantee | WACHOVIA BK NA | |
| Quitclaim Deed REOResale | | 4/16/2013 | 73485 | Grantor | WELLS FARGO BK | $245,000 |
| | | | | Grantee | MATA ROSALBA | |
| Loan PMoney | 1r | 4/16/2013 | 73487 | Borrower | MATA ROSALBA | $232,750 |
| | | | | Lender | SHELTER MTG CO | |
| Release | | 3/27/2024 | 26226 | Grantor | MATA, ROSALBA | $232,750 |
| | | | | Grantee | SHELTER MTG CO | |
| Warranty Deed Market | | 3/19/2024 | 23633 | Seller | JONES ROSALBA | $520,000 |
| | | | | Buyer | LEE DION A | |
| Loan PMoney | 1 | 3/19/2024 | 23634 | Borrower | LEE DION A | $518,500 |
| | | | | Lender | UNITED WHOLESA | |
| NTS | | 9/11/2025 | | Grantor | DION LEE | |
| | | | | Grantee | ATHENE ANNUITY F | |

### Status

| | | | |
|---|---|---|---|
| Est. Value $544,092 | | Listed for Sale No | |
| Loan Balance $509,372 | 79% | In Foreclosure Yes | |
| Equity $135,720 | 21% | Owner Occupied Yes | |
| Status | | | |

### Ownership & Mailing Address

| | |
|---|---|
| Transfer Date 3/19/2024 | LEE, DION A |
| Purchase Amt $520,000 | 1000 CATHEDRAL PL |
| Down Payment $101,500 | DECATUR GA 30034 |
| Transfer Type Market | |

### Listing History

| Type | Status | As Of | DOM | Price | |
|---|---|---|---|---|---|
| Market | Withdrawn | 10/4/2025 | 32 | $618,000 | ↓ |
| Market | Sold | 3/19/2024 | 64 | $520,000 | ↑ |
| Unknown | Expired | 10/22/2023 | 67 | $659,900 | ↓ |
| Market | Withdrawn | 7/1/2023 | 204 | $824,900 | ↓ |

### Foreclosure Details

| | |
|---|---|
| Stage Auction | Lis Pendens Type |
| TS # | Case # |
| Sale Date | Sale Time |
| Sale Place 556 N MCDONOUGH ST, DECATUR | |
| Postponed For | |
| Org Sale Date 10/7/2025 | Prior Sale Date |
| Published Bid | |
| Opening Bid | Winning Bid |
| Default Date | Default Amt |

LOAN

| | |
|---|---|
| Recorded On | Doc # |
| Amount | Position |
| Lender ATHENE ANNUITY & LIFE CO | Lender Address |
| Lender City, St Zip | Lender Phone |

NOTICE

| | |
|---|---|
| Recorded On 9/11/2025 | Doc # |
| Notice Book # | Notice Page # |
| Trustee | Trustee Address |
| Trustee City, St Zip | Trustee Phone |
| Attorney | Attorney Phone |

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 213**

# EXHIBIT B

## NOTICE OF REMOTE HEARING ON MOTION FOR RELIEF FROM

## THE AUTOMATIC STAY

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 214

TIFFANY & BOSCO, P.A.
Krista J. Nielson, Esq.
Nevada Bar No. 10698
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135
Telephone: 702 258-8200
Fax: 702 258-8787
nvbk@tblaw.com

Attorney for NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for Athene Annuity and Life Company

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | BK Case No.: 25-15951-nmc |
| | Chapter 7 |
| DION ANDRE LEE AND CARLA CARMEN WILLIAMS, | NOTICE OF REMOTE HEARING ON MOTION FOR RELIEF FROM THE AUTOMATIC STAY |
| | Hearing Date: January 6, 2026<br>Hearing Time: 1:30 p.m. |
| Debtors. | ESTIMATED TIME: 5 Minutes |

## NOTICE OF REMOTE HEARING ON MOTION FOR RELIEF FROM THE AUTOMATIC STAY

TO THE HONORABLE JUDGE NATALIE M. COX, THE DEBTORS, THE CHAPTER 7 TRUSTEE, AND OTHER INTERESTED PARTIES:

NOTICE IS HEREBY GIVEN that a MOTION FOR RELIEF FROM THE AUTOMATIC STAY was filed on December 5, 2025 by Krista J. Nielson, Esq., Attorney for NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for Athene Annuity and Life Company. The Motion seeks the following relief: for an order terminating the automatic stay, to allow Movant to proceed with its non-bankruptcy remedies, including, but not limited to foreclosure upon, obtaining possession of, and selling the subject real property located at 1000 Cathedral Pl, Decatur, Georgia 30034 (the "subject real property"). Any opposition must be filed pursuant to Local Rule 9014(d)(1).

1

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 215**

NOTICE IS FURTHER GIVEN that if you do not want the court to grant the relief sought in the Motion, or if you want the court to consider your views on the Motion, then you must file an opposition with the court, and serve a copy on the person making the Motion *no later than 14 days* prior to the hearing on the Motion. If the hearing date has been set on less than 14 days' notice, then the opposition must be filed and served *no later than 5 business days* before the hearing. The opposition must state your position, set forth all relevant facts and legal authority, and be supported by affidavits or declarations that conform to Local rule 9014(c).

If you object to the relief requested, you *must* file a WRITTEN response to this pleading with the court. You *must* also serve your written response on the person who sent you this notice.
If you do not file a written response with the court, or if you do not serve your written response on the person who sent you this notice, then:
- ☐ The court may *refuse to allow you to speak* at the scheduled hearing; and
- ☐ The court may *rule against you* without formally calling the matter at the hearing

NOTICE IS FURTHER GIVEN that pursuant to Administrative Order 2020-14 and Administrative Order 2023-02, the hearing will be held telephonically absent further order of the Court. The hearing will be held on January 6, 2026 at 1:30 p.m. Parties are permitted to appear telephonically by dialing (833) 435-1820 and entering meeting ID (if applicable): 161 166 2815 and entering access code or passcode 115788#.

If you intend to participate at this hearing, please check the Court's website prior to the hearing for any updated instructions relating to the court participation number and access code. You may view the Court Calendar at: https://www.nvb.uscourts.gov/calendars/court-calendars/. Select the hearing judge. Next click on the "calendar date" to view the hearing judge's dial-in number and meeting access codes.

DATED this 5th day of December, 2025.

TIFFANY & BOSCO, P.A.

By: /s/ Krista J. Nielson, Esq.
KRISTA J. NIELSON, ESQ.
Attorney for Secured Creditor
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135

2

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 216

Case 25-15951-nmc    Doc 24    Entered 12/05/25 14:54:00    Page 3 of 4

TIFFANY & BOSCO, P.A.
Krista J. Nielson, Esq.
Nevada Bar No. 10698
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135
Telephone: 702 258-8200
Fax: 702 258-8787
nvbk@tblaw.com

Attorney for NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for Athene Annuity and Life Company

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>DION ANDRE LEE AND CARLA CARMEN WILLIAMS,<br><br>Debtors. | BK Case No.: 25-15951-nmc<br><br>Chapter 7<br><br>**CERTIFICATE OF SERVICE** |

### CERTIFICATE OF SERVICE

1. On December 5, 2025, I served the following documents:

   **NOTICE AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

2. I caused to be served the above-named documents by the following means to the persons as listed below:

   X   a. ECF System

   > Robert E. Atkinson
   > Robert@ch7.vegas
   > Trustee

   X   b. United States mail, postage fully prepaid:

   > Dion Andre Lee
   > 1000 Cathedral Pl
   > Decatur, GA 30034
   > Debtor

1

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 217**



Carla Carmen Williams
324 Dockside Ct
Las Vegas, NV 89145
Debtor

Carla C Williams
1000 Cathedral Pl
Decatur, GA 30034

Barrett Daffin Frappier Turner & Engel LLP
Attn: Managing Agent
4004 Belt Line Road, Suite 100
Addison, TX 75001

U.S. Bankruptcy Court – District of Nevada
Foley Federal Building and U.S. Courthouse
300 Las Vegas Blvd South
Las Vegas, NV 89101

I declare under penalty of perjury the foregoing is true and correct.

DATED this 5th day of December, 2025.

By: __/s/ Michelle Benson__

2

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 218

# EXHIBIT C

## INFORMATION COVER SHEET

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X; TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 219**

Case 25-15951-nmc   Doc 23   Entered 12/05/25 14:51:35   Page 1 of 58

**＊＊§ 362 INFORMATION COVER SHEET ＊＊**

Dion Andre Leo and Carla Carmen Williams     25-15951-nmc                              ___7___
DEBTOR                                        Case No:              MOTION #:            Chapter

NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for Athene Annuity and Life Company
MOVANT

**_Certification of Attempt to Resolve the Matter Without Court Action:_**
_Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but Movant has been unable to do so_

Date : ____December 5, 2025____          Signature: ____/s/ Krista J. Nielson, Esq.____
                                                           Attorney for Movant

PROPERTY INVOLVED IN THIS MOTION: _1000 Cathedral Pl, Decatur, Georgia 30034_
NOTICE SERVED ON:        Debtors ☒:        Debtors' Counsel ☐:        Trustee ☒
DATE OF SERVICE: ___December 5, 2025___

| MOVING PARTY'S CONTENTIONS | DEBTOR'S CONTENTIONS |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st: $565,243.06 | 1st: $_____ |
| 2nd: _____ | 2nd: _____ |
| 3rd: _____ | 3rd: _____ |
| 4th: _____ | 4th: _____ |
| Other: _____ | Other: _____ |
| Total Encumbrances: $565,243.06 | Total Encumbrances: $_____ |
| APPRAISAL or OPINION as to VALUE: | APPRAISAL or OPINION as to VALUE: |
| $600,000.00 per attached Schedule "A" | |

| TERMS OF MOVANT'S CONTRACT WITH THE DEBTORS: | DEBTOR'S OFFER OF ADEQUATE PROTECTION FOR MOVANT: |
|---|---|
| Amount of Note: $518,500.00 | |
| Interest Rate: 9.75% | |
| Duration: 30 years | |
| Payment per Month: $4,978.21 | |
| Date of Default: April 1, 2025 | |
| Amount in Arrears: $52,776.85 | |
| Date of Notice of Default: N/A | |
| SPECIAL CIRCUMSTANCES: | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY: _Krista J. Nielson, Esq._ | SUBMITTED BY:_____ |
| SIGNATURE: _/s/ Krista J. Nielson, Esq._ | SIGNATURE:_____ |

＊ All amounts due to Movant as of December 4, 2025

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 220**

# EXHIBIT D

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 221**

TIFFANY & BOSCO, P.A.
Krista J. Nielson, Esq.
Nevada Bar No. 10698
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135
Telephone: 702 258-8200
Fax: 702 258-8787
nvbk@tblaw.com

Attorney for NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for Athene Annuity and Life Company

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| In Re: | BK Case No.: 25-15951-nmc |
|---|---|
| DION ANDRE LEE AND CARLA CARMEN WILLIAMS, | Chapter 7 |
| | MOTION FOR RELIEF FROM THE AUTOMATIC STAY |
| Debtors. | Hearing Date: January 6, 2026<br>Hearing Time: 1:30 p.m. |

<u>MOTION FOR RELIEF FROM THE AUTOMATIC STAY</u>

NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for Athene Annuity and Life Company, Secured Creditor herein, ("Secured Creditor" or "Movant" hereinafter), hereby moves this Court, pursuant to 11 U.S.C. §362, for relief from the automatic stay with respect to certain real property of the Debtors having an address of 1000 Cathedral Pl, Decatur, Georgia 30034 (the "Property"). This motion is supported by the points and authorities cited herein and the record currently before the court.

I.   FACTUAL AND PROCEDURAL SUMMARY

Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of Movant's right to seek a lift of the automatic stay and foreclose if necessary.

1

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 222**

On or about March 18, 2024, Dion A Lee and Carla C Williams ("Debtors") executed a promissory note in the principal sum of $518,500.00 (the "Note"), which was made payable to United Wholesale Mortgage, LLC. A copy of the Note is attached hereto as Exhibit "1" and incorporated herein by reference. Movant currently holds possession of the Note, which is indorsed in blank. *Id.*

The Note is secured by a deed of trust (the "Deed of Trust") encumbering the Property. A copy of the Deed of Trust is attached hereto as Exhibit "2" and incorporated herein by reference.

Subsequently, all right, title and interest in the Deed of Trust were sold, assigned and transferred to Movant. A copy of the Assignment of Deed of Trust evidencing the assignment of the Deed of Trust to Movant is attached hereto as Exhibit "3" and incorporated herein by reference.

NewRez LLC dba Shellpoint Mortgage Servicing services the underlying mortgage loan and note for the property referenced in this motion for Movant. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note. The Note is indorsed in blank. Movant is the beneficiary or the assignee of the Deed of Trust.

The Note and Deed of Trust are collectively referred to herein as the "Loan."

On October 6, 2025, Debtors commenced this case by filing a voluntary petition under Chapter 7 of the Bankruptcy Code.

Debtors have defaulted by failing to make payments due and owing under the Loan.

///
///
///
///
///
///
///
///

2

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 223**

As of December 4, 2025, the arrearage owed under the Loan is as follows:

| | |
|---|---|
| 1 Monthly Payment at $4,848.44 (April 1, 2025) | $4,848.44 |
| 3 Monthly Payments at $4,949.08 (May 1, 2025 – July 1, 2025) | $14.847.24 |
| 5 Monthly Payments at $4,978.21 (August 1, 2025 – December 1, 2025) | $24,891.05 |
| Escrow Shortage | $3,917.07 |
| Fees and Costs | $4,273.09 |
| Total | $52,776.89 |

A copy of the reinstatement quote is attached hereto as **Exhibit "4"** and incorporated herein by reference. An additional payment will come due on the 1ˢᵗ day of each month thereafter until the Loan is paid in full.

As of December 4, 2025, the unpaid principal balance of the Loan is $514,753.94 and the total amount owed under the Loan is approximately $565,243.06.

In accordance with Local Rule 4001(a)(2), Movant sent a Meet and Confer letter to the parties of interest herein in an attempt to communicate in good faith regarding resolution of the instant motion. To date, Movant has been unable to resolve this matter and as a result brings this motion. A copy of the Meet and Confer Letter is attached hereto as **Exhibit "5"** and incorporated herein by reference.

## II.    LEGAL ARGUMENT

A.    **MOVANT IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362(d)(2).**

Section 362(d)(2) provides, in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if —
> > > (A) the debtor does not have an equity in such property; and
> > > (B) such property is not necessary to an effective reorganization...

11 U.S.C. §362(d)(2). For purposes of Section 362(d)(2), "equity" is defined as the difference between the value of the property and *all encumbrances upon it.* Stewart v. Gurley, 745 F.2d 1194 (9th Cir. 1984) (emphasis added). Section 362(d)(2) reflects Congressional intent to allow creditors to

3

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 224

immediately proceed against the property where the debtor has no equity and it is unnecessary to the reorganization, *even where the debtor can provide adequate protection under Section 362(d)(1)*. In re San Clemente Estates, 5 B.R. 605, 610 (Bankr. S.D. Cal. 1980) (emphasis added).

Movant is informed and believes, based on the Debtors' sworn bankruptcy schedules, that the fair market value of the Property is approximately $600,000.00.[1] Copies of Debtors' Schedules "A" and "D" are collectively attached hereto as Exhibit "6" and incorporated herein by reference.

Taking into account all of the liens encumbering the Property and the reasonable costs associated with the sale of the Property, Movant maintains that Debtors' and/or the estate's equity in the Property is as follows:

| | |
|---|---|
| Fair Market Value: | $600,000.00 |
| Less Total Encumbrances: | $565,243.06 |
| Less Costs of Sale (10%): | $ 60,000.00 |
| Equity in the Property | ($ 25,243.06) |

As there is little to no equity in the Property for the benefit of the bankruptcy estate and the Debtors are unwilling and/or unable to maintain the ongoing obligations owed to Movant, and no reorganization is possible by virtue of the Chapter 7 liquidation, the Property is not necessary for an effective reorganization. Furthermore, Debtors have failed to meet Debtors' burden that the Property is necessary for an effective reorganization that is in prospect with a reasonable possibility of success. See 11 USC §362(g)(2); United Sav. Ass'n. v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 376 (1988). Therefore, Movant is entitled to relief from the automatic stay pursuant to 11 U.S.C. §362(d)(2).

B.  **MOVANT IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362(d)(1).**

Section 362(d)(1) provides, in pertinent part:

(d) On request of a party in interest and after notice and a hearing, the court shall

---

[1] Pursuant to Rules 201(b) and 201(c) of the Federal Rules of Evidence, which are made applicable to this proceeding by Rule 9017 of Federal Rules of Bankruptcy Procedure, Movant requests that the Court take judicial notice of the Debtors' sworn bankruptcy schedules filed in this case.

4

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 225

grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-

(1) *For cause,* including the lack of adequate protection of an interest in property of such party in interest....

11 U.S.C. §362(d)(1). (emphasis added). Cause includes a debtor's lack of equity in a property, a debtor's failure to make post-petition mortgage payments, and inadequate protection of a creditor's interest in the property. In re Ellis. 60 B.R. 432, 435 (9th Cir. BAP 1985). A court may grant relief from stay for cause when the debtor has not been diligent in carrying out the debtor's duties in the bankruptcy case, has failed to make required payments, or is using bankruptcy as a means to delay payment or foreclosure. In re Harlan, 783 F.2d 839 (9th Cir. BAP 1986); In re Ellis, 60 B.R. at 435.

Debtors have failed to make regular monthly payments due under the Note. As of December 4, 2025, the Debtors are contractually delinquent on payments, fees, and costs under the Note in the amount of $52,776.89 dating back to April 1, 2025 excluding the post-petition attorneys' fees and costs incurred in filing the instant Motion. Debtors' failure to maintain current on payments under the Note, as detailed herein, constitutes "cause" to terminate the automatic stay. Based upon the foregoing, Movant is entitled to relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1).

### III.   CONCLUSION

For all of the reasons discussed herein, Movant is entitled to relief from the automatic stay of 11 U.S.C. §362(a). Pursuant to Local Bankruptcy Rule 9014(h), a proposed order is attached hereto as Exhibit "7".

Pursuant to Local Rule 9014.2, the Secured Creditor consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

///

///

///

5

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z; AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 226**

WHEREFORE, Movant respectfully prays for an Order of this court:

1. Terminating the automatic stay of 11 U.S.C. §362(a) to allow Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property;

2. Waiving the 14-day stay prescribed by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure;

3. Waiving the requirements of Local Bankruptcy Rule 9021; and

4. Granting Movant such other and further relief as the court deems just and proper.

DATED this 5th day of December, 2025.

Respectfully submitted,

TIFFANY & BOSCO, P.A.

By:  /s/ Krista J. Nielson, Esq.
KRISTA J. NIELSON, ESQ.
Attorney for Secured Creditor
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135

6

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 227**

Case 25-15951-nmc   Doc 23   Entered 12/C5/25 14:51:35   Page 8 of 58

# EXHIBIT "1"

# EXHIBIT "1"

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 228

MIN: ███████████                                    Loan Number: ████████

## NOTE

March 18, 2024                        MARIETTA                    GEORGIA
[Issue Date]                            [City]                      [State]

1000 CATHEDRAL PL, DECATUR, GEORGIA 30034
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan in the amount of U.S. $518,500.00          (the "Principal") that I have received
from UNITED WHOLESALE MORTGAGE, LLC

(the "Lender").
I promise to pay the Principal, plus interest, to the order of the Lender. I will make all payments under this Note in
U.S. currency in the form of cash, check, money order, or other payment method accepted by Lender.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and
who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid Principal until the full amount of the Principal has been paid. I will pay
interest at a yearly rate of        9.250 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in
Section 6(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month. This amount is called my "Monthly
Payment."
I will make my Monthly Payment on the   1st   day of each month beginning on        May 1
2024.       . I will make these payments every month until I have paid all of the Principal and interest and any
other charges described below that I may owe under this Note. Each Monthly Payment will be applied as of its
scheduled due date and will be applied to interest before the Principal. If, on April 1, 2054
I still owe amounts under this Note, I will pay those amounts on that date, which is called the "Maturity Date."
I will make my Monthly Payments at PO Box 11733, Newark, New Jersey 07101

or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My Monthly Payment will be in the amount of U.S. $ 4,265.57          . This payment amount
does not include any property taxes, insurance, or other charges that I may be required to pay each month.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is
known as a "Prepayment." When I make a Prepayment, I will notify the Note Holder in writing that I am doing so.
I may not designate a payment as a Prepayment if I have not made all the Monthly Payments then due under this Note.

MULTISTATE FIXED RATE NOTE – Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  07/2021                          Page 1 of 4                        ████████

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 229

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my Monthly Payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If applicable law sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any Monthly Payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue Monthly Payment. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each Monthly Payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of unpaid Principal, all the interest that I owe on that amount, and other charges due under this Note (the "Default Balance"). That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

If I am in default and the Note Holder does not require me to pay the Default Balance immediately as described above, the Note Holder will still have the right to do so if I continue to be in default or if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay the Default Balance immediately as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees and costs.

### 7. GIVING OF NOTICES

(A) Notice to Borrower

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it, or by mailing it by first class mail, to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address. I will promptly notify the Note Holder of any change to my physical address and of any change to my mailing address. Unless applicable law requires otherwise, notice may instead be sent by e-mail or other electronic communication if agreed to by me and the Note Holder in writing and if I have provided the Note Holder with my current e-mail address or other electronic address. If I have agreed with the Note Holder that notice may be given by e-mail or other electronic communication, I will promptly notify the Note Holder of any changes to my e-mail address or other electronic address.



MULTISTATE FIXED RATE NOTE - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200   07/2021                                   Page 2 of 4

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 230**

(B)   Notice to Note Holder

Any notice that I must give to the Note Holder under this Note will be delivered by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid

10.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Mortgage Deed, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument also describes how and under what conditions I may be required to make immediate payment of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, Lender will not exercise this option if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender will give Borrower notice of acceleration. The notice will provide a period of not less than 30 days from the date the notice is given in accordance with Section 16 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to, or upon, the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower and will be entitled to collect all expenses incurred in pursuing such remedies, including, but not limited to: (a) reasonable attorneys' fees and costs; (b) property inspection and valuation fees; and (c) other fees incurred to protect Lender's Interest in the Property and/or rights under this Security Instrument.

MULTISTATE FIXED RATE NOTE - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200   07/2021

Page 3 of 4

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 231**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.



_____(Seal)        _____(Seal)
Dion A Lee            -Borrower        Carla C Williams        -Borrower



*(Sign Original Only)*

MULTISTATE FIXED RATE NOTE - Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200   3/2021                        Page 4 of 4



**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 232**





**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 233**

# EXHIBIT "2"

# EXHIBIT "2"

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 234**

2024023534 DEED BOOK 31340 PG 627
Filed and Recorded: 3/19/2024 10:54:24 AM
Recording Fee: S25.00
Intangible Tax: S1,555.50

Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia



After Recording Return To:
UNITED WHOLESALE MORTGAGE, LLC
585 SOUTH BOULEVARD E
PONTIAC, MI 48341
ATTN: POST CLOSING MANAGER

──────────────── (Space Above This Line For Recording Data) ────────────────

## SECURITY DEED

Date of Document: March 18, 2024

Name(s) of Signatories: Dion A Lee, Carla C Williams

Grantee(s) and Mailing Address: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC (MERS) P.O. Box 2026, Flint, MI 48501-2026

Map and Parcel Identification Information (if applicable):

Original loan amount (or amount of any outstanding principal and additional advance pursuant to a loan modification): $ 513,600.00

Maturity Date: April 1, 2054

Intangible Recording Tax Amount: $ 1,555.50

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3011 07/2021 (rev. 02/22)
Page 1 of 18





**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 235**

After Recording Return To:
UNITED WHOLESALE MORTGAGE, LLC
585 SOUTH BOULEVARD E
PONTIAC, MI 48341
ATTN: POST CLOSING MANAGER

———————————————— [Space Above This Line For Recording Data] ————————————————

 **SECURITY DEED**

Date of Document: March 18, 2024

Name(s) of Signatories:  Dion A Lee, Carla C Williams

Grantee(s) and Mailing Address: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC (MERS)
P.O. Box 2026, Flint, MI 48501-2026

Map and Parcel Identification Information (If applicable):

Original loan amount (or amount of any outstanding principal and additional advance pursuant to a loan modification): $ 518,500.00

Maturity Date:  April 1, 2054

Intangible Recording Tax Amount: $ 1,555.50

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3011  07/2021 (rev. 02/22)                    Page 1 of 18





**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 236**

(F) "Security Instrument" means this document, which is dated   March 18, 2024   , together with all Riders to this document.

**Additional Definitions**

(G) "Applicable Law" means all controlling applicable federal, state, and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(H) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association, or similar organization.

(I) "Default" means: (i) the failure to pay any Periodic Payment or any other amount secured by this Security Instrument on the date it is due; (ii) a breach of any representation, warranty, covenant, obligation, or agreement in this Security Instrument; (iii) any materially false, misleading, or inaccurate information or statement to Lender provided by Borrower or any persons or entities acting at Borrower's direction or with Borrower's knowledge or consent, or failure to provide Lender with material information in connection with the Loan, as described in Section 8; or (iv) any action or proceeding described in Section 12(e).

(J) "Electronic Fund Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone or other electronic device capable of communicating with such financial institution, wire transfers, and automated clearinghouse transfers.

(K) "Electronic Signature" means an "Electronic Signature" as defined in the UETA or E-SIGN, as applicable.

(L) "E-SIGN" means the Electronic Signatures in Global and National Commerce Act (15 U.S.C. § 7001 et seq.), as it may be amended from time to time, or any applicable additional or successor legislation that governs the same subject matter.

(M) "Escrow Items" means (i) taxes and assessments and other items that can attain priority over this Security Instrument as a lien or encumbrance on the Property; (ii) leasehold payments or ground rents on the Property, if any; (iii) premiums for any and all insurance required by Lender under Section 5; (iv) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 11; and (v) Community Association Dues, Fees, and Assessments if Lender requires that they be escrowed beginning at Loan closing or at any time during the Loan term.

(N) "Loan" means the debt obligation evidenced by the Note, plus interest, any prepayment charges, costs, expenses, and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(O) "Loan Servicer" means the entity that has the contractual right to receive Borrower's Periodic Payments and any other payments made by Borrower, and administers the Loan on behalf of Lender. Loan Servicer does not include a sub-servicer, which is an entity that may service the Loan on behalf of the Loan Servicer.

(P) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(Q) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or Default on, the Loan.

(R) "Partial Payment" means any payment by Borrower, other than a voluntary prepayment permitted under the Note, which is less than a full outstanding Periodic Payment.

(S) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3011   07/2021 (rev. 02/22)

Page 3 of 15



**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 237**

(T) "Property" means the property described below under the heading "TRANSFER OF RIGHTS IN THE PROPERTY."

(U) "Rents" means all amounts received by or due Borrower in connection with the lease, use, and/or occupancy of the Property by a party other than Borrower

(V) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they may be amended from time to time, or any additional or successor federal legislation or regulation that governs the same subject matter. When used in this Security Instrument, "RESPA" refers to all requirements and restrictions that would apply to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(W) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

(X) "UETA" means the Uniform Electronic Transactions Act, as enacted by the jurisdiction in which the Property is located, as it may be amended from time to time, or any applicable additional or successor legislation that governs the same subject matter.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions, and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

COUNTY                                    of    DEKALB                              :
     [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
See Attached

which currently has the address of  1000 CATHEDRAL PL
                                         [Street]
DECATUR                                  , Georgia   30034              ("Property Address");
     [City]                                          [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or subsequently erected on the property, including replacements and additions to the improvements on such property, all property rights, including, without limitation, all easements, appurtenances, royalties, mineral rights, oil or gas rights or profits, water rights, and fixtures now or subsequently a part of the property. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom,

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3011  07/2021 (rev. 02/22)
                              Page 4 of 18

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 238**

MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER REPRESENTS, WARRANTS, COVENANTS, AND AGREES that: (i) Borrower lawfully owns and possesses the Property conveyed in this Security Instrument in fee simple or lawfully has the right to use and occupy the Property under a leasehold estate; (ii) Borrower has the right to grant and convey the Property or Borrower's leasehold interest in the Property, and (iii) the Property is unencumbered, and not subject to any other ownership interest in the Property, except for encumbrances and ownership interests of record. Borrower warrants the title to the Property and covenants and agrees to defend the title to the Property against all claims and demands, subject to any encumbrances and ownership interests of record as of Loan closing.

THIS SECURITY INSTRUMENT combines uniform covenants for national use with limited variations and non-uniform covenants that reflect specific Georgia state requirements to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower will pay each Periodic Payment when due. Borrower will also pay any prepayment charges and late charges due under the Note, and any other amounts due under this Security Instrument. Payments due under the Note and this Security Instrument must be made in U.S. currency. If any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check, or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity; or (d) Electronic Fund Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 16. Lender may accept or return any Partial Payments in its sole discretion pursuant to Section 2.

Any offset or claim that Borrower may have now or in the future against Lender will not relieve Borrower from making the full amount of all payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Acceptance and Application of Payments or Proceeds.
(a) Acceptance and Application of Partial Payments. Lender may accept and either apply or hold in suspense Partial Payments in its sole discretion in accordance with this Section 2. Lender is not obligated to accept any Partial Payments or to apply any Partial Payments at the time such payments are accepted, and also is not obligated to pay interest on such unapplied funds. Lender may hold such unapplied funds until Borrower makes payment sufficient to cover a full Periodic Payment, at which time the amount of the full Periodic Payment will be applied to the Loan. If Borrower does not make such a payment within a reasonable period of time, Lender will either apply such funds in accordance with this Section 2 or return them to Borrower. If not applied earlier, Partial Payments will be credited against the total amount due under the Loan in calculating the amount due in connection with any foreclosure proceeding, payoff request, loan modification, or reinstatement. Lender may accept any payment insufficient to bring the Loan current without waiver of any rights under this Security Instrument or prejudice to its rights to refuse such payments in the future.

(b) Order of Application of Partial Payments and Periodic Payments. Except as otherwise described in this Section 2, if Lender applies a payment, such payment will be applied to each Periodic Payment in the order in which it became due, beginning with the oldest outstanding Periodic Payment, as follows: first to interest and then to

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3011   07/2021 (rev. 02/22)
Page 5 of 13

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 239**

principal due under the Note, and finally to Escrow Items. If all outstanding Periodic Payments then due are paid in full, any payment amounts remaining may be applied to late charges and to any amounts then due under this Security Instrument. If all sums then due under the Note and this Security Instrument are paid in full, any remaining payment amount may be applied, in Lender's sole discretion, to a future Periodic Payment or to reduce the principal balance of the Note.

If Lender receives a payment from Borrower in the amount of one or more Periodic Payments and the amount of any late charge due for a delinquent Periodic Payment, the payment may be applied to the delinquent payment and the late charge.

When applying payments, Lender will apply such payments in accordance with Applicable Law.

(c) Voluntary Prepayments. Voluntary prepayments will be applied as described in the Note.

(d) No Change to Payment Schedule. Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items.

(a) Escrow Requirement; Escrow Items. Borrower must pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum of money to provide for payment of amounts due for all Escrow Items (the "Funds"). The amount of the Funds required to be paid each month may change during the term of the Loan. Borrower must promptly furnish to Lender all notices or invoices of amounts to be paid under this Section 3.

(b) Payment of Funds; Waiver. Borrower must pay Lender the Funds for Escrow Items unless Lender waives this obligation in writing. Lender may waive this obligation for any Escrow Item at any time. In the event of such waiver, Borrower must pay directly, when and where payable, the amounts due for any Escrow Items subject to the waiver. If Lender has waived the requirement to pay Lender the Funds for any or all Escrow Items, Lender may require Borrower to provide proof of direct payment of those items within such time period as Lender may require. Borrower's obligation to make such timely payments and to provide proof of payment is deemed to be a covenant and agreement of Borrower under this Security Instrument. If Borrower is obligated to pay Escrow Items directly pursuant to a waiver, and Borrower fails to pay timely the amount due for an Escrow Item, Lender may exercise its rights under Section 9 to pay such amount and Borrower will be obligated to repay to Lender any such amount in accordance with Section 9.

Lender may withdraw the waiver as to any or all Escrow Items at any time by giving a notice in accordance with Section 16; upon such withdrawal, Borrower must pay to Lender all Funds for such Escrow Items, and in such amounts, that are then required under this Section 3.

(c) Amount of Funds; Application of Funds. Lender may, at any time, collect and hold Funds in an amount up to, but not in excess of, the maximum amount a lender can require under RESPA. Lender will estimate the amount of Funds due in accordance with Applicable Law.

The Funds will be held in an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender will apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender may not charge Borrower for: (i) holding and applying the Funds; (ii) annually analyzing the escrow account; or (iii) verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless Lender and Borrower agree in writing or Applicable Law requires interest to be paid on the Funds, Lender will not be required to pay Borrower any interest or earnings on the Funds. Lender will give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

(d) Surplus; Shortage and Deficiency of Funds. In accordance with RESPA, if there is a surplus of Funds held in escrow, Lender will account to Borrower for such surplus. If Borrower's Periodic Payment is delinquent by more than 30 days, Lender may retain the surplus in the escrow account for the payment of the Escrow Items. If there is a shortage or deficiency of Funds held in escrow, Lender will notify Borrower and Borrower will pay to Lender the amount necessary to make up the shortage or deficiency in accordance with RESPA.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3011  07/2021 (rev. 02/22)
Page 6 of 18

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 240**

Upon payment in full of all sums secured by this Security Instrument, Lender will promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower must pay (a) all taxes, assessments, charges, fines, and impositions attributable to the Property which have priority or may attain priority over this Security Instrument, (b) leasehold payments or ground rents on the Property, if any, and (c) Community Association Dues, Fees, and Assessments, if any. If any of these items are Escrow Items, Borrower will pay them in the manner provided in Section 3.

Borrower must promptly discharge any lien that has priority or may attain priority over this Security Instrument unless Borrower: (aa) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing under such agreement; (bb) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which Lender determines, in its sole discretion, operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (cc) secures from the holder of the lien an agreement satisfactory to Lender that subordinates the lien to this Security Instrument (collectively, the "Required Actions"). If Lender determines that any part of the Property is subject to a lien that has priority or may attain priority over this Security Instrument and Borrower has not taken any of the Required Actions in regard to such lien, Lender may give Borrower a notice identifying the lien. Within 10 days after the date on which that notice is given, Borrower must satisfy the lien or take one or more of the Required Actions.

5.   Property Insurance.

(a)   Insurance Requirement; Coverages. Borrower must keep the improvements now existing or subsequently erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes, winds, and floods, for which Lender requires insurance. Borrower must maintain the types of insurance Lender requires in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan, and may exceed any minimum coverage required by Applicable Law. Borrower may choose the insurance carrier providing the insurance, subject to Lender's right to disapprove Borrower's choice, which right will not be exercised unreasonably.

(b)   Failure to Maintain Insurance. If Lender has a reasonable basis to believe that Borrower has failed to maintain any of the required insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and at Borrower's expense. Unless required by Applicable Law, Lender is under no obligation to advance premiums for, or to seek to reinstate, any prior lapsed coverage obtained by Borrower. Lender is under no obligation to purchase any particular type or amount of coverage and may select the provider of such insurance in its sole discretion. Before purchasing such coverage, Lender will notify Borrower if required to do so under Applicable Law. Any such coverage will insure Lender, but might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect, but not exceeding the coverage required under Section 5(a). Borrower acknowledges that the cost of the insurance coverage so obtained may significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender for costs associated with reinstating Borrower's insurance policy or with placing new insurance under this Section 5 will become additional debt of Borrower secured by this Security Instrument. These amounts will bear interest at the Note rate from the date of disbursement and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

(c)   Insurance Policies. All insurance policies required by Lender and renewals of such policies: (i) will be subject to Lender's right to disapprove such policies; (ii) must include a standard mortgage clause; and (iii) must name Lender as mortgagee and/or as an additional loss payee. Lender will have the right to hold the policies and renewal certificates. If Lender requires, Borrower will promptly give to Lender proof of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy must include a standard mortgage clause and must name Lender as mortgagee and/or as an additional loss payee.

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3011   07/2021 (rev. 02/22)
Page 7 of 18

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 241**

(d) Proof of Loss; Application of Proceeds. In the event of loss, Borrower must give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Any insurance proceeds, whether or not the underlying insurance was required by Lender, will be applied to restoration or repair of the Property, if Lender deems the restoration or repair to be economically feasible and determines that Lender's security will not be lessened by such restoration or repair.

If the Property is to be repaired or restored, Lender will disburse from the insurance proceeds any initial amounts that are necessary to begin the repair or restoration, subject to any restrictions applicable to Lender. During the subsequent repair and restoration period, Lender will have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction (which may include satisfying Lender's minimum eligibility requirements for persons repairing the Property, including, but not limited to, licensing, bond, and insurance requirements) provided that such inspection must be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. Lender will not be required to pay Borrower any interest or earnings on such insurance proceeds unless Lender and Borrower agree in writing or Applicable Law requires otherwise. Fees for public adjusters, or other third parties, retained by Borrower will not be paid out of the insurance proceeds and will be the sole obligation of Borrower.

If Lender deems the restoration or repair not to be economically feasible or Lender's security would be lessened by such restoration or repair, the insurance proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds will be applied in the order that Partial Payments are applied in Section 2(b).

(e) Insurance Settlements; Assignment of Proceeds. If Borrower abandons the Property, Lender may file, negotiate, and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 26 or otherwise, Borrower is unconditionally assigning to Lender (i) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note and this Security Instrument, and (ii) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, to the extent that such rights are applicable to the coverage of the Property. If Lender files, negotiates, or settles a claim, Borrower agrees that any insurance proceeds may be made payable directly to Lender without the need to include Borrower as an additional loss payee. Lender may use the insurance proceeds either to repair or restore the Property (as provided in Section 5(d)) or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    Occupancy. Borrower must occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and must continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent will not be unreasonably withheld, or unless extenuating circumstances exist that are beyond Borrower's control.

7.    Preservation, Maintenance, and Protection of the Property; Inspections. Borrower will not destroy, damage, or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower must maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless Lender determines pursuant to Section 5 that repair or restoration is not economically feasible, Borrower will promptly repair the Property if damaged to avoid further deterioration or damage.

If insurance or condemnation proceeds are paid to Lender in connection with damage to, or the taking of, the Property, Borrower will be responsible for repairing or restoring the Property only if Lender has released proceeds

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3011  07/2021 (rev. 02/22)                                    Page 9 of 19

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 242**

for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person repairing or restoring the Property, or payable jointly to both. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower remains obligated to complete such repair or restoration.

Lender may make reasonable entries upon and inspections of the Property. If Lender has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender will give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower will be in Default if, during the Loan application process, Borrower or any persons or entities acting at Borrower's direction or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan, including, but not limited to, overstating Borrower's income or assets, understating or failing to provide documentation of Borrower's debt obligations and liabilities, and misrepresenting Borrower's occupancy or intended occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**

(a) Protection of Lender's Interest. If: (i) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (ii) there is a legal proceeding or government order that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien that has priority or may attain priority over this Security Instrument, or to enforce laws or regulations); or (iii) Lender reasonably believes that Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and/or rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions may include, but are not limited to: (I) paying any sums secured by a lien that has priority or may attain priority over this Security Instrument; (II) appearing in court; and (III) paying: (A) reasonable attorneys' fees and costs; (B) property inspection and valuation fees; and (C) other fees incurred for the purpose of protecting Lender's interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, exterior and interior inspections of the Property, entering the Property to make repairs, changing locks, replacing or boarding up doors and windows, draining water from pipes, eliminating building or other code violations or dangerous conditions, and having utilities turned on or off. Although Lender may take action under this Section 9, Lender is not required to do so and is not under any duty or obligation to do so. Lender will not be liable for not taking any or all actions authorized under this Section 9.

(b) Avoiding Foreclosure; Mitigating Losses. If Borrower is in Default, Lender may work with Borrower to avoid foreclosure and/or mitigate Lender's potential losses, but is not obligated to do so unless required by Applicable Law. Lender may take reasonable actions to evaluate Borrower for available alternatives to foreclosure, including, but not limited to, obtaining credit reports, title reports, title insurance, property valuations, subordination agreements, and third-party approvals. Borrower authorizes and consents to these actions. Any costs associated with such loss mitigation activities may be paid by Lender and recovered from Borrower as described below in Section 9(c), unless prohibited by Applicable Law.

(c) Additional Amounts Secured. Any amounts disbursed by Lender under this Section 9 will become additional debt of Borrower secured by this Security Instrument. These amounts may bear interest at the Note rate from the date of disbursement and will be payable, with such interest, upon notice from Lender to Borrower requesting payment.

(d) Leasehold Terms. If this Security Instrument is on a leasehold, Borrower will comply with all the provisions of the lease. Borrower will not surrender the leasehold estate and interests conveyed, or terminate or cancel the ground lease. Borrower will not, without the express written consent of Lender, alter or amend the ground lease.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3011  07/2021 (rev. 02/22)

Page 9 of 19



**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 243**

If Borrower acquires fee title to the Property, the leasehold and the fee title will not merge unless Lender agrees to the merger in writing.

10. Assignment of Rents.

(a) Assignment of Rents. If the Property is leased to, used by, or occupied by a third party ("Tenant"), Borrower is unconditionally assigning and transferring to Lender any Rents, regardless of to whom the Rents are payable. Borrower authorizes Lender to collect the Rents, and agrees that each Tenant will pay the Rents to Lender. However, Borrower will receive the Rents until (i) Lender has given notice of Default pursuant to Section 26, and (ii) Lender has given notice to the Tenant that the Rents are to be paid to Lender. This Section 10 constitutes an absolute assignment and not an assignment for additional security only.

(b) Notice of Default. If Lender gives notice of Default to Borrower: (i) all Rents received by Borrower must be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender will be entitled to collect and receive all of the Rents; (iii) Borrower agrees to instruct each Tenant that Tenant is to pay all Rents due and unpaid to Lender upon Lender's written demand to the Tenant; (iv) Borrower will ensure that each Tenant pays all Rents due to Lender and will take whatever action is necessary to collect such Rents if not paid to Lender; (v) unless Applicable Law provides otherwise, all Rents collected by Lender will be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, reasonable attorneys' fees and costs, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments, and other charges on the Property, and then to any other sums secured by this Security Instrument; (vi) Lender, or any judicially appointed receiver, will be liable to account for only those Rents actually received; and (vii) Lender will be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

(c) Funds Paid by Lender. If the Rents are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents, any funds paid by Lender for such purposes will become indebtedness of Borrower to Lender secured by this Security Instrument pursuant to Section 9.

(d) Limitation on Collection of Rents. Borrower may not collect any of the Rents more than one month in advance of the time when the Rents become due, except for security or similar deposits.

(e) No Other Assignment of Rents. Borrower represents, warrants, covenants, and agrees that Borrower has not signed any prior assignment of the Rents, will not make any further assignment of the Rents, and has not performed, and will not perform, any act that could prevent Lender from exercising its rights under this Security Instrument.

(f) Control and Maintenance of the Property. Unless required by Applicable Law, Lender, or a receiver appointed under Applicable Law, is not obligated to enter upon, take control of, or maintain the Property before or after giving notice of Default to Borrower. However, Lender, or a receiver appointed under Applicable Law, may do so at any time when Borrower is in Default, subject to Applicable Law.

(g) Additional Provisions. Any application of the Rents will not cure or waive any Default or invalidate any other right or remedy of Lender. This Section 10 does not relieve Borrower of Borrower's obligations under Section 6.

This Section 10 will terminate when all the sums secured by this Security Instrument are paid in full.

11. Mortgage Insurance.

(a) Payment of Premiums; Substitution of Policy; Loss Reserve; Protection of Lender. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower will pay the premiums required to maintain the Mortgage Insurance in effect. If Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, and (i) the Mortgage Insurance coverage required by Lender ceases for any reason to be available from the mortgage insurer that previously provided such insurance, or (ii) Lender determines in its sole discretion that such mortgage insurer is no longer eligible to provide the Mortgage Insurance coverage required by Lender, Borrower will pay the premiums required to obtain coverage substantially equivalent to the Mortgage

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3011   07/2021 (rev. 02/22)
Page 10 of 13

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 244**

Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Borrower will continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use, and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve will be non-refundable, even when the Loan is paid in full, and Lender will not be required to pay Borrower any interest or earnings on such loss reserve.

Lender will no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower will pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 11 affects Borrower's obligation to pay interest at the Note rate.

(b) Mortgage Insurance Agreements. Mortgage Insurance reimburses Lender for certain losses Lender may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy or coverage.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. Any such agreements will not: (i) affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan; (ii) increase the amount Borrower will owe for Mortgage Insurance; (iii) entitle Borrower to any refund; or (iv) affect the rights Borrower has, if any, with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 (12 U.S.C. § 4901 et seq.), as it may be amended from time to time, or any additional or successor federal legislation or regulation that governs the same subject matter ("HPA"). These rights under the HPA may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

12. Assignment and Application of Miscellaneous Proceeds; Forfeiture.

(a) Assignment of Miscellaneous Proceeds. Borrower is unconditionally assigning the right to receive all Miscellaneous Proceeds to Lender and agrees that such amounts will be paid to Lender.

(b) Application of Miscellaneous Proceeds upon Damage to Property. If the Property is damaged, any Miscellaneous Proceeds will be applied to restoration or repair of the Property, if Lender deems the restoration or repair to be economically feasible and Lender's security will not be lessened by such restoration or repair. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction (which may include satisfying Lender's minimum eligibility requirements for persons repairing the Property, including, but not limited to, licensing, bond, and insurance requirements) provided that such inspection must be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed, depending on the size of the repair or restoration, the terms of the repair agreement, and whether Borrower is in Default on the Loan. Lender may make such disbursements directly to Borrower, to the person

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3011 07/2021 (rev. 02/22)

Page 11 of 19



**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 245**

repairing or restoring the Property, or payable jointly to both. Unless Lender and Borrower agree in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If Lender deems the restoration or repair not to be economically feasible or Lender's security would be lessened by such restoration or repair, the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds will be applied in the order that Partial Payments are applied in Section 2(b).

(c) Application of Miscellaneous Proceeds upon Condemnation, Destruction, or Loss in Value of the Property. In the event of a total taking, destruction, or loss in value of the Property, all of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property (each, a "Partial Devaluation") where the fair market value of the Property immediately before the Partial Devaluation is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the Partial Devaluation, a percentage of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument unless Borrower and Lender otherwise agree in writing. The amount of the Miscellaneous Proceeds that will be so applied is determined by multiplying the total amount of the Miscellaneous Proceeds by a percentage calculated by taking (i) the total amount of the sums secured immediately before the Partial Devaluation, and dividing it by (ii) the fair market value of the Property immediately before the Partial Devaluation. Any balance of the Miscellaneous Proceeds will be paid to Borrower.

In the event of a Partial Devaluation where the fair market value of the Property immediately before the Partial Devaluation is less than the amount of the sums secured immediately before the Partial Devaluation, all of the Miscellaneous Proceeds will be applied to the sums secured by this Security Instrument, whether or not the sums are then due, unless Borrower and Lender otherwise agree in writing.

(d) Settlement of Claims. Lender is authorized to collect and apply the Miscellaneous Proceeds either to the sums secured by this Security Instrument, whether or not then due, or to restoration or repair of the Property, if Borrower (i) abandons the Property, or (ii) fails to respond to Lender within 30 days after the date Lender notifies Borrower that the Opposing Party (as defined in the next sentence) offers to settle a claim for damages. "Opposing Party" means the third party that owes Borrower the Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to the Miscellaneous Proceeds.

(e) Proceeding Affecting Lender's Interest in the Property. Borrower will be in Default if any action or proceeding begins, whether civil or criminal, that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a Default and, if acceleration has occurred, reinstate as provided in Section 20, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower is unconditionally assigning to Lender the proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property, which proceeds will be paid to Lender. All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order that Partial Payments are applied in Section 2(b).

13. Borrower Not Released; Forbearance by Lender Not a Waiver. Borrower or any Successor in Interest of Borrower will not be released from liability under this Security Instrument if Lender extends the time for payment or modifies the amortization of the sums secured by this Security Instrument. Lender will not be required to commence proceedings against any Successor in Interest of Borrower, or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument, by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities, or Successors

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3011   07/2021 (rev. 02/22)

Page 12 of 12

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 246**

in Interest of Borrower or in amounts less than the amount then due, will not be a waiver of, or preclude the exercise of, any right or remedy by Lender.

14. Joint and Several Liability; Signatories; Successors and Assigns Bound. Borrower's obligations and liability under this Security Instrument will be joint and several. However, any Borrower who signs this Security Instrument but does not sign the Note: (a) signs this Security Instrument to mortgage, grant, and convey such Borrower's interest in the Property under the terms of this Security Instrument; (b) signs this Security Instrument to waive any applicable inchoate rights or exemptions; (c) signs this Security Instrument to assign any Miscellaneous Proceeds, Rents, or other earnings from the Property to Lender; (d) is not personally obligated to pay the sums due under the Note or this Security Instrument; and (e) agrees that Lender and any other Borrower can agree to extend, modify, forbear, or make any accommodations with regard to the terms of the Note or this Security Instrument without such Borrower's consent and without affecting such Borrower's obligations under this Security Instrument.

Subject to the provisions of Section 19, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, will obtain all of Borrower's rights, obligations, and benefits under this Security Instrument. Borrower will not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.

15. Loan Charges.

(a) Tax and Flood Determination Fees. Lender may require Borrower to pay (i) a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan, and (ii) either (A) a one-time charge for flood zone determination, certification, and tracking services, or (B) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur that reasonably might affect such determination or certification. Borrower will also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency, or any successor agency, at any time during the Loan term, in connection with any flood zone determinations.

(b) Default Charges. If permitted under Applicable Law, Lender may charge Borrower fees for services performed in connection with Borrower's Default to protect Lender's interest in the Property and rights under this Security Instrument, including: (i) reasonable attorneys' fees and costs; (ii) property inspection, valuation, mediation, and loss mitigation fees; and (iii) other related fees.

(c) Permissibility of Fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower should not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

(d) Savings Clause. If Applicable Law sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable Law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

16. Notices; Borrower's Physical Address. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.

(a) Notices to Borrower. Unless Applicable Law requires a different method, any written notice to Borrower in connection with this Security Instrument will be deemed to have been given to Borrower when (i) mailed by first class mail, or (ii) actually delivered to Borrower's Notice Address (as defined in Section 16(c) below) if sent by means other than first class mail or Electronic Communication (as defined in Section 16(b) below). Notice to any one Borrower will constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. If any notice

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3011    07/2021 (rev. 02/22)
Page 13 of 18



**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 247**

to Borrower required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

(b) Electronic Notice to Borrower. Unless another delivery method is required by Applicable Law, Lender may provide notice to Borrower by e-mail or other electronic communication ("Electronic Communication") if: (i) agreed to by Lender and Borrower in writing; (ii) Borrower has provided Lender with Borrower's e-mail or other electronic address ("Electronic Address"); (iii) Lender provides Borrower with the option to receive notices by first class mail or by other non-Electronic Communication instead of by Electronic Communication; and (iv) Lender otherwise complies with Applicable Law. Any notice to Borrower sent by Electronic Communication in connection with this Security Instrument will be deemed to have been given to Borrower when sent unless Lender becomes aware that such notice is not delivered. If Lender becomes aware that any notice sent by Electronic Communication is not delivered, Lender will resend such communication to Borrower by first class mail or by other non-Electronic Communication. Borrower may withdraw the agreement to receive Electronic Communications from Lender at any time by providing written notice to Lender of Borrower's withdrawal of such agreement.

(c) Borrower's Notice Address. The address to which Lender will send Borrower notice ("Notice Address") will be the Property Address unless Borrower has designated a different address by written notice to Lender. If Lender and Borrower have agreed that notice may be given by Electronic Communication, then Borrower may designate an Electronic Address as Notice Address. Borrower will promptly notify Lender of Borrower's change of Notice Address, including any changes to Borrower's Electronic Address if designated as Notice Address. If Lender specifies a procedure for reporting Borrower's change of Notice Address, then Borrower will report a change of Notice Address only through that specified procedure.

(d) Notices to Lender. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated in this Security Instrument unless Lender has designated another address (including an Electronic Address) by notice to Borrower. Any notice in connection with this Security Instrument will be deemed to have been given to Lender only when actually received by Lender at Lender's designated address (which may include an Electronic Address). If any notice to Lender required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

(e) Borrower's Physical Address. In addition to the designated Notice Address, Borrower will provide Lender with the address where Borrower physically resides, if different from the Property Address, and notify Lender whenever this address changes.

17. Governing Law; Severability; Rules of Construction. This Security Instrument is governed by federal law and the law of the State of Georgia. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. If any provision of this Security Instrument or the Note conflicts with Applicable Law (i) such conflict will not affect other provisions of this Security Instrument or the Note that can be given effect without the conflicting provision, and (ii) such conflicting provision, to the extent possible, will be considered modified to comply with Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence should not be construed as a prohibition against agreement by contract. Any action required under this Security Instrument to be made in accordance with Applicable Law is to be made in accordance with the Applicable Law in effect at the time the action is undertaken.

As used in this Security Instrument: (a) words in the singular will mean and include the plural and vice versa; (b) the word "may" gives sole discretion without any obligation to take any action; (c) any reference to "Section" in this document refers to Sections contained in this Security Instrument unless otherwise noted; and (d) the headings and captions are inserted for convenience of reference and do not define, limit, or describe the scope or intent of this Security Instrument or any particular Section, paragraph, or provision.

18. Borrower's Copy. One Borrower will be given one copy of the Note and of this Security Instrument.

19. Transfer of the Property or a Beneficial Interest in Borrower. For purposes of this Section 19 only, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3011   07/2021 (rev. 02/22)

Page 14 of 19

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 248**

beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower to a purchaser at a future date.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, Lender will not exercise this option if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender will give Borrower notice of acceleration. The notice will provide a period of not less than 30 days from the date the notice is given in accordance with Section 16 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to, or upon, the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower and will be entitled to collect all expenses incurred in pursuing such remedies, including, but not limited to: (a) reasonable attorneys' fees and costs; (b) property inspection and valuation fees; and (c) other fees incurred to protect Lender's Interest in the Property and/or rights under this Security Instrument.

20. Borrower's Right to Reinstate the Loan after Acceleration. If Borrower meets certain conditions, Borrower will have the right to reinstate the Loan and have enforcement of this Security Instrument discontinued at any time up to the later of (a) five days before any foreclosure sale of the Property, or (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate. This right to reinstate will not apply in the case of acceleration under Section 19.

To reinstate the Loan, Borrower must satisfy all of the following conditions: (aa) pay Lender all sums that then would be due under this Security Instrument and the Note as if no acceleration had occurred; (bb) cure any Default of any other covenants or agreements under this Security Instrument or the Note; (cc) pay all expenses incurred in enforcing this Security Instrument or the Note, including, but not limited to: (i) reasonable attorneys' fees and costs; (ii) property inspection and valuation fees; and (iii) other fees incurred to protect Lender's interest in the Property and/or rights under this Security Instrument or the Note; and (dd) take such action as Lender may reasonably require to assure that Lender's interest in the Property and/or rights under this Security Instrument or the Note, and Borrower's obligation to pay the sums secured by this Security Instrument or the Note, will continue unchanged.

Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (aaa) cash, (bbb) money order, (ccc) certified check, bank check, treasurer's check, or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a U.S. federal agency, instrumentality, or entity; or (ddd) Electronic Fund Transfer. Upon Borrower's reinstatement of the Loan, this Security Instrument and obligations secured by this Security Instrument will remain fully effective as if no acceleration had occurred.

21. Sale of Note. The Note or a partial Interest in the Note, together with this Security Instrument, may be sold or otherwise transferred one or more times. Upon such a sale or other transfer, all of Lender's rights and obligations under this Security Instrument will convey to Lender's successors and assigns.

22. Loan Servicer. Lender may take any action permitted under this Security Instrument through the Loan Servicer or another authorized representative, such as a sub-servicer. Borrower understands that the Loan Servicer or other authorized representative of Lender has the right and authority to take any such action.

The Loan Servicer may change one or more times during the term of the Note. The Loan Servicer may or may not be the holder of the Note. The Loan Servicer has the right and authority to: (a) collect Periodic Payments and any other amounts due under the Note and this Security Instrument; (b) perform any other mortgage loan servicing obligations; and (c) exercise any rights under the Note, this Security Instrument, and Applicable Law on behalf of Lender. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made, and any other information RESPA requires in connection with a notice of transfer of servicing.

23. Notice of Grievance. Until Borrower or Lender has notified the other party (in accordance with Section 16) of an alleged breach and afforded the other party a reasonable period after the giving of such notice to take

GEORGIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3011  07/2021 (rev 02/22)
Page 15 of 18



VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 249

corrective action  neither Borrower nor Lender may commence, join, or be joined to any judicial action (either as an individual litigant or a member of a class) that (a) arises from the other party's actions pursuant to this Security Instrument or the Note, or (b) alleges that the other party has breached any provision of this Security Instrument or the Note. If Applicable Law provides a time period that must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section 23. The notice of Default given to Borrower pursuant to Section 26(a) and the notice of acceleration given to Borrower pursuant to Section 19 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 23.

24. Hazardous Substances.

(a) Definitions. As used in this Section 24: (i) "Environmental Law" means any Applicable Laws where the Property is located that relate to health, safety, or environmental protection; (ii) "Hazardous Substances" include (A) those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law, and (B) the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, corrosive materials or agents, and radioactive materials; (iii) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (iv) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

(b) Restrictions on Use of Hazardous Substances. Borrower will not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower will not do, nor allow anyone else to do, anything affecting the Property that: (i) violates Environmental Law; (ii) creates an Environmental Condition; or (iii) due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects or could adversely affect the value of the Property. The preceding two sentences will not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

(c) Notices; Remedial Actions. Borrower will promptly give Lender written notice of: (i) any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (ii) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release, or threat of release of any Hazardous Substance; and (iii) any condition caused by the presence, use, or release of a Hazardous Substance that adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower will promptly take all necessary remedial actions in accordance with Environmental Law. Nothing in this Security Instrument will create any obligation on Lender for an Environmental Cleanup.

25. Electronic Note Signed with Borrower's Electronic Signature. If the Note evidencing the debt for this Loan is electronic, Borrower acknowledges and represents to Lender that Borrower: (a) expressly consented and intended to sign the electronic Note using an Electronic Signature adopted by Borrower ("Borrower's Electronic Signature") instead of signing a paper Note with Borrower's written pen and ink signature; (b) did not withdraw Borrower's express consent to sign the electronic Note using Borrower's Electronic Signature; (c) understood that by signing the electronic Note using Borrower's Electronic Signature, Borrower promised to pay the debt evidenced by the electronic Note in accordance with its terms; and (d) signed the electronic Note with Borrower's Electronic Signature with the intent and understanding that by doing so, Borrower promised to pay the debt evidenced by the electronic Note in accordance with its terms.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

26. Acceleration; Remedies.

(a) Notice of Default. Lender will give a notice of Default to Borrower prior to acceleration following Borrower's Default, except that such notice of Default will not be sent when Lender exercises its right under Section

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
Form 3011  07/202*  (rev. 02/22)
Page 15 of 18

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 250

## EXHIBIT "A"
### Legal Description

All that tract or parcel of land lying and being in Land Lot 69 of the 15th District of DeKalb County, Georgia, being a tract of land of 4.07 acres, and being more particularly described as follows:

TO FIND THE TRUE POINT OF BEGINNING, begin at the intersection of Land Lots 68, 69, 92 and 93, that is, at the northeast corner of Land Lot 69; thence running South 01 degrees 04 minutes 33 seconds East along the easterly land lot line of Land Lot 69 599.97 feet to a point on said easterly land lot line and THE TRUE POINT OF BEGINNING; from the true point of beginning as thus established, continue thence South 01 degrees 12 minutes 26 second East along the easterly land lot line of Land Lot 69 and along the westerly side of property now or formerly owned by the Chapel Hill Harvester Church 359.57 feet to a point; thence running North 89 degrees 24 minutes 19 seconds West along the northerly line of property now or formerly owned by the Chapel Hill Harvester Church 331.48 feet to a point; thence running North 00 degrees 35 minutes 41 seconds East 99.51 feet to a point; thence running North 89 degrees 24 minutes 19 seconds West 172.24 feet to a point at the southeast corner of Lot 45 of Creekwood Hills, Unit Three, Phase Two, as per the recorded plat at Plat Book 56, page 59; thence running North (HI degrees 56 minutes 23 seconds West along the easterly side of Lots 45, 46, and 47 of said subdivision, unit and phase, 400.70 feet to a point; thence running south 60 degrees 59 minutes 00 seconds East 354.57 feet to a point in a pond; thence running North 82 degrees 15 minutes 10 seconds East 193.59 feet to a point on the easterly land lot line of Land Lot 69, this being the TRUE POINT OF BEGINNING; as shown on the survey of Earl Paull by M.D.

Patrick Engineering, Inc. Thomas McKay Britt, R.L.S. No. 2164, dated October 24, 1997.

Also conveyed herewith is grantor's right, title and interest in and to the various easements for ingress and egress that benefit the above- described property including the easement across the property of Caroline Williams as described at Deed Book 5955, page 290, and the easement over, across and through the private drive now called Cathedral Place, formerly called Checherry Road, on the property of Chapel Hill Manester Church. Inc.

Also conveyed herewith is grantor's right, title and interest in and to that Easement Agreement by and between Wells Fargo Bank, NA, successor in interest to Wachovia Bank, NA and The Greater Travelers Rest Baptist Church, Inc, dated June 12, 2012, filed August 9, 2012, recorded in Deed book 23192, Page 80, Dekalb County, Georgia Records.

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 251**

# EXHIBIT "3"

# EXHIBIT "3"

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 252**





## ASSIGNMENT OF SECURITY DEED



 



**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 253**

# EXHIBIT "5"

# EXHIBIT "5"

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 254**

**TIFFANY & BOSCO**
P.A.

Krista J. Nielson, Esq.
Attorney at Law
702-258-8200
mbk@tblaw.com

November 11, 2025

Via Regular U.S. Mail:
Dion Andre Lee
1000 Cathedral Pl
Decatur, GA 30034

Via E-Mail:
Robert E. Atkinson:  Robert@ch7.vegas

Carla Carmen Williams
324 Dockside Ct
Las Vegas, NV 89145

RE:    Intent to File Motion for Relief from Automatic Stay Property
Address:  1000 Cathedral Pl, Decatur, GA 30034
Our File No. 25-74272
BK Case No: 25-15951-nmc

Dear Dion Andre Lee and Carla Carmen Williams:

The purpose of this letter is to provide you with written notice pursuant to Bankruptcy LR 4001(a)(2). This communication is required pursuant to the above-mentioned local rule by the U.S. Bankruptcy Court of Nevada and therefore, is in no way a violation of the automatic stay.

This letter is to advise you that our office has been retained by NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for Athene Annuity and Life Company, beneficiary of the Deed of Trust, which holds a lien on the subject property.

The following is a breakdown of the amount due:

| | |
|---|---|
| 1 Monthly Payment at $4,848.44 (April 1, 2025) | $4,848.44 |
| 3 Monthly Payments at $4,949.08 (May 1, 2025 - July 1, 2025) | $14,847.24 |
| 4 Monthly Payments at $4,978.21 (August 1, 2025 - November 1, 2025) | $19,912.84 |
| Escrow Shortage | $4,629.71 |
| Fees and Costs | $4,303.09 |
| Total | $48,541.32 |

Please contact our office within five (5) business days from the date of this notice, should you be able to cure the default identified above. Should our office not receive a response from you on or before November 18, 2025, our office may immediately proceed with a Motion for Relief. Of course, once a Motion is filed, our office may still be willing to attempt an amicable resolution of this matter in order to avoid a hearing.

Please contact our office if you have any questions.

Very truly yours,

S/ Krista J. Nielson, Esq.
Krista J. Nielson, Esq.

KJN/mbenson

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 255**

# EXHIBIT "6"

# EXHIBIT "6"

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 256**

Case 25-15951-nmc   Doc 23   Entered 12/05/25 13:05:35   Page 41 of 58

Fill in this information to identify your case and this filing:

Debtor 1   Dion A Lee

Debtor 2   Carla C Williams

United States Bankruptcy Court for the: _____ District of __Nevada__

Case number   25-15951-nmc

☑ Check if this is an amended filing

Official Form 106A/B

## Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:   Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
☑ Yes. Where is the property?

1.1.   1000 Cathedral Pl

Decatur   GA   30034

Dekalb County

What is the property? Check all that apply.
☑ Single-family home

Current value of the entire property? $600,000.00
Current value of the portion you own? $84,000.00

Who has an interest in the property?
☑ Debtor 1 and Debtor 2 only

Describe the nature of your ownership interest: Joint Ownership

Official Form 106A/B       Schedule A/B: Property       page 1

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 257**

Case 25-15951-nmc    Doc 28    Entered 12/05/25 14:51:35    Page 42 of 58

Debtor 1    Dion A Lee

Case number (if known) 25-15951-nmc

**What is the property? Check all that apply.**

1.3 _____
Street address, if available, or other description

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

_____

City _____ State ___ ZIP Code

**Who has an interest in the property? Check one.**

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

County _____

**Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.**

Current value of the entire property?    Current value of the portion you own?

$ _____    $ _____

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number: _____

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here. → $ 84,000.00

**Part 2:    Describe Your Vehicles**

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on Schedule G: Executory Contracts and Unexpired Leases.

3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

☐ No
☐ Yes

3.1    Make: _____
Model: _____
Year: _____
Approximate mileage: _____
Other information:
_____

**Who has an interest in the property? Check one.**

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

**Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.**

Current value of the entire property?    Current value of the portion you own?

$ _____    $ _____

If you own or have more than one, describe here:

3.2    Make: _____
Model: _____
Year: _____
Approximate mileage: _____
Other information:
_____

**Who has an interest in the property? Check one.**

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

**Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.**

Current value of the entire property?    Current value of the portion you own?

$ _____    $ _____

Official Form 106A/B    Schedule A/B: Property    page 2

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 258**

Case 25-15951-nmc   Doc 28   Entered 12/05/25 13:51:35   Page 43 of 58

Debtor 1   Dion A Lee
            First Name   Middle Name   Last Name

Case number (if known) 25-15951-nmc

3.3. Make: _____
Model: _____
Year: _____
Approximate mileage: _____
Other information:

Who has an interest in the property? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.

Current value of the entire property?   Current value of the portion you own?
$_____   $_____

3.4. Make: _____
Model: _____
Year: _____
Approximate mileage: _____
Other information:

Who has an interest in the property? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.

Current value of the entire property?   Current value of the portion you own?
$_____   $_____

4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories
Examples: Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories
☑ No
☐ Yes

4.1. Make: _____
Model: _____
Year: _____
Other information:

Who has an interest in the property? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.

Current value of the entire property?   Current value of the portion you own?
$_____   $_____

If you own or have more than one, list here:

4.2. Make: _____
Model: _____
Year: _____
Other information:

Who has an interest in the property? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.

Current value of the entire property?   Current value of the portion you own?
$_____   $_____

5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here ............ →   $_____ 0.00

Official Form 106A/B          Schedule A/B: Property          page 3

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 259**

Case 25-15951-nmc    Doc 28    Entered 12/05/25 13:55:35    Page 4 of 58

Debtor 1    Dion A Lee _____    Case number (if known) 25-15951-nmc

**Part 3:    Describe Your Personal and Household Items**

Current value of the portion you own? Do not deduct secured claims or exemptions.

Do you own or have any legal or equitable interest in any of the following items?

6. Household goods and furnishings
   Examples: Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ☑ Yes. Describe...... Washer/dryer, refrigerator, stove, sofas, beds, kitchenware    $ 7,500.00

7. Electronics
   Examples: Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☐ No
   ☑ Yes. Describe...... Televisions, laptop, printer, cell phones    $ 4,000.00

8. Collectibles of value
   Examples: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ☑ No
   ☐ Yes. Describe......    $

9. Equipment for sports and hobbies
   Examples: Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ☑ No
   ☐ Yes. Describe......    $

10. Firearms
    Examples: Pistols, rifles, shotguns, ammunition, and related equipment
    ☑ No
    ☐ Yes. Describe......    $

11. Clothes
    Examples: Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ☑ Yes. Describe...... Everyday clothes    $ 2,000.00

12. Jewelry
    Examples: Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☑ No
    ☐ Yes. Describe......    $

13. Non-farm animals
    Examples: Dogs, cats, birds, horses
    ☑ No
    ☐ Yes. Describe......    $

14. Any other personal and household items you did not already list, including any health aids you did not list
    ☐ No
    ☐ Yes. Give specific information......    $

15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here .................. →    $ 13,500.00

Official Form 106A/B                Schedule A/B: Property                page 4

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 260**

Debtor 1    Dion A Loo

Case number (if known) 25-15951-nmc

**Part 4:    Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

**16. Cash**

Examples: Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☑ No
☐ Yes......................................................................................................................... Cash .............. $_____

**17. Deposits of money**

Examples: Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
☑ Yes.....................   Institution name:

| | | | |
|---|---|---|---|
| 17.1. Checking account: | Navy Federal Credit Union | $ | 140.16 |
| 17.2. Checking account: | | $ | |
| 17.3. Savings account: | Wells Fargo Bank | $ | 0.78 |
| 17.4. Savings account: | Navy Federal Credit Union | $ | 0.04 |
| 17.5. Certificates of deposit | | $ | |
| 17.6. Other financial account: | Cash App | $ | 29.00 |
| 17.7. Other financial account: | | $ | |
| 17.8. Other financial account: | | $ | |
| 17.9. Other financial account: | | $ | |

**18. Bonds, mutual funds, or publicly traded stocks**

Examples: Bond funds, investment accounts with brokerage firms, money market accounts

☑ No
☐ Yes.....................   Institution or issuer name:

| | |
|---|---|
| | $ |
| | $ |
| | $ |

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☐ No
☑ Yes. Give specific information about them.
State........

| Name of entity: | % of ownership: | |
|---|---|---|
| One City One Team LLC | 100% | $ 0.00 |
| | 0% | $ |
| | 0% | $ |

Official Form 106A/B                    Schedule A/B: Property                    page 5

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 261**

Case 25-15951-nmc    Doc 23    Entered 12/05/25 14:51:35    Page 46 of 58

Debtor 1    Dion A Lee

Case number 25-15951-nmc

20. Government and corporate bonds and other negotiable and non-negotiable instruments.
Negotiable instruments include personal checks, cashiers' checks, promissory notes, and money orders.
Non-negotiable instruments are those you cannot transfer to someone by signing or delivering them.

☑ No
☐ Yes. Give specific information about them......    Issuer name:

21. Retirement or pension accounts
Examples: Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☑ No
☐ Yes. List each account separately.    Type of account:    Institution name:

401(k) or similar plan:

Pension plan:

IRA:

Retirement account:

Keogh:

Additional account:

Additional account:

22. Security deposits and prepayments
Your share of all unused deposits you have made so that you may continue service or use from a company
Examples: Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

☑ No
☐ Yes.    Institution name or individual:

Electric:

Gas:

Heating oil:

Security deposit on rental unit:

Prepaid rent:

Telephone:

Water:

Rented furniture:

Other:

23. Annuities (A contract for a periodic payment of money to you, either for life or for a number of years)

☑ No
☐ Yes.    Issuer name and description:

Official Form 106A/B                    Schedule A/B: Property                    page 6

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 262

Case 25-15951-nmc    Doc 23    Entered 12/05/25 14:51:38    Page 47 of 58

Debtor 1    Dion A Lee                                    Case number (if known)    25-15951-nmc

24. Interests in an education IRA. In an account in a qualified ABLE program, or under a qualified state tuition program.
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
☑ No
☐ Yes _____ Institution name and description. Separately file the records of any interests. 11 U.S.C. § 521(c):

_____   $_____
_____   $_____
_____   $_____

25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit
☑ No
☐ Yes: Give specific
information about them....                                        $_____

26. Patents, copyrights, trademarks, trade secrets, and other intellectual property
Examples: Internet domain names, websites, proceeds from royalties and licensing agreements
☑ No
☐ Yes. Give specific
information about them....                                        $_____

27. Licenses, franchises, and other general intangibles
Examples: Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
☐ No
☑ Yes. Give specific    Life and health Insurance license             $            120.00
information about them...

Money or property owed to you?                                  Current value of the
portion you own?
Do not deduct secured
claims or exemptions.

28. Tax refunds owed to you
☑ No
☐ Yes. Give specific information
about them, including whether      Federal    $_____
you already filed the returns       State     $_____
and the tax years. _____     Local     $_____

29. Family support
Examples: Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
☑ No
☐ Yes. Give specific information...........    Alimony              $_____
Maintenance          $_____
Support              $_____
Divorce settlement   $_____
Property settlement  $_____

30. Other amounts someone owes you
Examples: Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation,
Social Security benefits; unpaid loans you made to someone else
☑ No
☐ Yes. Give specific information...........                              $_____

Official Form 106A/B                     Schedule A/B: Property                          page 7

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED
FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE
FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH
AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND
FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE
OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11
U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS,
AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT
COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY
PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 263

Debtor 1   Dion A Lee

Case number (if known) 25-15951-nmc

**11. Interests in insurance policies**
Examples: Health, disability, or life insurance; health savings account (HSA); stock, homeowner's, or renter's insurance

☑ No
☐ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| | | $_____ |
| | | $_____ |
| | | $_____ |

**12. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

☑ No
☐ Yes. Give specific information.                                            $_____

**13. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
Examples: Accidents, employment disputes, insurance claims, or rights to sue

☑ No
☐ Yes. Describe each claim.                                            $_____

**14. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

☑ No
☐ Yes. Describe each claim.                                            $_____

**15. Any financial assets you did not already list**

☑ No
☐ Yes. Give specific information.                                            $_____

**16. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here** → | $ | 280.98 |

**Part 5:   Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**

**17. Do you own or have any legal or equitable interest in any business-related property?**
☑ No. Go to Part 6.
☐ Yes. Go to line 38.

Current value of the portion you own?
Do not deduct secured claims or exemptions.

**18. Accounts receivable or commissions you already earned**
☑ No
☐ Yes. Describe                                            $_____

**19. Office equipment, furnishings, and supplies**
Examples: Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

☑ No
☐ Yes. Describe                                            $_____

Official Form 106A/B                    Schedule A/B: Property                    page 6

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 264

Case 25-15951-nme    Doc 23    Entered 12/05/25 54:51:35    Page 49 of 58

Debtor 1   Dion A Lee                                                    Case number (if known) 25-15951-nme

40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade

☑ No
☐ Yes. Describe....                                                                     $_____

41. Inventory
☑ No
☐ Yes. Describe....                                                                     $_____

42. Interests in partnerships or joint ventures
☑ No
☐ Yes. Describe....   Name of entity                              % of ownership
                      _____    __%   $_____
                      _____    __%   $_____
                      _____    __%   $_____

43. Customer lists, mailing lists, or other compilations
☑ No
☐ Yes. Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?
        ☐ No
        ☐ Yes. Describe....                                                            $_____

44. Any business-related property you did not already list
☑ No
☐ Yes. Give specific
        information....   _____    $_____
                         _____    $_____
                         _____    $_____
                         _____    $_____
                         _____    $_____
                         _____    $_____

45. Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached.
    for Part 5. Write that number here _____→    $          0.00

**Part 6:    Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**
If you own or have an interest in farmland, list it in Part 1.

46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?
☑ No. Go to Part 7.
☐ Yes. Go to line 47.

                                                                        Current value of the
                                                                        portion you own?
                                                                        Do not deduct secured claims
                                                                        or exemptions.

47. Farm animals
    Examples: Livestock, poultry, farm-raised fish
☐ No
☐ Yes....   _____
            _____    $_____

Official Form 106A/B                    Schedule A/B: Property                    page 9

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 265

Debtor 1    Dion A Lee                                   Case number 25-15951-nmc

**48. Crops—either growing or harvested**
- ☐ No
- ☐ Yes. Give specific information.                                          $_____

**49. Farm and fishing equipment, implements, machinery, fixtures, and tools of trade**
- ☐ No
- ☐ Yes.                                                                     $_____

**50. Farm and fishing supplies, chemicals, and feed**
- ☐ No
- ☐ Yes.                                                                     $_____

**51. Any farm- and commercial fishing-related property you did not already list**
- ☐ No
- ☐ Yes. Give specific information.                                          $_____

**52.** Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached for Part 6. Write that number here →   $_____ 0.03

## Part 7:   Describe All Property You Own or Have an Interest in That You Did Not List Above

**53.** Do you have other property of any kind you did not already list?
Examples: Season tickets, country club membership
- ☑ No
- ☐ Yes. Give specific information.    $_____   $_____   $_____

**54.** Add the dollar value of all of your entries from Part 7. Write that number here →   $_____ 0.00

## Part 8:   List the Totals of Each Part of this Form

| | | |
|---|---|---|
| 55. Part 1: Total real estate, line 2 → | | $ 84,000.00 |
| 56. Part 2: Total vehicles, line 5 | $ 0.00 | |
| 57. Part 3: Total personal and household items, line 15 | $ 13,500.00 | |
| 58. Part 4: Total financial assets, line 36 | $ 289.98 | |
| 59. Part 5: Total business-related property, line 45 | $ 0.00 | |
| 60. Part 6: Total farm- and fishing-related property, line 52 | $ 0.00 | |
| 61. Part 7: Total other property not listed, line 54 | + $ 0.00 | |
| 62. Total personal property. Add lines 56 through 61. | $ 13789 Copy personal property total → + $ 13789 |
| 63. Total of all property on Schedule A/B. Add line 55 + line 62. | | $ 70,211.00 |

Official Form 106A/B          Schedule A/B: Property          page 10

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 266**

Case 25-15951-nmc   Dec 29   Entered 12/05/25 06:55:35   Page 55 of 58

Fill in this information to identify your case:

Debtor 1    D'on A Lee

Debtor 2    Carla C Williams
(Spouse, if filing)

United States Bankruptcy Court for the:   District of   Nevada

Case number   25-15951-nmc
(if known)

☑ Check if this is an
amended filing

Official Form 106D

## Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. Do any creditors have claims secured by your property?
   ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.
   ☑ Yes. Fill in all of the information below.

### Part 1:  List All Secured Claims

2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion if any |
|---|---|---|---|
| **2.1** Shellpoint Mortgage Servicing<br>Creditor's Name<br>P.O. Box 10826<br>Number    Street<br><br>Greenville    SC   29603<br>City    State   ZIP Code<br>Who owes the debt? Check one.<br>☐ Debtor 1 only<br>☐ Debtor 2 only<br>☑ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br>☐ Check if this claim relates to a community debt<br>Date debt was incurred _____<br>Last 4 digits of account number ___ ___ ___ ___ | Describe the property that secures the claim:<br>Single Family Residence<br><br>As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☑ Unliquidated<br>☐ Disputed<br><br>Nature of lien. Check all that apply.<br>☑ An agreement you made (such as mortgage or secured car loan)<br>☐ Statutory lien (such as tax lien, mechanic's lien)<br>☐ Judgment lien from a lawsuit<br>☐ Other (including a right to offset) _____ | $ 548,481.30 | $ 600,000.00 | $ |
| **2.2**<br>Creditor's Name<br>Number    Street<br>City    State   ZIP Code<br>Who owes the debt? Check one:<br>☐ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br>☐ Check if this claim relates to a community debt<br>Date debt was incurred _____<br>Last 4 digits of account number ___ ___ ___ ___ | Describe the property that secures the claim:<br><br>As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Nature of lien. Check all that apply.<br>☐ An agreement you made (such as mortgage or secured car loan)<br>☐ Statutory lien (such as tax lien, mechanic's lien)<br>☐ Judgment lien from a lawsuit<br>☐ Other (including a right to offset) _____ | $ | $ | $ |

Add the dollar value of your entries in Column A on this page. Write that number here:    $ 548,481.30

Official Form 106D    Schedule D: Creditors Who Have Claims Secured by Property    page 1 of 3

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 267

Case 25-15951-nmc  Doc 23  Entered 12/05/25 14:51:35  Page 52 of 58

Debtor 1  Dion A Lee

Case number (if known) 25-15951-nmc

**Additional Page**

Part 1: After listing any entries on this page, number them beginning with 2.3, followed by 2.4, and so forth.

| | Column A Amount of claim. Do not deduct the value of collateral. | Column B Value of collateral that supports this claim | Column C Unsecured portion if any |
|---|---|---|---|

Describe the property that secures the claim:

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Who owes the debt? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred _____

Last 4 digits of account number _____

Describe the property that secures the claim:

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Who owes the debt? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred _____

Last 4 digits of account number _____

Describe the property that secures the claim:

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Who owes the debt? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred _____

Last 4 digits of account number _____

Add the dollar value of your entries in Column A on this page. Write that number here:

If this is the last page of your form, add the dollar value totals from all pages. Write that number here:

Official Form 106D     Additional Page of Schedule D: Creditors Who Have Claims Secured by Property     page 2 of 3

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 268**

Debtor  Dion A Lee

Case number (if known) 25-15951-nme

**Part 3:  List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

| 2.3 | Barrett Daffin Frappier Turner & Engel LLP | On which line in Part 1 did you enter the creditor? **2.1** |
|---|---|---|
| | Name | Last 4 digits of account number █████ |
| | 4004 Belt Line Road, Suite 100 | |
| | Number  Street | |
| | Addison  TX  75001 | |
| | City  State  ZIP Code | |

On which line in Part 1 did you enter the creditor? ____
Last 4 digits of account number ___ ___ ___ ___

On which line in Part 1 did you enter the creditor? ____
Last 4 digits of account number ___ ___ ___ ___

On which line in Part 1 did you enter the creditor? ____
Last 4 digits of account number ___ ___ ___ ___

On which line in Part 1 did you enter the creditor? ____
Last 4 digits of account number ___ ___ ___ ___

On which line in Part 1 did you enter the creditor? ____
Last 4 digits of account number ___ ___ ___ ___

On which line in Part 1 did you enter the creditor? ____
Last 4 digits of account number ___ ___ ___ ___

Official Form 106D  Part 2 of Schedule D: Creditors Who Have Claims Secured by Property  page 3 of 3

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 269

# EXHIBIT "7"

# EXHIBIT "7"

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 270

TIFFANY & BOSCO, P.A.
Krista J. Nielson, Esq.
Nevada Bar No. 10698
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135
Telephone: 702 258-8200
Fax: 702 258-8787
nvbk@tblaw.com

Attorney for NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for Athene Annuity and Life Company

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>DION ANDRE LEE AND CARLA CARMEN WILLIAMS.<br><br>Debtors. | BK Case No: 25-15951-nmc<br><br>Chapter 7<br><br>**ORDER TERMINATING THE AUTOMATIC STAY**<br><br>Hearing Date: January 6, 2026<br>Hearing Time: 1:30 p.m. |

## ORDER TERMINATING THE AUTOMATIC STAY

NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for Athene Annuity and Life Company's *Motion for Relief from the Automatic Stay* came on regularly for hearing in the United States Bankruptcy Court. The court having duly considered the papers and pleadings on file herein and being fully advised thereon and finding cause therefor:

///

1

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 271**

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Automatic Stay of 11 United States Code section 362 is terminated with regard to the Debtors and the Trustee as it applies to enforcement by NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for Atheno Annuity and Life Company, its assignees and/or successors in interest, of all its rights in the real property, generally described as 1000 Cathedral Pl, Decatur, Georgia 30034, and legally described as follows:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 69 OF THE 15TH DISTRICT OF DEKALB COUNTY, GEORGIA, BEING A TRACT OF LAND OF 4.07 ACRES, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

TO FIND THE TRUE POINT OF BEGINNING, BEGIN AT THE INTERSECTION OF LAND LOTS 68, 69, 92 AND 93; THAT IS, AT THE NORTHEAST CORNER OF LAND LOT 69; THENCE RUNNING SOUTH 01 DEGREES 04 MINUTES 33 SECONDS EAST ALONG THE EASTERLY LAND LOT LINE OF LAND LOT 69 999.97 FEET TO A POINT ON SAID EASTERLY LAND LOT LINE AND THE TRUE POINT OF BEGINNING; FROM THE TRUE POINT OF BEGINNING AS THUS ESTABLISHED, CONTINUE THENCE SOUTH 01 DEGREES 12 MINUTES 26 SECOND EAST ALONG THE EASTERLY LAND LOT LINE OF LAND LOT 69 AND ALONG THE WESTERLY SIDE OF PROPERTY NOW OR FORMERLY OWNED BY THE CHAPEL HILL HARVESTER CHURCH 359.57 FEET TO A POINT; THENCE RUNNING NORTH 89 DEGREES 24 MINUTES 19 SECONDS WEST ALONG THE NORTHERLY LINE OF PROPERTY NOW OR FORMERLY OWNED BY THE CHAPEL HILL HARVESTER CHURCH 331.48 FEET TO A POINT; THENCE RUNNING NORTH 00 DEGREES 35 MINUTES 41 SECONDS EAST 99.51 FEET TO A POINT; THENCE RUNNING NORTH 89 DEGREES 24 MINUTES 19 SECONDS WEST 172.24 FEET TO A POINT AT THE SOUTHEAST CORNER OF LOT 45 OF CREEKWOOD HILLS, UNIT THREE, PHASE TWO, AS PER THE RECORDED PLAT AT PLAT BOOK 56, PAGE 59; THENCE RUNNING NORTH (HI DEGREES 58 MINUTES 22 SECONDS WEST ALONG THE EASTERLY SIDE OF LOTS 45, 46, AND 47 OF SAID SUBDIVISION, UNIT AND PHASE, 400.70 FEET TO A POINT; THENCE RUNNING SOUTH 60 DEGREES 59 MINUTES 00 SECONDS EAST 354.57 FEET TO A POINT IN A POND; THENCE RUNNING NORTH 82 DEGREES 15 MINUTES 10 SECONDS EAST 193.59 FEET TO A POINT ON THE EASTERLY LAND LOT LINE OF LAND LOT 69, THIS BEING THE TRUE POINT OF BEGINNING; AS SHOWN ON THE SURVEY OF EARL PAULK BY M.D.

2

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 272**

# EXHIBIT E

## CHAPTER 7 BANKRUPTCY FILING (OCTOBER 6, 2025)

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 273**

10/6/23, 1'.37 AM                                                    Pvt I-CP

United States Bankruptcy Court
District of Nevada

**Notice of Bankruptcy Case Filing**

A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 7 of the United States Bankruptcy Code, entered on 10/06/2025 at 11:20 AM and filed on 10-06-2025.

**DION ANDRE LEE**
1000 CATHEDRAL PL.
DECATUR, GA 30034
SSN / ITIN: xxx-xx-9375
Tax ID / EIN: 85-1359424

**CARLA CARMEN WILLIAMS**
324 DOCKSIDE CT
LAS VEGAS, NV 89145
SSN / ITIN: xxx-xx-2858

The bankruptcy trustee is:

**ROBERT E. ATKINSON**
376 E WARM SPRINGS RD STE 130
LAS VEGAS, NV 89119
702 617-3300

The case was assigned case number 25-15951-nmc to Judge NATALIE M. COX.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our Internet home page http://www.nvb.uscourts.gov or at the Clerk's Office, 300 Las Vegas Blvd., South, Las Vegas, NV 89101

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

Dan Owens
Clerk, U.S. Bankruptcy Court



**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 274**

# EXHIBIT F

## LOSS MITIGATION DENIAL LETTER FROM DEFENDANT NEWREZ LLC, D/B/A SHELLPOINT MORTGAGE SERVICING

### (OCTOBER 21, 2025)

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 275

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED

# shellpoint.

| CONTACT INFORMATION | |
|---|---|
| Correspondence: | P.O. Box 10826<br>Greenville, SC 29603-0826 |
| Business Hours: | Monday - Friday: 8:00AM-9:00PM<br>Saturday: 8:00AM-1:00PM |
| Phone: | 866-825-2174 |
| Fax: | 866-467-1187 |
| Website: | www.shellpointmtg.com |

S-SFRECS20 L-2501 R-106
PM.FVN00201148 - 843143129 102814
DION A LEE
CARLA C WILLIAMS
1000 CATHEDRAL PL
DECATUR GA 30034-5065

Loan Number:   0669711539
Property Address:   1000 CATHEDRAL PL
DECATUR, GA 30034

10/21/2025

Dear Homeowners:

Thank you for contacting us about your mortgage. You were evaluated for mortgage payment assistance based on the eligibility requirements of Athene Annuity and Life Company, the owner of your mortgage loan.

We evaluated you for all Loss Mitigation Home Retention programs. Based on our review of your loan, property, and financial circumstances, you are not eligible for the following Loss Mitigation programs due to the following reason(s):

Repayment Plan
• Your loan is not eligible for this program because of the active bankruptcy.
Long-term Forbearance
• The information provided was not sufficient to verify your hardship.
Short-term Forbearance
• Our records indicate that your loan exceeds the allowable delinquency.

HAF Homeowner Assistance Fund
There may be additional forms of assistance available to you, the Homeowner Assistance Fund (HAF) program established under the American Rescue Plan Act of 2021 may be available in your area. The goal of the HAF program is to aid homeowners in avoiding foreclosure by providing mortgage assistance for borrowers in need. If you are interested in information about the HAF program and instructions on applying for assistance, please visit www.ncsha.org/homeowner-assistance-fund for HAF program details and links for each state. To apply for HAF assistance you must follow the instructions provided on your state's HAF website. We do not participate in the program qualification process with the HAF state agency.

We understand that you may be facing financial difficulties. While we are not able to approve you for a loan modification, we may have other programs available to help.

While it may be difficult to make the decision to leave your home, you may be eligible for the programs listed below. These can help provide a fresh start toward a new home by covering a portion of your relocation expenses. Please call us at 866-825-2174 to discuss further documentation required for program eligibility and approval.

• Short Sale – A short sale involves the sale of the home for less than the balance you owe. If the owner of your loan agrees to a short sale, you can sell your home and pay off all (or a portion of) your balance with the proceeds.
• Deed-in-Lieu of Foreclosure – With a Deed-in-Lieu of Foreclosure, you transfer the title of your property to the owner of your mortgage in exchange for a release from your loan and payments.

If you can, please pay in full immediately. We recognize that being denied for a loan modification may be disappointing news for you. However, to avoid additional expenses resulting from late payments and foreclosure, it is important you make the full payment listed above or contact us regarding the additional options presented above as quickly as possible.

Remember, your mortgage payment was due on 04/01/2025 and has accrued late charges of $1,086.40.

Please send your payment to:

Shellpoint Mortgage Servicing
P.O. Box 650840

Newrez LLC dba Shellpoint Mortgage Servicing NMLS ID 3013
2501 106 Loan Number: 0669711539 Version: 08282025                     P 00000010102.IC460

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 276**

# EXHIBIT G

**MORTGAGE STATEMENT FROM DEFENDANT NEWREZ LLC, D/B/A**

**SHELLPOINT MORTGAGE SERVICING (JULY 6, 2025)**

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 277



**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 278**

# EXHIBIT H

## EMPLOYMENT INFORMATION

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 279

## Employment Information

| Borrower's Employer:<br>Ono City Ono Team LLC | | Job Title:<br>Driver | How Long?<br>3 years |
|---|---|---|---|
| Co-Borrower's Employer:<br>Ono City Ono Team LLC | | Job Title:<br>Dispatcher | How Long?<br>3 years |
| Borrower's Employer Address:<br>324 Dockside Ct, Las Vegas, NV 89145 | | Employer Phone Number:<br>702.608.6170 | |
| Co-Borrower's Employer Address:<br>324 Dockside Ct, Las Vegas, NV 89145 | | Employer Phone Number:<br>702.602.6170 | |
| Borrower's Years Employed | | Co-Borrower's Years Employed | |

| | Borrower's Income | Co-Borrower's Income |
|---|---|---|
| Gross Monthly Income | 15000 | 1500 |
| Net Monthly Income<br>(Take home pay) | 10000 | 1500 |
| Commissions / Bonus | 0 | 0 |

| Social Security: | Child Support: | Alimony: |
|---|---|---|
| Rental: | Other | Other: |

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 280**

# EXHIBIT I

## MORTGAGE INFORMATION

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 281

## Mortgage Information

### Current Loan 1ˢᵗ Trust Deed: (Please provide any information you have.)

| Mortgage Company: Shellpoint | | | Account #:  0089711539 | |
|---|---|---|---|---|
| Customer Service Phone #: | | | Current Balance: $   $514,753 | |
| Monthly Mortgage Payment: $4848 | | Impounds Y / N | Taxes Per Month. | Insurance |
| Current Interest Rate  9.25 | | Fixed / ARM | Recast Date | Recast Rate |
| Delinquent Amount: $19,695.58 | | Date of Last Payment: 05/20/2025 | Notice of Default (NOD): Yes/ (No)  Sales Date: | |
| Is the property vacant?          No | | | | |
| Have you previously negotiated a repayment plan with this lender? Yes/ (No) | | | | |
| If yes, when? | | Did you complete the repayment plan? What happened? | | |

### Current Loan 2ⁿᵈ Trust Deed: (Please provide any information you have.)

| Mortgage Company: | | | Account #: | |
|---|---|---|---|---|
| Customer Service Phone #: | | | Current Balance: $ | |
| Monthly Mortgage Payment: | | | | |
| Current Interest Rate: | | Fixed / ARM | Recast Date | Recast Rate |
| Delinquent Amount: | | Date of Last Payment: | Notice of Default (NOD): Yes/ No  Sales Date: | |
| Have you previously negotiated a repayment plan with this lender? Yes/ No | | | | |
| If yes, when? | | Did you complete the repayment plan? What happened? | | |
| Notes: | | | | |

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 282**

# EXHIBIT J

## MONTHLY INCOME INFORMATION

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 283

# MONTHLY INCOME

| Description | Borrower | Co Borrower | Total |
|---|---|---|---|
| Gross Income | $ | $ | $ |
| Overtime | $ | $ | $ |
| Commissions/ Bonuses | $ | $ | $ |
| Rental Income | $ | $ | $ |
| Child Support/ Alimony/ Other | $ | $ | $ |
| Less: Federal Income Tax | $ | $ | $ |
| State Income Tax | $ | $ | $ |
| Other Deductions | $ | $ | $ |
| Monthly Net Income | $    7500 | $    1500 | $ |

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 284**

# EXHIBIT K

## MONTHLY EXPENSES INFORMATION

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 285**

## MONTHLY EXPENSES

| Description of Expenses | Monthly Payment | Total Balance Due | Months Remaining |
|---|---|---|---|
| Mortgage 1 | $ 4848.44 | $ 514,753.00 | |
| Mortgage 2 | $ | $ | |
| Property Taxes | $ | $ | |
| Homeowners Insurance | $ | $ | |
| Flood/Windstorm/Earthquake Insurance | $ | $ | |
| Auto Loan/ Lease 1 | $ 857.00 | $ | |
| Auto Loan/ Lease 2 | $ | $ | |
| Auto Insurance | $ | $ | |
| Auto Maintenance | $ | $ | |
| Auto Gas/ Transportation | $ 200.00 | $ | |
| Installment Loans | $ | $ | |
| Credit Cards (Visa, Dept. Store, etc.) | $ 650.00 | $ | |
| Utilities (Water, Natural Gas, Electric, Sewer and Water, etc.) | $ 500.00 | $ | |
| Cellular Phone | $ 380.00 | $ | |
| Medical/ Dental/ Life Insurance | $ | $ | |
| Groceries/ Food/ Toiletries | $ 1000 | $ | |
| Entertainment/ Vacation | $ | $ | |
| Child Care | $ | $ | |
| School Tuition | $ | $ | |
| Alimony/ Child Support | $ | $ | |
| Clothing | $ 200.00 | $ | |
| Other | $ | $ | |
| Total Expenses | $ | $ | |

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 286**

# EXHIBIT L

## PROFIT AND LOSS REPORT

VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 287

Copy 9/19/25

Keith Warren   Andrew Dunn                              9/19/2025

**20%**

**30%**

| Client | Check Amount | | Commission Amount | Payment Number | Check Number |
|---|---|---|---|---|---|
| Dana Harrison | 2,507.55 | | 752 | 3/3 | 1240 |
| Courtney Plessel | 1,005.00 | | 302 | 3/3 | 104 |
| Brenna Davis | 800.00 | | 632 | 3/4 | 7820 |
| Elizabeth Medberry | 1,500.00 | | 620 | 1/4 | 83 |
| Krisanda Forbs | 1,800.55 | | 540 | 3/3 | 108 |
| Carlos Landrow | 600.00 | | 240 | 6/8 | 4311 |
| Leo Acton | 702.50 | | 215 | 6/5 | 4148 |
| | 9,500.00 | | 3,672.20 | | |

**40%**

| | Check Amount | | Commission Amount | Payment Number | Check Number |
|---|---|---|---|---|---|
| Subtotal | 54.55 | | | | |

| Refund Total | | | | | |

| Bounced Checks | | | | Payment Number | Check Number |
|---|---|---|---|---|---|
| Bounced Total | | | | | |

| Grand Total | 9,500.00 | | 3,672.50 | | |

9/11/2025 16:04:46

**VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD) - 288**

## IN THE SUPERIOR COURT OF DEKALB COUNTY
## STATE OF GEORGIA

**Dion Andre Lee &**

**Carla Carmen Williams**

Case No.:    26CV1492

_____

Plaintiff

VS

United Wholesale Mortgage, LLC, et al.

Defendant

# SUMMONS

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said court at https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

Dion Andre Lee & Carla Carmen Williams, 1000 Cathedral Pl., Decatur, GA 30034, dlee.gfa@gmail.com

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This ___21st___ day of ___January___, 20__26__.

Honorable Debra DeBerry
Clerk of Superior Court
        /s/ Andreane Ellington
By_____
        Deputy Clerk

E-Filing and E-Service

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

FILED 1/21/2026 2:23 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## IN THE SUPERIOR COURT OF DEKALB COUNTY
## STATE OF GEORGIA

Dion Andre Lee &

Carla Carmen Williams

Case No.:    26CV1492

_____

Plaintiff

VS

Mortgage Electronic Registration

Systems, Inc. (MERS), et al.

Defendant

# SUMMONS

## TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said court at
https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

Dion Andre Lee & Carla Carmen Williams, 1000 Cathedral Pl., Decatur, GA 30034, dlee.gfa@gmail.com

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons
upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint.

This ____21st____ day of ___January___, 20_26___.

Honorable Debra DeBerry
Clerk of Superior Court
    /s/ Andreane Ellington
By_____
    Deputy Clerk

E-Filing and E-Service

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the
parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will
be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the
case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To
access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

FILED 1/21/2026 2:23 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

**IN THE SUPERIOR COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

Dion Andre Lee &

Carla Carmen Williams

Case No.:    26CV1492

---

Plaintiff

VS

NewRez D/B/A Shellpoint Mortgage

Servicing, et al.

---

Defendant

# SUMMONS

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said court at https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

Dion Andre Lee & Carla Carmen Williams, 1000 Cathedral Pl., Decatur, GA 30034, dlee.gfa@gmail.com

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ 21st _____ day of _____ January _____, 20 _26_____.

Honorable Debra DeBerry
Clerk of Superior Court
/s/ Andreane Ellington

By_____
Deputy Clerk

E-Filing and E-Service

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

## IN THE SUPERIOR COURT OF DEKALB COUNTY
## STATE OF GEORGIA

Dion Andre Lee &

Carla Carmen Williams

Case No.:    26CV1492

_____

#### Plaintiff

### VS

Athene Annuity And Life Company,et al.

#### Defendant

# SUMMONS

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said court at https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

Dion Andre Lee & Carla Carmen Williams, 1000 Cathedral Pl., Decatur, GA 30034, dlee.gfa@gmail.com

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____21st_____ day of _____January_____, 20__26__.

Honorable Debra DeBerry
Clerk of Superior Court

By_____/s/ Andreane Ellington_____
Deputy Clerk

E-Filing and E-Service

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

FILED 1/21/2026 2:23 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## IN THE SUPERIOR COURT OF DEKALB COUNTY
## STATE OF GEORGIA

Dion Andre Lee &

Carla Carmen Williams

Case No.: 26CV1492

_____
Plaintiff

VS

Barett Daffin Frappier Turner &

Engel LLP, et al.

_____
Defendant

# SUMMONS

## TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said court at https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

Dion Andre Lee & Carla Carmen Williams, 1000 Cathedral Pl., Decatur, GA 30034, dlee.gfa@gmail.com

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This ____21st____ day of ____January____, 20__26__.

Honorable Debra DeBerry
Clerk of Superior Court
/s/ Andreane Ellington
By_____
Deputy Clerk

E-Filing and E-Service

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

FILED 1/21/2026 2:23 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## IN THE SUPERIOR COURT OF DEKALB COUNTY
## STATE OF GEORGIA

Dion Andre Lee &

Carla Carmen Williams

Case No.:     26CV1492

_____

Plaintiff

VS

Tiffany & Bosco, P.A., et al.

Defendant

# SUMMONS

## TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said court at https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

Dion Andre Lee & Carla Carmen Williams, 1000 Cathedral Pl., Decatur, GA 30034, dlee.gfa@gmail.com

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This ___21st___ day of ___January___, 20__26__.

Honorable Debra DeBerry
Clerk of Superior Court
   /s/ Andreane Ellington
By_____
   Deputy Clerk

E-Filing and E-Service

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

FILED 1/21/2026 2:23 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## General Civil and Domestic Relations Case Filing Information Form

☑ **Superior** or ☐ **State Court of** _____DEKALB_____ **County**

| For Clerk Use Only | |
|---|---|
| **Date Filed** 1/21/2026 | **Case Number** 26CV1492 |
| MM-DD-YYYY | |

### Plaintiff(s)

| Lee | Dion | Andre | | |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| Williams | Carla | Carmen | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |

### Defendant(s)

| | | | | |
|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| | | | | |
| Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** _____ **State Bar Number** _____ **Self-Represented** ☑

### Check one case type and one sub-type in the same box (if a sub-type applies):

**General Civil Cases**

- ☐ **Automobile Tort**
- ☐ **Civil Appeal**
- ☐ **Contempt/Modification/Other Post-Judgment**
- ☐ **Contract**
- ☐ **Garnishment**
- ☐ **General Tort**
- ☐ **Habeas Corpus**
- ☐ **Injunction/Mandamus/Other Writ**
- ☐ **Landlord/Tenant**
- ☐ **Medical Malpractice Tort**
- ☐ **Product Liability Tort**
- ☑ **Real Property**
- ☐ **Restraining Petition**
- ☐ **Other General Civil**

**Domestic Relations Cases**

- ☐ **Adoption**
- ☐ **Contempt**
  - ☐ **Non-payment of child support, medical support, or alimony**
- ☐ **Dissolution/Divorce/Separate Maintenance/Alimony**
- ☐ **Family Violence Petition**
- ☐ **Modification**
  - ☐ **Custody/Parenting Time/Visitation**
- ☐ **Paternity/Legitimation**
- ☐ **Support – IV-D**
- ☐ **Support – Private (non-IV-D)**
- ☐ **Other Domestic Relations**

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____     _____
Case Number                          Case Number

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____
Language(s) Required

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20

## Defendants List

- **ATHENE ANNUITY AND LIFE COMPANY**

- **NEWREZ LLC, D/B/A SHELLPOINT MORTGAGE SERVICING**

- **UNITED WHOLESALE MORTGAGE, LLC**

- **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)**

- **TIFFANY & BOSCO, P.A.**

- **BARRETT DAFFIN FRAPPIER TURNER & ENGEL LLP**

- **JOHN/JANE DOES 1–20**

FILED 2/2/2026 1:38 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## AFFIDAVIT OF SERVICE

| Case: 26CV1492 | Court: IN THE SUPERIOR COURT OF DEKALB COUNTY STATE OF GEORGIA | County: | Job: 15078468 |
|---|---|---|---|
| Plaintiff / Petitioner: DION ANDRE LEE AND CARLA CARMEN WILLIAMS | | Defendant / Respondent: NEWREZ D/B/A/ SHELLPOINT MORTGAGE SERVICING, ET AL | |
| Received by: Platinum Process Servers | | For: N/A | |
| To be served upon: ATHENE ANNUITY AND LIFE COMPANY C/O CORPORATION SERVICE COMPANY | | | |

I, Jason Garmon, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** BARRY SMITH, INTAKE, 2 SUN CT SUITE 400, PEACHTREE CORNERS, 30092

**Manner of Service:** Registered Agent, Jan 28, 2026, 11:10 am EST

**Documents:** SUMMONS, GENERAL CIVIL AND DOMESTIC RELATIONS CASE FILING INFORMATION FORM, VERIFIED AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY;WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS AND EQUITABLE ACCOUNTING; DECLATORY RELIEF; AND PERMANANTLY COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTREST;AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD), VERIFICATION, EXHIBITS A-L

**Additional Comments:**
1) Successful Attempt: Jan 28, 2026, 11:10 am EST at 2 SUN CT SUITE 400, PEACHTREE CORNERS, 30092 received by BARRY SMITH, INTAKE. Age: 35-40; Ethnicity: African American; Gender: Male; Weight: 170; Height: 5'7"; Hair: Black; Eyes: Brown; Relationship: INTAKE; DOCUMENTS DELIVERED INTO HANDS OF BARRY SMITH, INTAKE

_____   1/28/2026
Jason Garmon            Date
GA CPS #356

Platinum Process Servers
3446 Winder Highway Ste M361
Flowery Branch, GA 30542
239-344-6997

Subscribed and sworn to before me by the affiant who is personally known to me.

_____
Notary Public

1/28/2026                    12/9/2028
Date              Commission Expires

DAYLIEN GARMON
MY COMMISSION EXPIRES
NOTARY PUBLIC
DECEMBER 09, 2028
HALL COUNTY, GEORGIA

FILED 2/2/2026 1:38 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## AFFIDAVIT OF SERVICE

| Case: 26CV1492 | Court: IN THE SUPERIOR COURT OF DEKALB COUNTY STATE OF GEORGIA | County: | Job: 15078756 |
|---|---|---|---|
| **Plaintiff / Petitioner:** DION ANDRE LEE AND CARLA CARMEN WILLIAMS | | **Defendant / Respondent:** URBAN WHOLESALE MORTGAGE, LLC., ET AL | |
| **Received by:** Platinum Process Servers | | **For:** N/A | |
| **To be served upon:** URBAN WHOLESALE MORTGAGE, LLC., ET AL C/O CT CORPORATION. | | | |

I, Jason Garmon, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

| | |
|---|---|
| **Recipient Name / Address:** | JANE RICHARDSON, INTAKE, 289 Culver Street, Lawrenceville, GA 30046 |
| **Manner of Service:** | Registered Agent, Jan 28, 2026, 11:51 am EST |
| **Documents:** | SUMMONS, GENERAL CIVIL AND DOMESTIC RELATIONS CASE FILING INFORMATION FORM, VERIFIED AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY;WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS AND EQUITABLE ACCOUNTING; DECLATORY RELIEF; AND PERMANANTLY COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTREST;AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD), VERIFICATION, EXHIBITS A-L |

**Additional Comments:**
1) Successful Attempt: Jan 28, 2026, 11:51 am EST at 289 Culver Street, Lawrenceville, GA 30046 received by JANE RICHARDSON, INTAKE. Age: 60-65; Ethnicity: Caucasian; Gender: Female; Weight: 200; Height: 5'7"; Hair: Gray; Eyes: Hazel;
DOCUMENTS DELIVERED INTO HANDS OF JANE RICHARDSON, INTAKE

| | |
|---|---|
| Jason Garmon GA CPS #356 | Date 1/28/2026 |

Platinum Process Servers
3446 Winder Highway Ste M361
Flowery Branch, GA 30542
239-344-6997

Subscribed and sworn to before me by the affiant who is personally known to me.

Notary Public

Date 1/28/2026        Commission Expires 12/9/2028

## AFFIDAVIT OF SERVICE

| Case: 26CV1492 | Court: IN THE SUPERIOR COURT OF DEKALB COUNTY STATE OF GEORGIA | County: | Job: 15078588 |
|---|---|---|---|
| **Plaintiff / Petitioner:** DION ANDRE LEE AND CARLA CARMEN WILLIAMS | | **Defendant / Respondent:** NEWREZ D/B/A/ SHELLPOINT MORTGAGE SERVICING, ET AL | |
| **Received by:** Platinum Process Servers | | **For:** N/A | |
| **To be served upon:** NEWREZ D/B/A/ SHELLPOINT MORTGAGE SERVICING, ET AL C/O CORPORATION SERVICE COMPANY | | | |

I, Jason Garmon, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** BARRY SMITH, INTAKE, 2 SUN CT SUITE 400, PEACHTREE CORNERS, 30092

**Manner of Service:** Registered Agent, Jan 28, 2026, 11:10 am EST

**Documents:** SUMMONS, GENERAL CIVIL AND DOMESTIC RELATIONS CASE FILING INFORMATION FORM, VERIFIED AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY;WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS AND EQUITABLE ACCOUNTING; DECLATORY RELIEF; AND PERMANANTLY COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTREST;AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD), VERIFICATION, EXHIBITS A-L

**Additional Comments:**
1) Successful Attempt: Jan 28, 2026, 11:10 am EST at 2 SUN CT SUITE 400, PEACHTREE CORNERS, 30092 received by BARRY SMITH, INTAKE. Age: 35-40; Ethnicity: African American; Gender: Male; Weight: 170; Height: 5'7"; Hair: Black; Eyes: Brown; Relationship: INTAKE; DOCUMENTS DELIVERED INTO HANDS OF BARRY SMITH, INTAKE

Jason Garmon
GA CPS #356

Platinum Process Servers
3446 Winder Highway Ste M361
Flowery Branch, GA 30542
239-344-6997

1/28/2026
Date

Subscribed and sworn to before me by the affiant who is personally known to me.

Notary Public

1/28/2026
Date

12/9/2028
Commission Expires

FILED 2/2/2026 1:38 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

IN THE SUPERIOR COURT OF DEKALB COUNTY
STATE OF GEORGIA

PLAINTIFFS: DION A. LEE
CARLA C. WILLIAMS

VS

DEFENDANTS: NEWRES LLC ET ALL

NOTICE OF FILING

(1.) Exhibit A — PROOF OF SERVICE FOR MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

STATE OF NEBRASKA }
                 } §
COUNTY OF DOUGLAS }

SHERIFF #:         26002457
COURT CASE #: OS 26CV1492
COURT DOC #:
ATTY:              A - ATTORNEY

RE: DION ANDRE LEE, ET AL V. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.(MERS), ET AL

RECEIVED DATE: JANUARY 27, 2026

SERVICE ON: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)

ACTION TYPE AND PAPER TYPE: SUMMONS OUTSTATE, SUMMONS, GENERAL CIVIL AND DOMESTIC RELATIONS CASE FILING INFORMATION FORM, DEFENDANTS LIST, VERIFIED COMPLAINT FOR WRONGFUL FORECLOSURE AND WRONGFUL ATTEMPTED FORECLOSURE; VIOLATIONS OF RESPA/REGULATION X, TILA/REGULATION Z, AND THE FDCPA; BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION, AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY; WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C 362(K); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS, AND EQUITABLE ACCOUNTING; DECLARATORY AND INJUNCTIVE RELIEF; AND PERMANENT COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTEREST; AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD)

RETURNED: SERVED

SERVICE TYPE: COMPANY LEAVE

SERVEE: MERADITH LARSEN

RELATIONSHIP: MAIL OPERATIONS

SERVICE DATE/TIME: JANUARY 27, 2026 11:57 AM

SERVICE RECORD:

01/27/2026  11:57 AM    SERVED @ 11819 MIAMI STREET  #100 OMAHA NE 68164

_Exhibit A_

DAVID KASS, DESIGNATED AGENT OF THE SHERIFF
AUTHORIZED AND APPOINTED BY AARON W. HANSON, SHERIFF

| PRINTING | $5.00 |
| SERVICE | $75.00 |
| TOTAL | $80.00 |



1/29/2026

GENERAL NOTARY - State of Nebraska
CRYSTAL VLCEK
My Comm. Exp. June 28, 2027

6/8



**Gmail**

## wd: Filing Accepted for Case: 26CV1492; Dion A Lee Et AIVS Mortgage Electronic egistration Systems Inc Et Al; Envelope Number: 20549761

message

*email return & Receipt*

on Lee <dlee.gfa@gmail.com>
dcsocpd@douglascounty-ne.gov

Mon, Jan 26, 2026 at 1:55 P

Please find the attached complaint to be served. The link is below as a download as it was too large to send as an attachment. I am also attaching the summons and cover sheet for the case to this email. Please confirm receipt. You can call me at 702.426.4498 if you have any questions.

Carla Williams / Dion Lee

*$80⁰⁰*

--------- Forwarded message ---------
From: <no-reply@efilingmail.tylertech.cloud>
Date: Wed, Jan 21, 2026 at 11:38 AM
Subject: Filing Accepted for Case: 26CV1492; Dion A Lee Et AIVS Mortgage Electronic Registration Systems Inc Et Al; Envelope Number: 20549761
To: <dlee.gfa@gmail.com>

# ODYSSEY eFileGA

The filing below was reviewed and has been accepted by the clerk's office. Yo iled by clicking on the below link.

**DOUGLAS COUNTY**

Date: 1/26/2026 4:06 PM
TR: 5          Receipt #: 15855607
    CARLA WILLIAMS
Sheriff- Civil Proce          $82.20
1.00 O/S Out of State                    $80.00
EMV Convenience Fee                      $2.20

Payment Total:                           $82.20

Transaction Total:                       $82.20
EMV VISA Manu  Tendered :                 $82.20

ted

49761
V1492
e Et Al
    VS
Et Al

ht

| Filing Details | |
|---|---|
| **Court** | Dekalb County - Superior |
| **Case Number** | 26CV1492 |
| **Case Style** | Dion A Lee Et Al VS Mortgage Electronic Registration Sys |
| **Date/Time Submitted** | 1/21/2026 2:23 PM EST |
| **Date/Time Accepted** | 1/21/2026 2:38 PM EST |
| **Accepted Comments** | |
| **Filing Type** | Complaint or Petition for Foreclosure |
| **Filing Description** | Verified Complaint For Wrongful Foreclosure And Attempted Foreclosure; Violations of RESPA/Regulation X, TILA/Regulation Z, And The FDCPA; Breach of Contract and Breach of The Implied Covenant of Good Faith And Fair Dealing; Negligence, Negligent Misrepresentation, Conversion, And Fraud By Concealment; Violations of the Georgia Uniform, Deceptive Trade Practices Act(Injunctive Relief); Abuse of Process And Civil Conspiracy; Willful |
| **Activity Requested** | EFile |
| **Filed By** | Carla Williams |
| **Filing Attorney** | |

**Document Details**

FILED 2/2/2026 1:38 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## AFFIDAVIT OF SERVICE

| Case: 26CV1492 | Court: IN THE SUPERIOR COURT OF DEKALB COUNTY STATE OF GEORGIA | County: | Job: 15078830 |
|---|---|---|---|
| Plaintiff / Petitioner: DION ANDRE LEE AND CARLA CARMEN WILLIAMS | | Defendant / Respondent: BARETT, DAFFIN, FRAPPIER, TURNER & ENGEL LLP, ET AL | |
| Received by: Platinum Process Servers | | For: N/A | |
| To be served upon: BARETT, DAFFIN, FRAPPIER, TURNER & ENGEL LLP, ET AL C/O CT CORPORATION | | | |

I, Jason Garmon, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** JANE RICHARDSON, 289 Culver Street, Lawrenceville, GA 30046

**Manner of Service:** Registered Agent, Jan 28, 2026, 11:51 am EST

**Documents:** SUMMONS, GENERAL CIVIL AND DOMESTIC RELATIONS CASE FILING INFORMATION FORM, VERIFIED AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE, NEGLIGENT MISREPRESENTATION, CONVERSION AND FRAUD BY CONCEALMENT; VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT (INJUNCTIVE RELIEF); ABUSE OF PROCESS AND CIVIL CONSPIRACY;WILLFUL VIOLATION OF THE AUTOMATIC STAY (11 U.S.C. § 362(K)); QUIET TITLE/QUIA TIMET, CANCELLATION/REFORMATION OF INSTRUMENTS AND EQUITABLE ACCOUNTING; DECLATORY RELIEF; AND PERMANANTLY COURT-ORDERED LOAN RESTRUCTURING (3% FIXED INTREST;AFFORDABLE MONTHLY PAYMENT; NO FURTHER REVIEW OR TRIAL PERIOD), VERIFICATION, EXHIBITS A-L

**Additional Comments:**
1) Successful Attempt: Jan 28, 2026, 11:51 am EST at 289 Culver Street, Lawrenceville, GA 30046 received by JANE RICHARDSON. Age: 60-65; Ethnicity: Caucasian; Gender: Female; Weight: 200; Height: 5'7"; Hair: Gray; Eyes: Hazel; DOCUMENTS DELIVERED INTO HANDS OF JANE RICHARDSON, INTAKE.

| | |
|---|---|
| _(signature)_ 1/28/2026 | _(signature)_ |
| Jason Garmon  Date | Notary Public |
| GA CPS #356 | 1/28/2026          12/9/2028 |
| | Date          Commission Expires |

Platinum Process Servers
3446 Winder Highway Ste M361
Flowery Branch, GA 30542
239-344-6997

Subscribed and sworn to before me by the affiant who is personally known to me.

FILED 2/5/2026 1:38 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

## IN THE SUPERIOR COURT OF DEKALB COUNTY STATE OF GEORGIA

Dion Andre Lee, et.al,                                                           NO. 26CV1492
     Plaintiff(s)/Petitioner(s),

VS.                                                                  **AFFIDAVIT OF SERVICE OF PROCESS**

Tiffany & Bosco, P.A. ET.AL,
     Defendant(s)/Respondent(s).

I **William Bilyk** Being duly sworn, depose and say that I am fully qualified under state law to serve process within the jurisidiction where the documents were served, and executed service in the manner described below:

<u>Documents Served:</u> **General Civil Domestic Relations Case Filing Information Form; Summons; Verified Complaint; Exhibits ,**

<u>Service Upon:</u> **Tiffany & Bosco PA**

<u>Date of Service:</u> **Mon, Feb 02 2026**                    <u>Time of Service:</u> **12:05 PM**

<u>Address of Service:</u> **2525 East Camelback Road 7th Floor , Phoenix, AZ 85016**

<u>Manner of Service:</u>

☐ By Serving                               in person.
☐ Substitute, by serving                          , a person of suitable age and discretion who resides with at the address of service.
☒ By personally serving **J. Lawrence McCormley** who holds the position of **Stat agent**
☐ Other Service, As Detailed Below.
☐ Non-Service for the Reasons Detailed Below.

<u>Description:</u> Age: 60's ; Ethnicity: Caucasian; Gender: Male; Weight: 220lbs ; Height: 5'11"; Hair: Gray; Eyes: Brown;

I certify under penalty of perjury that the foregoing is true and correct.

_____

Declarant: William Bilyk
Registered in ꞁᴎₐᵣᵢ꜀ₒₚₐ Cₒᵤₙₜᵧ ⧴ 8744
Job Number: 15061961

Subscribed and Sworn to before
me this 3ʳᵈ day of Febru 2026.

_____

Notary Public



```
OFFICIAL SEAL
CRAIG PODGURSKI JR
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
COMM # 676056
My Comm. Expires 12/15/2027
```

FILED 2/25/2026 8:53 AM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

**IN THE SUPERIOR COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| **DION ANDRE LEE AND CARLA CARMEN WILLIAMA,**<br>     **Petitioner**<br><br>**vs.**<br><br>**UNITED WHOLESALE MORTGAGE;** *et al.*<br>     **Respondents.** | **CIVIL ACTION NO.**<br>**26CV1492** |

<u>**RESPONDENT UNITED WHOLESALE MORTGAGE MOTION FOR EXTENSION OF TIME TO FILE AN ANSWER**</u>

COMES NOW Respondent, United Wholesale Mortgage ("UWM") by and through its undersigned counsel and files this Motion for Extension of Time to File an Answer.

1. Petitioner filed the Complaint on January 21, 2026.

2. Respondent UWM was served on January 28, 2026.

3. Respondent has until February 27, 2026, to file an answer.

4. Due to the necessity of both clients review and verification of factual assertions, additional time is required to ensure the Answer and or Response is accurate and complies with the requirements of OCGA § 9-11-11.

5. This is Respondents first request and is made in good faith and is not for purposes of delay.

6. Petitioners are proceeding pro se, and no prejudice will result from this short extension of time.

7. Respondent respectfully request an extension of time for fourteen (14) days to file an Answer, or such other time as the Court deems just and proper.

Respectfully submitted this 24th day of February, 2026.

ALBERTELLI LAW

*/s/ Ryan Starks*
Ryan Starks
Georgia Bar No. 676512
100 Galleria Pkwy SE
Suite 1000
Atlanta, GA 30339
rstarks@alaw.net
(813)221-4743
Attorney for Respondent
File No. 26-003173

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of this Motion was served upon the

following by mailing the same by United States First Class Mail in a properly addressed envelope

with adequate postage affixed thereon to ensure delivery, addressed as follows

Dion Lee and Carla Carmen Williams
1000 Cathedral Place
Decatur, GA 30034

This 24th day of February 2026

*/s/ Ryan Starks*
Ryan Starks
Attorney for Respondent